# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILLES COHEN, *et al*., | Civil Action No. 1:20-cv-08442-JHR-AMD |
| Plaintiffs, | |
| v. | |
| SUBARU CORPORATION, *et al.*, | |
| Defendants. | |

## DEFENDANT DENSO INTERNATIONAL AMERICA, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

I.  Plaintiffs' Strict Product Liability Claim Fails in Every State. ..........................11

   A.  New Jersey, North Carolina, Oregon, and Washington do not recognize a common law strict product liability claim. ................................................11

   B.  The Economic Loss Doctrine bars Plaintiffs' claims in each state where strict liability exists. ...........................................................................13

      1.  The economic loss doctrine bars the strict product liability claims in Alabama, California, Connecticut, Florida, Hawaii, Illinois, Massachusetts, Minnesota, Nevada, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Vermont, and Wisconsin. ...............................................................................13

      2.  The economic loss doctrine bars the Arkansas strict product liability claim. 15

      3.  The economic loss doctrine bars the Maryland strict  product liability claim. ...............................................................................16

      4.  The economic loss doctrine bars Plaintiffs' Rhode Island strict product liability claim. ..............................................................17

II.  Plaintiffs' deception-based claims wfail. ...............................................18

   A.  The deception-based claims fail on numerous grounds applicable to multiple states. ...............................................................................18

      1.  Plaintiffs' deception-based claims do not satisfy Rule 9(b)...................18

      2.  All of Plaintiffs' claims fail because they do not differentiate between Defendants, in violation of Rule 8. ...........................................20

      3.  Many of the statutory claims fail because the Denso Defendants' alleged statements are nonactionable puffery. ........................................21

      4.  All of the statutory claims fail because Plaintiffs do not identify any deceptive representations or a duty to speak by the Denso Defendants. ...............................................................................23

      5.  The Arkansas, California, Hawaii, Maryland, Minnesota, Nevada, North Carolina, Pennsylvania, and Vermont statutory claims and all common law omission claims fail because Plaintiffs have failed to plausibly allege reliance. .......................................................25

      6.  The Arkansas, California, Florida, Hawaii, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Texas, Vermont,

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

Washington, and Wisconsin statutory claims fail because Plaintiffs have not plausibly alleged causation ......................................................27

7. The fraudulent omission claim fails. .....................................................28

B. Several deception-based state-specific defenses exist...................................32

1. Alabama: Plaintiffs have failed to state a claim for violation of the ADTPA..............................................................................................32

2. Arkansas: Plaintiffs fail to state a claim for violation of the Ark. DTPA..................................................................................................35

3. California: Plaintiffs fail to state a claim for violation of the CUCL ......38

4. Connecticut: Plaintiffs have failed to state a claim under the CUTPA because DIAM did not engage in trade or commerce in Connecticut. ...............................................................................40

5. Illinois: Plaintiffs' claim for punitive damages fails................................41

6. Maryland: Plaintiffs have failed to state a claim under the Maryland CPA because Plaintiffs have not alleged an identifiable loss. .................42

7. Minnesota: Plaintiffs have failed to state a claim for violation of the MPCFA.............................................................................................44

8. New Jersey: Plaintiffs have failed to state a claim for violation of the NJCFA because the Plaintiffs fail to allege an ascertainable loss. 47

9. Oregon: Plaintiffs' claim for punitive damages fails. ..............................49

10. Rhode Island: Plaintiffs' claim for punitive damages fails......................50

11. Texas: Plaintiffs fail to state a claim for violation of the TDTPA because DIAM did not communicate directly with consumers. ..............50

12. Vermont: Plaintiffs' claim for punitive damages fails............................52

III. All Claims should be dismissed as prudentially moot.......................................53

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

# TABLE OF AUTHORITIES

**Cases**

*Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan,*
494 N.W.2d 261 (Minn. 1992) ............................................................47

*Amstadt v. U.S. Brass Corp.,*
919 S.W.2d 644 (Tex. 1996) ................................................ 50, 51, 52

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..............................................................................9

*Bristol Vill., Inc. v. La.-Pac. Corp.,*
916 F. Supp. 2d 357 (W.D.N.Y. 2013) ........................................ 13, 14

*Brittan Commc'ns. Int'l Corp. v. Sw. Bell Tel. Co.,*
313 F.3d 899 (5th Cir. 2002) ..............................................................51

*Brown ex rel. Estate of Brown v. Philip Morris Inc.,*
228 F. Supp. 2d 506 (D.N.J. 2002) .....................................................11

*Bruntaeger v. Zeller,*
515 A.2d 123 (Vt. 1986) .............................................................. 52, 53

*Burrell v. Bayer Corp.,*
260 F. Supp. 3d 485 (W.D.N.C. 2017) ...............................................12

*Burtch v. Milberg Factors, Inc.,*
662 F.3d 212 (3d Cir. 2011) .................................................................9

*Carter v. L'Oreal USA, Inc.,*
No. 2:16-cv-508-TFM-B, 2019 WL 478949, at *9
(S.D. Ala. Sept. 30, 2019) ............................................................ 34, 35

*Castrol Inc. v. Pennzoil Co.,*
987 F.2d 939 (3d Cir.1993) ................................................................22

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ................................................................. 38, 39

*Chambers v. King Buick GMC, LLC,*
43 F. Supp. 575 (D. Md. 2014) ..........................................................43

*Champlin v. Washington Tr. Co., of Westerly,*
478 A.2d 985 (R.I. 1984) ...................................................................50

iii

*City of Pittsburgh v. West Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998) ................................................................26

*Council of Co–Owners v. Whiting–Turner,*
   517 A.2d 336 (Md. 1986) ...................................................................16

*Crump v. P & C Food Mkts., Inc.,*
   576 A.2d 441 (Vt. 1990) .....................................................................53

*Deerman v. Fed. Home Loan Mortg. Corp.*,
   955 F. Supp. 1383 (N.D. Ala. 1997) ...................................................32

*Deras v. Volkswagen Group of America, Inc.,*
   No. 17-cv-05452-JST, 2018 WL 2267448, at *4
   (N.D. Cal. May 17, 2018) ...................................................................30

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913  (N.D. Cal. 2012) ..............................................39

*Fink v. Time Warner Cable*,
   810 F. Supp. 2d 633 (S.D.N.Y. 2011), on reconsideration,
   No. 08 CIV. 9628 LTS KNF, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011) .....22

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...............................................................10

*Franklin Grove Corp. v. Drexel*,
   936 A.2d 1272 (R.I. 2007) ..................................................................17

*Galicki v. New Jersey*,
   No. 14-169 (JLL), 2015 WL 3970297, at *2
   (D.N.J. June 29, 2015) .......................................................................20

*Ghazarian v. Magellan Health, Inc.*,
   53 Cal. App. 5th 171 (2020) ..............................................................40

*Graphic Commc'ns Local 1B Health & Welfare Fund "A" v.*
   *CVS Caremark Corp.*,
   850 N.W.2d 682 (Minn. 2014) ...........................................................45

*Griffith v. Blatt*,
   51 P.3d 1256 (Or. 2002) .....................................................................12

*Grodzitsky v. Am. Subaru Motor Co.,*
   No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822, at *7
   (C.D. Cal. Feb. 19, 2013) ...................................................................31

*Hassen v. Govt. of Virgin Islands*,
   861 F.3d 108 (3d Cir. 2017) ..................................................... 10, 14

iv

*Healey v. I-Flow, LLC*,
   953 F. Supp. 2d 868 (D. Minn. 2012)................................................................46

*Holiday Inn Franchising, Inc. v. Hotel Assoc., Inc.*,
   § 382 S.W.3d 6 (Ark. 2011)..............................................................................38

*Holmes v. Behr Process Corp.*,
   No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *4
   n.3 (N.D. Ala. Nov. 17, 2015)..........................................................................34

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
   804 F.3d 633 (3d Cir. 2015)................................................................................6

*In re AZEK Bldg. Prods., Inc., Mktg. & Sales Practices Litig.*,
   82 F. Supp. 3d 608 (D.N.J. 2015) ........................................... 47, 48, 49

*James v. City of Wilkes-Barre*,
   700 F.3d 675 (3d Cir. 2012)..............................................................................10

*Jiminez v. Sup. Ct.*,
   58 P.3d 450 (Cal. 2002) ...................................................................................13

*Johansson v. Central Garden & Pet Co.*,
   804 F. Supp. 2d 257 (D.N.J. 2011) ..................................................................19

*Jones v. Koons Automotive, Inc.*,
   752 F. Supp. 2d 670 (D. Md. 2010) .................................................................43

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................... 39, 40

*L'Esperance v. Benware*,
   830 A.2d 675 (Vt. 2003) ..................................................................................53

*Lancaster v. Phillips Investments, LLC*,
   482 F. Supp. 2d 1362 (M.D. Ala. 2007) ..........................................................33

*Lieberson v. Johnson & Johnson Con. Cos., Inc.*,
   865 F. Supp. 2d 529 (D.N.J. 2011) ..................................................................49

*List v. Lumber One Wood Preserving, LLC*,
   792 F.3d 1331 (11th Cir. 2015) .......................................................................35

*Maeda v. Kennedy Endeavors, Inc.*,
   407 F. Supp. 3d 953 (D. Haw. 2019).................................................................23

*McKinney v. Robbins*,
   892 S.W.2d 502 (Ark. 1995).............................................................................37

v

*McQueen v. Yamaha Motor Corp., U.S.A.*,
--- F. Supp. 3d ---, No. 19-2559 (DWF/BRT), 2020 WL 5630006, at *7
(D. Minn. Sept. 21, 2020) ...................................................................................45

*Meadows v. HSBC Mortg. Corp.*,
No. 2:10-cv-01974, 2011 WL 13134199, at *6 (N.D. Ala. Sept. 27, 2011) ......32

*Mills v. Ethicon, Inc.*,
406 F. Supp. 3d 363  (D.N.J. 2019) ..................................................................20

*Morris v. Osmose Wood Preserving*,
667 A.2d 624 (Md. 1995)...................................................................................16

*Morris v. Walmart Inc.*,
No. 2:18-CV-650-GMB, 2020 WL 470287, at *6
(N.D. Ala. Jan. 29, 2020) ..................................................................................34

*Pugh v. Gen. Terrazzo Supplies, Inc.*,
243 S.W.3d 84 (Tex. Ct. App. 2007).................................................................14

*Rapid Models & Prototypes, Inc. v. Innovated Sols.*,
71 F. Supp. 3d 492 (D.N.J. 2014) .....................................................................19

*Raymo v. FCA US LLC*,
No. 2:17-cv-12168, 2020 WL 4366061, at *19
(E.D. Mich. July 30, 2020).................................................................................31

*Roe v. Ford Motor Co.*,
No. 2:18-cv-12528, 2019 WL 3564589, at *7
(E.D. Mich. Aug. 6, 2019) .................................................................................30

*Roy v. Ward Manufacturing, LLC*,
No. RDB-13-3878, 2014 WL 4215614, at *4
(D. Md. Aug. 22, 2014).............................................................................. 16, 17

*Schecter v. Hyundai Motor Am.*,
No. 18-13634 (FLW), 2019 WL 3416902, at *8
(D.N.J. July 29, 2019) ........................................................................ 47, 48, 49

*Sheeran v. Blyth Shipholding S.A.*,
No. 14-5482 (JBS/AMD), 2015 WL 9048979, at *3
(D.N.J. Dec. 16, 2015) ......................................................................................20

*Sloan v. Gen. Motors LLC*,
No. 16-CV-07244-EMC, 2017 WL 3283998, at *7
(N.D. Cal. Aug. 1, 2017)................................................................ 30, 31, 39, 40

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

*Smith v. General Motors LLC*,
  --- F.3d ---, No. 19-1614, 2021 WL 631475, at *10
  (6th Cir. Feb. 18, 2021) ...................................................................................31

*Smith v. Prime Cable of Chicago*,
  658 N.E.2d 1325 (Ill. 1995) ...........................................................................41

*Staub v. Zimmer, Inc.*,
  No. C17-0508JLR, 2017 WL 2506166, at *2
  (W.D. Wash. June 9, 2017) .............................................................................12

*Stewart v. Bierman*,
  859 F. Supp. 2d 754 (D. Md. 2012) .................................................................42

*Sup. Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*,
  263 F. Supp. 2d 140 (D. Mass. 2003) .............................................................14

*Szep v. General Motors LLC*,
  --- F. Supp. 3d ---, No. 1:19 CV 2858, 2020 WL 5834876, at *8
  (N.D. Ohio Sep. 30, 2020) ..............................................................................31

*Tietsworth v. Sears*,
  No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486, *4
  (N.D. Cal. Oct. 13, 2009) ................................................................................29

*United States v. Baxter Int'l, Inc.*,
  345 F.3d 866 (11th Cir.2003) ..........................................................................33

*Wagner v. General Motors Corp.*,
  258 S.W.3d 749 (Ark. 2007) ...........................................................................15

*Williams v. Litton Loan Servicing*,
  No. 16-5301 (ES) (JAD), 2018 WL 6600097, at *13
  (D.N.J. Dec. 17, 2018) ....................................................................................20

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) .........................................................................30

*Winzler v. Toyota Motor Sales U.S.A.*, Inc.,
  681 F.3d 1208 (10th Cir. 2012) .......................................................................54

*Wozniak v. Ford Motor Co.*,
  No. 2:17-cv-12794, 2019 WL 108845, at *3
  (E.D. Mich. Jan. 4, 2019) ................................................................................31

*Yazdianpour v. Safeblood Techs., Inc.*,
  779 F.3d 530 (8th Cir. 2015) ...........................................................................36

vii

*Zuniga v. Am. Home Mortg.*,
    No. 14-cv-2973 (KM), 2016 WL 6647932, at *3
    (D.N.J. Nov. 8, 2016) ........................................................................20

**Statutes**

73 P.S. § 201-1 ..................................................................................5

815 Ill. Comp. Stat. § 505/1 ..............................................................4

815 Ill. Comp. Stat. 505/10a(a) ................................................. 41, 42

Ala. Code § 8-19-1 ............................................................................3

Ala. Code § 8-19-10(e) ....................................................................32

Ala. Code § 8-19-15 .........................................................................34

Ark. Code § 4-88-101 ........................................................................4

Ark. Code § 4-88-107(10) ................................................................36

Ark. Code § 4-88-107(6) ..................................................................37

Ark. Code Ann. § 4-88-102(9) .........................................................35

Ark. Code Ann. § 4-88-113(f)(1)(A) ...............................................35

Cal. Bus. & Prof. Code § 17200 ........................................................4

Conn. Gen. Stat. § 42-110A ...............................................................4

Conn. Gen. Stat. § 42-110a(4) .........................................................41

Conn. Gen. Stat. § 42-110b(a) .........................................................40

Fla. Stat. Ann. § 501.201 ...................................................................4

Haw. Rev. Stat. § 480-1 .....................................................................4

Haw. Rev. Stat. § 481A ......................................................................4

Maryland CPA § 13-301(9) ..............................................................42

Mass. Gen. Laws Ann. Ch. 93A, § 1 .................................................4

Md. Code Ann. Com. Law § 13-101 ..................................................4

Minn. Stat. § 325F.68 .........................................................................5

Minn. Stat. § 325F.68(4) ..................................................................44

Minn. Stat. § 325F.69(1) ..................................................................44

Minn. Stat. § 549.20(1)(a) ...............................................................46

Minn. Stat. § 549.20(1)(b) ...............................................................46

N.C. Gen. Stat. § 99B-1.1 ...................................................................12

N.C. Gen. Stat. Ann. § 75-1.1 ...............................................................5

N.J. Stat. Ann § 56:8-19 ......................................................................47

N.J. Stat. Ann. § 56:8-1 .........................................................................3

N.Y. Gen. Bus. Law § 349 ......................................................................5

Nev. Rev. Stat. § 598.0903 .....................................................................5

Or. Rev. Stat. § 31.730(1) ......................................................................50

Or. Rev. Stat. § 646.638(1) ....................................................................49

Or. Rev. Stat. § 66.605 ...........................................................................5

R.I. Gen. L. 6-13.1-5.2(a) .....................................................................50

R.I. Gen. Laws § 6-13.1 ..........................................................................5

S.C. Code Ann. § 39-10 ..........................................................................5

Ten. Code Ann. § 47-18-101 ...................................................................5

Tex. Bus. & Com. Code § 17.41 ..............................................................6

Vt. Stat. Ann. Title 9, § 2451 .................................................................6

Wash Rev. Code Ann. § 19.86.010 ..........................................................6

Wis. Stat. § 110.18 ................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................6, 9

Fed. R. Civ. P. 8 .................................................................. 2, 20, 21, 27

Fed. R. Civ. P. 8(a)(2) ..........................................................................20

Fed. R. Civ. P. 8(d) ..............................................................................34

Fed. R. Civ. P. 9(b) ...................................................................... passim

**Regulations**

49 C.F.R. 573 .......................................................................................7

49 C.F.R. 577 .......................................................................................7

## INTRODUCTION

Subaru of America, Inc. and Subaru Corporation ("Subaru Defendants") manufacture vehicles, a component of which is a low pressure fuel pump ("Fuel Pump") supplied by either Denso International America, Inc. ("DIAM") or Denso Corporation ("Denso Defendants").[1] Each Plaintiff alleges that he or she purchased or leased a Subaru vehicle from a Subaru dealership. In broad terms, Plaintiffs allege that their vehicles are defective because they contain allegedly defective Fuel Pumps, although no Plaintiff claims to have suffered physical injury or damage to other property as a result of any alleged defect. Plaintiffs assert 59 total claims, 26 of which they assert against the Denso Defendants. *See* Ex. A, Appendix I (listing all claims). Plaintiffs' claims arise under the laws of 23 separate states.[2]

It is not possible to comprehensively summarize in a few sentences all of Plaintiffs' pleading failures. However, a few themes unite many of the arguments. As a starting point, each of the 26 claims can be sorted into two categories – a strict

---

[1] This Motion is brought solely by DIAM. Denso Corporation has not been served. Denso Corporation is DIAM's Japanese parent company. (ECF No. 33, Consolidated Amended Class Action Complaint ("Compl.") ¶ 175).

[2] Alabama, Arkansas, California, Connecticut, Florida, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, New Jersey New York, Nevada, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Washington, and Wisconsin.

1

liability product defect claim and "deception-based" claims.[3]  The term "deception-based claims" refers to claims alleging that DIAM's purported statements or omissions were actionably false or deceptive.  The label encompasses a host of state statutory claims, brought under state deceptive practice statutes, consumer protection statutes, and the like, as well as a common law omission claim.  The specific statutory description of actionable conduct alleged by Plaintiffs is included in Ex. A, Appendix II.

All of Plaintiffs' claims fail to state a claim.  Among the principal reasons are:

- The strict product liability claim fails because the claim is barred by the economic loss doctrine or because certain states do not recognize a claim for strict product liability.

- All of the deception-based claims fail because Plaintiffs have failed to meet their pleading burdens under Federal Rules of Civil Procedure 8 and 9(b). Plaintiffs do not identify a single statement that the Denso Defendants allegedly made to any of them, including especially about any Fuel Pumps, despite taking 1,049 paragraphs to attempt to state their case.

---

[3] Plaintiffs do not assert any U.C.C. warranty claims against the Denso Defendants. This is appropriate because Plaintiffs contracted to purchase a vehicle, not a Fuel Pump.  Plaintiffs had no contractual relationship with the Denso Defendants.

2

- Plaintiffs fail to plausibly allege that the Denso Defendants had a duty to speak, an essential element of both the common law fraudulent omission claim and most of the statutory claims.

- Many of the deception-based claims require reasonable reliance and/or a causal connection between the conduct and the alleged damages.  Plaintiffs fail to plausibly allege these elements.

- All of the claims should be dismissed under the prudential mootness doctrine, since the NHTSA supervised recall will adequately provide the "meaningful relief" which Plaintiffs seek in this lawsuit.

The following table identifies the 26 claims against the Denso Defendants and the sections of this Brief addressing why this Court should dismiss each claim:[4]

| Count | Claim and Class | Where Addressed (§§) |
|---|---|---|
| 2 | Fraudulent Concealment/Omission (Nationwide Class) | II(A)(1), II(A)(2), II(A)(5), II(A)(7)(a), II(A)(7)(b), III |
| 4 | Strict Product Liability (Nationwide Class) | I(A), I(B)(1), I(B)(2), I(B)(3), I(B)(4), II(A)(2), III |
| 6 | New Jersey Consumer Fraud Act ("NJCFA")[5] (Nationwide Class or New Jersey Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), II(B)(8), III |
| 10 | Alabama Deceptive Trade Practices Act ("ADTPA")[6] (Alabama Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(B)(1)(a), II(B)(1)(b), II(B)(1)(c), III |

---

[4] Count 37 appears twice in the Complaint and Count 56 does not appear at all.  For the sake of clarity, this Motion will use the same numbers as the Complaint, even though incorrect.

[5] N.J. Stat. Ann. § 56:8-1, *et seq.*

[6] Ala. Code § 8-19-1, *et seq.*

3

| 12 | Arkansas Deceptive Trade Practices Act ("Ark. DTPA")[7] (Arkansas Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), II(B)(2)(a), II(B)(2)(b), II(B)(2)(c), III |
|----|---|---|
| 14 | California Unfair Competition Law ("CUCL")[8] (California Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(B)(3)(a), II(B)(3)(b), II(B)(3)(c), III |
| 19 | Connecticut Unfair Trade Practices Act ("CUTPA")[9] (Connecticut Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(B)(4), III |
| 21 | Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")[10] (Florida Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), III |
| 24 | Hawaii Unfair Deceptive Acts and Practices Statute § 480-1 ("HUDAP § 480-1")[11] (Hawaii Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), III |
| 25 | Hawaii Uniform Deceptive Trade Practices Act § 481A ("HUDTPA § 4801A-1")[12] (Hawaii Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), III |
| 27 | Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")[13] (Illinois Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(B)(5), III |
| 29 | Maryland Consumer Protection Act ("MCPA")[14] (Maryland Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), II(B)(6), III |
| 31 | Massachusetts Consumer Protection Act ("Mass. CPA")[15] (Massachusetts Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), III |

---

[7] Ark. Code § 4-88-101, *et seq.*

[8] Cal. Bus. & Prof. Code § 17200, *et seq.*

[9] Conn. Gen. Stat. § 42-110A, *et seq.*

[10] Fla. Stat. Ann. § 501.201, *et seq.*

[11] Haw. Rev. Stat. § 480-1, *et seq.*

[12] Haw. Rev. Stat. § 481A, *et seq.*

[13] 815 Ill. Comp. Stat. § 505/1, *et seq.*

[14] Md. Code Ann. Com. Law § 13-101, *et seq.*

[15] Mass. Gen. Laws Ann. Ch. 93A, § 1, *et seq.*

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

| 33 | Minnesota Prevention of Consumer Fraud Act ("MCFA")[16] (Minnesota Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), II(B)(7)(a), II(B)(7)(b), II(B)(7)(c), III |
|----|----|----|
| 36 | Nevada Deceptive Trade Practices Act ("NDTPA")[17] (Nevada Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), III |
| 37 | New York General Business Law § 349 ("NY GBL § 349")[18] (New York Class) | II(A)(2), II(A)(3). II(A)(4), II(A)(6), III |
| 40 | North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA")[19] (North Carolina Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), III |
| 42 | Oregon Unlawful Trade Practices Act ("OUTPA")[20] (Oregon Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), II(B)(9), III |
| 44 | Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUDTPA")[21] (Pennsylvania Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), III |
| 46 | Rhode Island Unfair Trade Practices and Consumer Protection Act ("RIUTPA")[22] (Rhode Island Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), II(B)(10), III |
| 48 | South Carolina Unfair and Deceptive Trade Practices Act ("SCUDTPA")[23] (South Carolina Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), III |
| 50 | Tennessee Consumer Protection Act ("TCPA")[24] (Tennessee Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), III |

---

[16] Minn. Stat. § 325F.68, *et seq.*

[17] Nev. Rev. Stat. § 598.0903, *et seq.*

[18] N.Y. Gen. Bus. Law § 349.

[19] N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*

[20] Or. Rev. Stat. § 66.605, *et seq.*

[21] 73 P.S. § 201-1, *et seq.*

[22] R.I. Gen. Laws § 6-13.1, *et seq.*

[23] S.C. Code Ann. § 39-10, *et seq.*

[24] Ten. Code Ann. § 47-18-101, *et seq.*

| 52 | Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA")[25] (Texas Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), II(B)(11), III |
|----|------|------|
| 54 | Vermont Consumer Fraud Act ("VCFA")[26] (Vermont Class) | II(A)(2), II(A)(3), II(A)(4), II(A)(5), II(A)(6), II(B)(12), III |
| 57 | Washington Consumer Protection Act ("WCPA")[27] (Washington Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), III |
| 59 | Wisconsin Deceptive Trade Practices Act ("WDTPA")[28] (Wisconsin Class) | II(A)(1), II(A)(2), II(A)(3), II(A)(4), II(A)(6), III |

For the reasons set forth below, DIAM respectfully asks that this Court grant its Motion and dismiss the entire Complaint as against DIAM under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## BACKGROUND AND FACTS

This case involves allegedly faulty Fuel Pumps installed in Subaru vehicles that were sold or leased by dealers to consumers. The Complaint[29] alleges that the Subaru Defendants and the Denso Defendants "designed, engineered, tested, validated, manufactured, and placed in the stream of commerce" the Fuel Pumps. (Compl. ¶ 209).[30]

---

[25] Tex. Bus. & Com. Code § 17.41, *et seq.*
[26] Vt. Stat. Ann. Title 9, § 2451, *et seq.*
[27] Wash Rev. Code Ann. § 19.86.010, *et seq.*
[28] Wis. Stat. § 110.18, *et seq.*
[29] All references to the "Complaint" refer to the Consolidated Amended Class Action Complaint, ECF No. 33.
[30] The facts as alleged in the Complaint are taken as true for the purposes of this Motion. *See In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 634 n.2 (3d Cir. 2015).

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

On April 16, 2020, the Subaru Defendants recalled 188,000 vehicles because of the alleged Fuel Pump defect ("Subaru Recall") by issuing a Part 573 Safety Recall Report to NHTSA ("Subaru Recall Report"). (*Id.* at ¶ 9). The recall included several vehicle models — the Imprezza, Ascent, Legacy, and Outback — that were manufactured in the eight months between June 2018 and February 2019. (*Id.*). The Subaru Recall Report stated that the Fuel Pump impeller may become deformed, which may cause the Fuel Pump to become inoperable. (*Id.* at ¶ 10). The Subaru Recall Report further stated that an inoperative Fuel Pump "may result in the engine stalling without the ability to restart the vehicle, increasing the risk of a crash." (*Id.*). The Subaru Recall directs technicians to repair the Fuel Pump issue by replacing the Fuel Pump motor. (*Id.* at ¶ 17). Plaintiffs allege that the Subaru Recall was not broad enough and that the repairs it offers are inadequate. (*Id.* at ¶¶ 12, 17).[21]

On April 27, 2020, the Denso Defendants submitted their own Part 573 Recall Report, (*id.* at ¶ 4), concerning 2,020,000 of its Fuel Pumps, not limited to those purchased by Subaru.[31] The Recall Report stated that the impeller in some low pressure fuel pumps may become deformed, rendering the fuel pump inoperable. (*Id.* at ¶¶ 5-6). On June 11, 2020, the Denso Defendants submitted a second Recall

---

[21] NHTSA is responsible for determining the adequacy and scope of safety recalls, *see, e.g.*, 49 C.F.R. 573 and 577, and NHTSA has not ordered any expansion of the population of vehicles or Fuel Pumps included in the scope of the Recall.
[31] Denso supplies similar fuel pumps to other customers.

Report encompassing 2,156,057 Fuel Pumps. (*Id.* at ¶ 7).[32] On November 17, 2020, the Denso Defendants again expanded their recall to include an additional 1,517,721 vehicles. (*Id.* at ¶ 15). The June and November Recall Reports did not include additional Subaru vehicles.

Each Plaintiff alleges that he or she bought or leased a vehicle from a Subaru dealership. (*Id.* at ¶¶ 25, 29, 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89, 93, 97, 101, 105, 109, 113, 117, 121, 125, 129, 133, 138, 143, 148, 153, 158, 163). Plaintiffs do not allege that the Denso Defendants had any involvement in these transactions. Each Plaintiff also alleges that their vehicle has a defective Fuel Pump. (*Id.* at ¶¶ 26, 30, 34, 38, 42, 46, 50, 54, 58, 62, 66, 70, 74, 78, 82, 86, 90, 94, 98, 102, 106, 110, 114, 118, 122, 126, 130, 134, 139, 144, 149, 154, 159, 164). Each Plaintiff alleges that they reviewed advertisements and promotional materials from the Subaru Defendants before purchasing or leasing their vehicles. (*Id.* at ¶¶ 27-28, 31-32, 35-36, 39-40, 43-44, 47-48, 51-52, 55-56, 59-60, 63-64, 67-68, 71-72, 75-76, 79-80, 83-84, 87-88, 91-92, 95-96, 99-100, 103-04, 107-08, 111-12, 115-16, 119-20, 123-24, 127-28, 131-32, 135, 137, 140, 142, 145, 147, 150, 152, 155, 157, 160, 162, 165, 167). (*See also id.* at ¶ 23 ("Plaintiffs received information about the characteristics, benefits, safety, and quality of the Affected Vehicles at the dealership

---

[32] The recall populations in Denso's Recall Reports consist of the total number of vehicles recalled by Subaru, Toyota, and Honda through the date of each of Denso's Recall Reports.

and/or through Subaru's extensive advertising concerning quality and safety, as intended by Subaru.")).  They do not allege that they reviewed any statements made by the Denso Defendants prior to purchasing or leasing their vehicles.

Plaintiffs do not allege that the Denso Defendants ever marketed or sold the Fuel Pumps to consumers or that they ever advertised the Fuel Pumps.  Instead, they identify only benign statements on the Denso Corporation website or in website brochures, such as that Denso aims to contribute to a higher quality of life for all people, (*id.* at ¶ 307), that it focuses on "Meticulous quality control," (*id.* at ¶ 308), or that "DENSO focuses on safety because cars carry people," (*id.*).  Tellingly, Plaintiffs do not allege that the Denso Defendants made any statements to any of them or even that the Plaintiffs ever saw any of the statements on the Denso Defendants' website or brochures prior to purchasing or leasing their vehicles.

## STANDARD OF REVIEW

Rule 12(b)(6) allows for dismissal for "failure to state a claim upon which relief may be granted."  Under Rule 12(b)(6), the court must determine whether the complaint contains "'enough facts to state a claim to relief that is plausible on its face.'"  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations must proffer enough factual content to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "'Threadbare recitals of the elements of a cause of action,

9

supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Hassen v. Gov't. of Virgin Islands*, 861 F.3d 108, 115 (3d Cir. 2017) ("In evaluating plausibility, 'we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements.'") (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012)).

## ARGUMENT

None of the 26 clams against DIAM are viable.  In order to facilitate a clear explanation of why that is so within a reasonable number of pages, DIAM proceeds as follows:  in Section I, it will explain why the strict liability product defect claim fails; in Section II, both the common law and statutory deception-based claims will be addressed.[33]  To minimize repetition, in Section II(A), DIAM discusses the numerous "common" arguments that span many states.  For those common issues, the body of the Brief will generally cite to a small number of cases for one or a few states.  The state-by-state citation of controlling authority is left to a series of issue-specific Appendices in Exhibit A, with citations for each relevant proposition in each relevant state.  For example, Appendix VIII provides case law support for the states in which "puffery" is not actionable. Next, in Section II(B), DIAM turns to various

---

[33] Statutory citations for the various statutory claims are included above.

10

state-specific arguments for dismissal of the representation-based claims.  Finally, in Section III, DIAM addresses prudential mootness.

## I.    Plaintiffs' Strict Product Liability Claim Fails in Every State.

Plaintiffs bring a strict product liability claim (Count 4) on behalf of a "Nationwide Class."[34] The strict product liability claim fails for the reasons that follow.  *See* Ex. A, Appendix III (listing the elements of strict product liability claims).

### A.    New Jersey, North Carolina, Oregon, and Washington do not recognize a common law strict product liability claim.

Plaintiffs cannot maintain a strict product liability claim on behalf of Plaintiffs residing in New Jersey, North Carolina, Oregon, or Washington because those states do not recognize a common law claim for strict product liability.  In New Jersey, common law strict product liability has been subsumed by the New Jersey Product Liability Act.  *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 516 (D.N.J. 2002) ("Because the [New Jersey Product Liability Act] generally subsumes common-law product liability claims, the Third Circuit, the New Jersey District Court, and New Jersey State courts consistently have dismissed product liability claims based on common-law theories when those theories allege harm

---

[34] Only the laws of states where Plaintiffs reside and purchased or leased their vehicles will be addressed below.  The Denso Defendants anticipate addressing the appropriateness of a nationwide class at the class certification stage, if the case proceeds to that point.

caused by a product." (internal quotation marks and citation omitted)).   North Carolina does not recognize a strict product liability claim.  *Burrell v. Bayer Corp.*, 260 F. Supp. 3d 485, 494 (W.D.N.C. 2017) ("[N.C. Gen. Stat. § 99B-1.1] simply states, 'There shall be no strict liability in tort in product liability actions.' To the extent that plaintiff's products liability claim posits a strict liability theory, state law does not recognize such a theory."); N.C. Gen. Stat. § 99B-1.1.  In Oregon, strict product liability claims are governed by statute, not common law.  *Griffith v. Blatt*, 51 P.3d 1256, 1261 (Or. 2002).  And in Washington, common law strict product liability has been supplanted by the Washington Products Liability Act.  *Staub v. Zimmer, Inc.*, No. C17-0508JLR, 2017 WL 2506166, at *2 (W.D. Wash. June 9, 2017) ("The Washington Product Liability Act . . . created a single cause of action for product-related harms and supplants previously existing common law remedies, including common law actions for negligence." (internal quotation marks omitted)).  Plaintiffs purport to bring their strict product liability claim under the common law; they cite no statutes in Count 4.  (*See* Compl. ¶¶ 385-95).  Accordingly, Plaintiffs cannot bring a strict product liability claim against DIAM under the laws of New Jersey, North Carolina, Oregon or Washington.

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

**B.** **The Economic Loss Doctrine bars Plaintiffs' claims in each state where strict liability exists.**

    **1.** **The economic loss doctrine bars the strict product liability claims in Alabama, California, Connecticut, Florida, Hawaii, Illinois, Massachusetts, Minnesota, Nevada, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Vermont, and Wisconsin.**

The economic loss doctrine bars the Plaintiffs' strict product liability claim in all the states listed above. The economic loss doctrine states that a tort claim—such as one for strict product liability—cannot stand if the only damage alleged is to the product itself. As explained in *Bristol Village, Inc. v. Louisiana-Pacific Corp.*, 916 F. Supp. 2d 357, 365 (W.D.N.Y. 2013):

> The economic loss doctrine provides that tort recovery in strict products liability and negligence against a manufacturer is not available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract, and personal injury is not alleged or at issue.

(internal quotation marks omitted). *See also,* Ex. A, Appendix IV (defining the economic loss doctrine). The laws of each state listed above hold that the economic loss doctrine applies to strict products liability claims. *See* Ex. A, Appendix V. *See also, e.g.*, *Jiminez v. Sup. Ct.*, 58 P.3d 450, 482 (Cal. 2002) ("Damages available under strict products liability do not include damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property.") (internal quotation marks omitted)).

13

In this case, Plaintiffs do not allege personal injury or damage to any product besides the Fuel Pumps, so the economic loss doctrine applies.[35]  This same analysis would apply even if Plaintiffs tried to argue that the allegedly defective Fuel Pump damaged the Subaru vehicle in which the Fuel Pump is installed (which they do not). The product in which a component is installed is not "other property" when the component is an integral part of the product. *See* Ex. A, Appendix VI; *see, e.g.*, *Bristol Vill., Inc.,* 916 F. Supp. 2d at 365 ("Notably, recovery for damage caused to a unit or system by a defective component has been consistently barred by the economic loss rule, even where that defective component was manufactured by a third party."); *Sup. Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F. Supp. 2d 140, 145 (D. Mass. 2003) ("[D]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to 'other property.'"); *Pugh v. Gen. Terrazzo Supplies, Inc.,* 243 S.W.3d 84, 92 (Tex. Ct. App. 2007) ("[T]he economic loss doctrine . . . preclude[s] tort claims for economic losses made directly against a manufacturer or supplier of a defective component part that causes damage to the 'finished product' into which the

---

[35] Plaintiffs make one allegation that "[t]he Fuel Pump Defect causes damage to property other than the product, as explained in more detail above." (Compl. ¶ 394). But nowhere do they make any specific allegation that any "other property" has been damaged.  The allegation is conclusory and therefore cannot support Plaintiffs' claim.  *See Hassen*, 861 F.3d at 115.

14

component is incorporated.").  Accordingly, Count 4 should be dismissed as against DIAM.

**2.    The economic loss doctrine bars the Arkansas strict product liability claim.**

The Court should find that the economic loss doctrine bars the Arkansas strict product liability claim.  While Arkansas courts have held that the economic loss doctrine does not apply to strict product liability claims brought against a manufacturer of end products, counsel for DIAM is not aware of any Arkansas case directly addressing whether the economic loss doctrine applies to strict product liability claims brought against component part manufacturers like DIAM.  But the Arkansas Supreme Court has held that a component part supplier can be liable under the "component-parts doctrine," which states, in relevant part, that "[o]ne engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability *for harm to persons or property caused by a product into which the component is integrated*" if certain circumstances are met.  *Wagner v. General Motors Corp.*, 258 S.W.3d 749, 755 (Ark. 2007) (emphasis added).[36]  Thus, inherent in the component-parts doctrine, like the economic loss doctrine, is the doctrine that it only allows for recovery for harm to persons or property other than the product itself.  As DIAM is a component

---

[36] The component-parts doctrine is also articulated in Section 5 of the Products Liability Section of the Restatement (Third) of Torts.

15

parts manufacturer, the Court should find that the economic loss doctrine applies to the strict product liability claim and dismiss the claim as against DIAM.

### 3. The economic loss doctrine bars the Maryland strict product liability claim.

The economic loss doctrine bars the Maryland strict product liability claim, notwithstanding that in some circumstances Maryland has recognized a "public safety" exception to the economic loss doctrine wherein when "the risk is of death or personal injury the [tort] action will lie for recovery of the reasonable cost of correcting the dangerous condition." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631 (Md. 1995) (quoting *Council of Co–Owners v. Whiting–Turner,* 517 A.2d 336 (Md. 1986)). Maryland courts examine "the nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury." *Id.* at 631-32. "The mere possibility of injuries is not legally sufficient to sustain an action in tort, and the doctrine creates a limited exception meant to apply only in extraordinary circumstances." *Id.* (internal quotation marks omitted). Remote risks of harm do not trigger the exception. Further, that decision is properly made at the motion to dismiss stage. For example, in *Roy v. Ward Manufacturing, LLC*, No. RDB-13-3878, 2014 WL 4215614, at *4 (D. Md. Aug. 22, 2014), the court dismissed a claim under the economic loss doctrine because a building product which had been connected with 141 fires (out of 5 million homes) posed too remote of a risk.

16

Here, Plaintiffs have not alleged that any accidents have taken place.  Even more so than in *Roy*, "Plaintiffs have not pled facts upon which this Court can reasonably infer that the [alleged defect] creates a substantial risk of death or serious physical injury.  As such, the public safety exception is inapplicable." *Id.* Accordingly, Count 4 should be dismissed as against DIAM.

### 4.      The economic loss doctrine bars Plaintiffs' Rhode Island strict product liability claim.

The Court should determine that the economic loss doctrine bars the Rhode Island strict product liability claim.  Counsel for DIAM is unaware of any Rhode Island case resolving the issue of whether the economic loss doctrine applies to strict product liability claims, or whether the doctrine applies to strict product liability claims against component part manufacturers, like DIAM.

While no case is directly on point, the existing caselaw suggests that Rhode Island courts would apply the economic loss doctrine to strict product liability claims.  The Rhode Island Supreme Court has already ruled that under the doctrine, "a plaintiff may not recover damages under a negligence claim when the plaintiff has suffered no ***personal injury or property damage***."  *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I. 2007) (emphasis added).  There is no reason to think that the doctrine should apply to claims of negligence, but not claims of strict liability.  Moreover, as noted above, the overwhelming majority of states have held that the economic loss doctrine applies to strict liability claims.  There is no basis

17

for concluding that Rhode Island would choose to be an outlier.  Accordingly, the Court should dismiss the Rhode Island strict product liability claim as against DIAM.

## II.    Plaintiffs' deception-based claims fail.

### A.    <u>The deception-based claims fail on numerous grounds applicable to multiple states.</u>

#### 1.    Plaintiffs' deception-based claims do not satisfy Rule 9(b).

Rule 9(b) applies to the fraudulent omission claim and most statutory omission claims:

| Count | Claim | Class |
|-------|-------|-------|
| 2 | Fraudulent Concealment/Omission | Nationwide |
| 10 | ADTPA | Alabama |
| 12 | Ark. DTPA | Arkansas |
| 14 | CUCL | California |
| 19 | CUDTPA | Connecticut |
| 21 | FUDTPA | Florida |
| 24 | HUDAP § 480 | Hawaii |
| 25 | HUDAP § 481A | Hawaii |
| 27 | ICFA | Illinois |
| 29 | MCPA | Maryland |
| 31 | Mass. CPA | Massachusetts |
| 33 | MPCFA | Minnesota |
| 36 | NDTPA | Nevada |
| 6 | NJCFA | New Jersey |
| 40 | NCUDTPA | North Carolina |
| 42 | OUTPA | Oregon |
| 44 | PUTPA | Pennsylvania |
| 46 | RIUTPA | Rhode Island |
| 48 | SCUDTPA | South Carolina |
| 50 | TCPA | Tennessee |
| 52 | TDTPA | Texas |
| 57 | WCPA | Washington |
| 59 | WDTPA | Wisconsin |

18

*See* Ex. A, Appendix VII.

Under Rule 9(b) "when pleading a failure to disclose claim, a plaintiff must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *Johansson v. Central Garden & Pet Co.*, 804 F. Supp. 2d 257, 263 (D.N.J. 2011) (internal quotation marks omitted). In the present case, the Complaint does not satisfy these requirements with respect to DIAM.

Additionally, "collectivized allegations that 'Defendants' engaged in wrongful conduct, without specifying the nature of each defendant's alleged participation in the fraud, fails to satisfy the heightened pleading requirements of Rule 9(b)." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 504 (D.N.J. 2014). Here, the Complaint is replete with allegations against "Defendants" with no differentiation as to which Defendant allegedly took which actions. (*See, e.g.*, Compl. ¶ 495 ("In the course of their business, Defendants concealed and suppressed material facts concerning the Fuel Pump Defect."); *id.* at ¶ 571 ("Defendants engaged in unfair and deceptive practices through the course of their representations and omissions relating to Affected Vehicles and their conduct of their recall.")). These types of allegations violate Rule 9(b). Accordingly, Counts

2, 6, 10, 12, 14, 19, 21, 24, 25, 27, 29, 31, 33, 36, 37, 40, 42, 44, 46, 48, 50, 52, 57,

and 59 should be dismissed as against DIAM.

### 2. All of Plaintiffs' claims fail because they do not differentiate between Defendants, in violation of Rule 8.

Rule 8, as well as Rule 9(b), prohibits lumping together defendants in the

manner that Plaintiffs have done here. *See Mills v. Ethicon, Inc.*, 406 F. Supp. 3d

363, 386-387 (D.N.J. 2019) ("[T]o the extent Plaintiff seeks to lump several

defendants together without setting forth what each particular defendant is alleged

to have done, he has engaged in impermissibly vague group pleading.") (quoting

*Sheeran v. Blyth Shipholding S.A.*, No. 14-5482 (JBS/AMD), 2015 WL 9048979, at

*3 (D.N.J. Dec. 16, 2015)). *See also Williams v. Litton Loan Servicing*, No. 16-5301

(ES) (JAD), 2018 WL 6600097, at *13 (D.N.J. Dec. 17, 2018) ("A complaint with

allegations lumping all defendants together does not comply with Rule 8(a)(2).")

(internal quotation marks omitted)).

Courts routinely dismiss under Rule 8 claims that lump all defendants together

without differentiation. *See, e.g.*, *Zuniga v. Am. Home Mortg.*, No. 14-cv-2973

(KM), 2016 WL 6647932, at *3 (D.N.J. Nov. 8, 2016); *Sheeran*, 2015 WL 9048979,

at *3; *Galicki v. New Jersey*, No. 14-169 (JLL), 2015 WL 3970297, at *2 (D.N.J.

June 29, 2015). As illustrated in the preceding section, Plaintiffs' Complaint is

replete with allegations that lump all Defendants together in this fashion. (*See, e.g.*,

Compl. ¶ 410 ("Defendants intentionally, affirmatively, and knowingly

20

misrepresented material facts regarding the Fuel Pump Defect and Affected Vehicles with intent to mislead Plaintiffs and the Class."); *id.* at ¶ 571 ("Defendants engaged in unfair and deceptive practices through the course of their representations and omissions relating to Affected Vehicles and their conduct of their recall.")). Accordingly, all claims against DIAM should be dismissed for failure to comply with Rule 8.

       **3.**    **Many of the statutory claims fail because the Denso Defendants' alleged statements are nonactionable puffery.**

Statements of opinion or "puffery" cannot support a claim under the relevant state statutes, so all statutory claims should be dismissed as against DIAM, *see* Ex. A, Appendix VIII:

| Count | Claim | Class |
|---|---|---|
| 10 | ADTPA | Alabama |
| 12 | Ark. DTPA | Arkansas |
| 14 | CUCL | California |
| 19 | CUTPA | Connecticut |
| 21 | FUDTPA | Florida |
| 24 | HUDAP § 480 | Hawaii |
| 25 | HUDAP § 481A | Hawaii |
| 27 | ICFA | Illinois |
| 29 | MCPA | Maryland |
| 31 | Mass. CPA | Massachusetts |
| 33 | MPCFA | Minnesota |
| 36 | NDTPA | Nevada |
| 6 | NJCFA | New Jersey |
| 37 | NY GBL § 349 | New York |
| 40 | NCUDPA | North Carolina |
| 42 | OUTPA | Oregon |
| 44 | PUTPA | Pennsylvania |
| 46 | RIUDTPA | Rhode Island |

21

| 48 | SCUDTPA | South Carolina |
| 50 | TCPA | Tennessee |
| 52 | TDTPA | Texas |
| 54 | VCFA | Vermont |
| 57 | WCPA | Washington |
| 59 | WDPTA | Wisconsin |

Puffery includes:

> generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely. . . . Puffery can also take the form of an exaggeration or overstatement expressed in broad, vague, and commendatory language, [as distinguished] from misdescriptions or false representations of specific characteristics of a product.

*Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), on

reconsideration, No. 08 CIV. 9628 LTS KNF, 2011 WL 5121068 (S.D.N.Y. Oct. 28,

2011); *see also* Ex. A, Appendix IX (defining puffery in the relevant states).

In this case, the Denso Defendants' alleged deception amounts to mere

puffery. For example, the Complaint alleges that Denso represented on its website

that, "it is committed to making high-quality products that contribute to a higher

quality of life for all people," (Compl. ¶ 307), that, "it focuses on 'Meticulous quality

control' and that 'DENSO focuses on safety because cars carry people,'" (*id.* at ¶

308). These kinds of general statements, incapable of being proven true or false, are

nonactionable puffery. "Puffery is an exaggeration or overstatement expressed in

broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d

939, 945 (3d Cir. 1993). *See also Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp.

22

3d 953, 954 (D. Haw. 2019) ("Statements that are generalized, vague and unspecific assertions [] constitu[te] mere 'puffery' upon which a reasonable consumer could not rely.") (internal quotation marks omitted)).  Accordingly, Counts 6, 10, 12, 14, 19, 21, 24, 25, 27, 29, 31, 33, 36, 37, 40, 42, 44, 46, 48, 50, 52, 54, 57, and 59 should be dismissed as against DIAM.

> ### 4. All of the statutory claims fail because Plaintiffs do not identify any deceptive representations or a duty to speak by the Denso Defendants.

To state a claim under the following statutes, Plaintiffs must plausibly allege that DIAM engaged in deception.  *See* Ex. A, Appendix II (listing the definitions of prohibited conduct under the various statutes):[37]

| Count | Claim | Class |
|-------|-------|-------|
| 10 | ADTPA | Alabama |
| 12 | Ark. DTPA | Arkansas |
| 14 | CUCL | California |
| 19 | CUTPA | Connecticut |
| 21 | FUDTPA | Florida |
| 24 | HUDAP § 480 | Hawaii |
| 25 | HUDAP § 481A | Hawaii |
| 27 | ICFA | Illinois |
| 29 | MCPA | Maryland |
| 31 | Mass. CPA | Massachusetts |
| 33 | MPCFA | Minnesota |
| 36 | NDTPA | Nevada |
| 6 | NJCFA | New Jersey |

---

[37] The precise language from each state statute is set forth in Appendix II.  Although neither the statutory language nor the state case law is identical, the word "deceptive" or a variant is common to all. More importantly, the pleading deficiencies discussed in the text defeat the claims, under each of the various state law formulations.

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

| 37 | NY GBL § 349 | NY |
| 40 | NCUDTPA | North Carolina |
| 42 | OUTPA | Oregon |
| 44 | PUTPA | Pennsylvania |
| 46 | RIUDTPA | Rhode Island |
| 48 | SCUDTPA | South Carolina |
| 50 | TCPA | Tennessee |
| 52 | TDTPA | Texas |
| 54 | VCFA | Vermont |
| 57 | WCPA | Washington |
| 59 | WDTPA | Wisconsin |

Plaintiffs all allege that they received and relied on statements from the Subaru Defendants before purchasing or leasing their vehicles. (*See, e.g.*, Compl. ¶ 128 ("Plaintiff specifically shopped for a Subaru vehicle because she believed Subaru's persistent advertising messaging that its vehicles were of high quality, were safe, and were reliable.")).  No Plaintiffs allege that they received any statements from the Denso Defendants before making their purchases.  The only statements that Plaintiffs allege on the part of the Denso Defendants were the puffery discussed above.  (*See id.* at ¶¶ 307-08).  Nor do Plaintiffs allege any actionable omissions by the Denso Defendants, for the reasons stated below.  Accordingly, Counts 6, 10, 12, 14, 19, 21, 24, 25, 27, 29, 31, 33, 36, 37, 40, 42, 44, 46, 48, 50, 52, 54, 57 and 59 fail as against DIAM.

> **5.** **The Arkansas, California, Hawaii, Maryland, Minnesota, Nevada, North Carolina, Pennsylvania, and Vermont statutory claims and all common law omission claims fail because Plaintiffs have failed to plausibly allege reliance.**

Reliance is an essential element of claims under the following state statutes and each of the common law fraudulent omission claims (*see* Ex. A, Appendix X):

| Count | Claim | Class |
|-------|-------|-------|
| 2 | Fraudulent omission | Nationwide (Alabama) |
| 12 | Ark. DTPA | Arkansas |
| 2 | Fraudulent omission | Nationwide (Arkansas) |
| 14 | CUCL | California |
| 2 | Fraudulent omission | Nationwide (California) |
| 2 | Fraudulent omission | Nationwide (California) |
| 2 | Fraudulent omission | Nationwide (Florida) |
| 24 | HUDAP § 480 | Hawaii |
| 25 | HUDAP § 481A | Hawaii |
| 2 | Fraudulent omission | Nationwide (Hawaii) |
| 2 | Fraudulent omission | Nationwide (Illinois) |
| 29 | MCPA | Maryland |
| 2 | Fraudulent omission | Nationwide (Maryland) |
| 2 | Fraudulent omission | Nationwide (Massachusetts) |
| 33 | MPCFA | Minnesota |
| 2 | Fraudulent omission | Nationwide (Minnesota) |
| 36 | NDPTA | Nevada |
| 2 | Fraudulent omission | Nationwide (Nevada) |
| 2 | Fraudulent omission | Nationwide (New Jersey) |
| 2 | Fraudulent omission | Nationwide (New York) |
| 40 | NCUDTPA | North Carolina |
| 2 | Fraudulent omission | Nationwide (North Carolina) |
| 44 | PUTPA | Pennsylvania |
| 2 | Fraudulent omission | Nationwide (Pennsylvania) |
| 2 | Fraudulent omission | Nationwide (Texas) |
| 54 | VCFA | Vermont |
| 2 | Fraudulent omission | Nationwide (Vermont) |
| 2 | Fraudulent omission | Nationwide |

Each of these claims fails because Plaintiffs have not plausibly alleged that they relied on any statements or omissions of the Denso Defendants.  Reliance is an essential element of each count.  *See* Ex. A, Appendix X.

Plaintiffs allege that they relied on "Defendants' misrepresentations and omissions of fact."  (*See, e.g.*, Compl. ¶ 1000).  But, in the portion of the Complaint dedicated to alleging the circumstances surrounding each Plaintiff's purchase or lease of their vehicle, Plaintiffs allege only that they relied on the representations and omissions of the ***Subaru Defendants***, not the Denso Defendants.  For example, Plaintiff Sweeton alleges that "[p]rior to purchasing the Affected Vehicle, Plaintiff reviewed the Monroney sticker that ***Subaru*** placed on the window," (*id.* at ¶ 119 (emphasis added)), and that "Plaintiff specifically shopped for a Subaru vehicle because he believed ***Subaru's*** persistent advertising messaging that its vehicles were of high quality and were safe, and were reliable," (*id.* at ¶ 120 (emphasis added)).  There are no similar allegations about the Denso Defendants.

Reading the Complaint as a whole, it is clear that Plaintiffs allege, at most, that they relied on the representations and omissions of the Subaru Defendants, not the Denso Defendants.  *See City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998) (noting that when ruling on a motion to dismiss, "courts have an obligation in matters before them to view the complaint as a whole").

26

Accordingly, and read in the light of the strictures of Rules 8 and 9(b), Counts 2, 12, 16, 24, 25, 29, 33, 36, 40, 44, and 54 fail as against DIAM.

**6.**  **The Arkansas, California, Florida, Hawaii, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Texas, Vermont, Washington, and Wisconsin statutory claims fail because Plaintiffs have not plausibly alleged causation**

Even in states in which reliance is not an explicit element of a statutory claim, causation is a required element. *See* Ex. A, Appendix XI.

| Count | Claim | Class |
|-------|-------|-------|
| 12 | Ark. DTPA | Arkansas |
| 14 | CUCL | California |
| 21 | FDUTPA | Florida |
| 24 | HUDAP § 480 | Hawaii |
| 25 | HUDAP § 481A | Hawaii |
| 29 | MCPA | Maryland |
| 31 | MCPA | Mass. CPA |
| 33 | MPCFA | Minnesota |
| 36 | NDTPA | Nevada |
| 6 | NJCFA | New Jersey |
| 37 | NY GBL § 349 | New York |
| 40 | NCUDTPA | North Carolina |
| 42 | OUTPA | Oregon |
| 44 | PUTPA | Pennsylvania |
| 46 | RI | Rhode Island |
| 50 | TCPA | Tennessee |
| 52 | TDTPA | Texas |
| 54 | VCFA | Vermont |
| 57 | WCPA | Washington |
| 59 | WDTPA | Wisconsin |

To the extent the above claims are based on misrepresentations, each fails because the Complaint does not allege that the Plaintiffs ever received any

27

statements by the Denso Defendants.  Likewise, omission-based claims fail for lack of reliance because there can be no reliance on silence when, as explained in the following section, there is no duty to speak.  Therefore, Plaintiffs have failed to allege the existence of a causal link between the Denso Defendants' statements or omissions and their alleged damages.  Accordingly, there is no connection between Plaintiffs' alleged injuries and the Denso Defendants' alleged acts, and Counts 6, 12, 16, 21, 24, 25, 29, 31, 33, 36, 37, 40, 42, 44, 46, 50, 52, 54, 57, and 59 fail as against DIAM.

### 7.     The fraudulent omission claim fails.[38]

> #### a.  *Fraudulent omission claims are barred by the economic loss doctrine in Alabama, California, Florida, Texas, and Wisconsin.*

The fraudulent omission claims under the laws of Alabama, California, Florida, Texas, and Wisconsin fail under the economic loss doctrine, discussed above.  *See* Ex. A, Appendix IV.  The law of these states holds that the economic loss doctrine applies to fraudulent omission claims.  *See* Ex. A, Appendix XIII. Accordingly, Count 2 should be dismissed as against DIAM as to the Plaintiffs residing in Alabama, California, Florida, Texas, and Wisconsin.

---

[38] Only the states in which Plaintiffs reside and purchased or leased their vehicles are addressed as to Count 2.

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

b. *The fraudulent omission claims fail because the Denso Defendants had no duty to speak.*

Plaintiffs' fraudulent omission claim fails because the Denso Defendants had no duty to disclose anything to Plaintiffs. To state a claim for fraudulent omission, Plaintiffs must show that the defendant had a duty to disclose an existing material fact. *See* Ex. A, Appendix XII.

Plaintiffs allege that a duty to speak existed because "[t]he truth about the defective Affected Vehicles was known only to Defendants." (Compl. ¶ 367). However, this allegation is conclusory and conclusory allegations cannot defeat a motion to dismiss. *Tietsworth v. Sears*, No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486, *4 (N.D. Cal. Oct. 13, 2009).

Plaintiffs make two other allegations that may relate to their duty to speak assertion, but each is inadequate. First, they allege that in 2016 the Denso Defendants filed a patent application "for a more robust impeller." (Compl. ¶¶ 18, 211). However, at most this allegation plausibly supports the inference that the Denso Defendants knew the Fuel Pump could be improved, not that it was defective. And there are compelling public policy reasons to not allow such an inference, given the obvious inhibitory effect it would have on innovation and efforts at improvement.

Second, Plaintiffs point to the existence of a total of 28 consumer complaints concerning the recalled vehicles over a period of 7 years posted to the NHTSA

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

website.  (*Id.* at ¶¶ 243-74).  But this allegation does not give rise to a plausible inference that DIAM knew of a safety related defect.  *See, e.g.*, *Roe v. Ford Motor Co.*, No. 2:18-cv-12528, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019) (finding that a small number of complaints were "a blip on Ford's complaints-and-repairs radar" considering the millions of Ford cars in use).  They offer no context from which to plausibly conclude that 28 complaints over 7 years, even if known to the Denso Defendants, raised an inference of a safety related product defect.  Is 28 complaints over 7 years unusual for the large amount of vehicles included in the recall?  Plaintiffs provide no context in which to answer that question, and without that context, there is no basis to infer a duty to disclose.

*Deras v. Volkswagen Group of America, Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) illustrates why Plaintiffs' allegations here fail:

> NHTSA received fifty-six complaints of shattering sunroofs in . . . seven years and four months — and that VW monitored NHTSA complaints. . . . "[T]he Ninth Circuit has held that consumer complaints suffice to establish knowledge only where there were an *unusual* number of complaints, such that the manufacturer would be on notice of a specific problem." *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017). . . Here, Deras contends that there are "potentially hundreds of thousands or more" Class Vehicles. . . . [F]ifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints, and Deras does not so allege.  These complaints therefore do not show VW's knowledge of the alleged defect.  *See*

> *Sloan*, 2017 WL 3283998, at *7 ("Plaintiffs do not allege that the 81 complaints posted over the course of seven years was an unusually high number of complaints.  Thus, the complaints do not show GM's knowledge of the alleged defect.").

*See also Smith v. General Motors LLC*, --- F.3d ---, No. 19-1614, 2021 WL 631475, at *10 (6th Cir. Feb. 18, 2021) ("Without supporting facts that GM engaged with or received complaints about the defective dashboard and its safety risk, the consumer complaints are insufficient to allege that GM knew about the defective dashboard under the 12(b)(6) pleading standard."); *Grodzitsky v. Am. Subaru Motor Co.,* No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) ("[C]ourts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect.") (citation omitted); *Szep v. General Motors LLC*, --- F. Supp. 3d ---, No. 1:19 CV 2858, 2020 WL 5834876, at *8 (N.D. Ohio Sep. 30, 2020) (stating that customer complaints, without more, do not give rise to a duty to disclose); *Raymo v. FCA US LLC*, No. 2:17-cv-12168, 2020 WL 4366061, at *19 (E.D. Mich. July 30, 2020) (same); *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019) (same).

Moreover, the 28 alleged instances are not customer complaints about a defective fuel pump, but rather a heterogonous group of performance occurrences involving problems with vehicles stalling, (*see* Compl. ¶¶ 243, 256, 264, 267-68, 270); accelerating from a stop, (*see id.* at ¶¶ 244, 246, 247-54, 257, 259, 265-66);

31

starting a cold engine, (*see id.* at ¶¶ 255, 261); and a variety of other largely dissimilar performance issues.  It is only in retrospect that Plaintiffs speculate that the 28 instances were caused by 28 defective fuel pumps.

Accordingly, Plaintiffs have failed to plausibly allege that the Denso Defendants were aware of facts which would give rise to a duty to speak.  Therefore, all omission-based claims, both common law and statutory, should be dismissed as against DIAM.

### B.    Several deception-based state-specific defenses exist.

#### 1.    Alabama: Plaintiffs have failed to state a claim for violation of the ADTPA

##### a.  The ADTPA claim fails because Plaintiffs did not provide DIAM with the statutorily required notice.

The ADTPA claim fails because Plaintiffs did not provide DIAM with the notice required under the statute.  Under the statute, at least 15 days prior to filing suit, Plaintiffs must provide any defendant with a place of business or assets in Alabama with a "written demand for relief."  Ala. Code § 8-19-10(e).  Nowhere do Plaintiffs allege that they provided this notice to DIAM.  And, in fact, they did not do so.  Dismissal is proper when timely notice was not given.  *See, e.g.*, *Meadows v. HSBC Mortg. Corp.*, No. 2:10-cv-01974, 2011 WL 13134199, at *6 (N.D. Ala. Sept. 27, 2011); *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1383, 1399-1400 (N.D. Ala. 1997).  Because no timely notice was given or pled, the ADTPA claim should be dismissed as against DIAM.

32

> b. *The ADTPA claim fails because in pertinent part it applies*
> *only to representations, not omissions*

Section 5 of the ADTPA includes 27 distinct subparts describing conduct that violates the Act.  Plaintiffs allege a violation of a single subpart, subpart 27, (Compl. ¶ 448), which proscribes "[e]ngaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."

In interpreting a "catch-all" provision such as subpart 27, Alabama applies the doctrine of *ejusdem generis*:

> when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated."  *United States v. Baxter Int'l, Inc.,* 345 F.3d 866, 906 (11th Cir.2003) (quotation marks omitted).

*Lancaster v. Phillips Investments, LLC*, 482 F. Supp. 2d 1362, 1367 (M.D. Ala. 2007).  Here, the specific subparts arguably of the "same kind or nature" are subparts (4)–(7), each of which proscribes falsely "representing" various attributes of goods. On the other hand, the only reference to omissions in the 27 subparts is in subpart 22, which applies only to a "manufacturer, importer, or distributor of new motor vehicles sold or transferred to a motor vehicle dealer in this state."  The Denso Defendants are none of those things.

As explained above, Plaintiffs do not allege that the Denso Defendants made any actionable representations.  And their alleged omissions do not violate the Act. Therefore, the ADTPA claim should be dismissed as against DIAM.

33

        *c. The ADTPA claim fails because Plaintiffs cannot bring*
        *both an ADTPA claim and a fraudulent omission claim.*

Plaintiffs cannot bring both an ADTPA claim and a claim for fraudulent omission. Section 8-19-15 of the ADPTA provides that the remedies in the ADTPA and the remedies "available at common law by statute or otherwise, for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment are mutually exclusive." The statute states that if a plaintiff pursues an ADTPA claim, he cannot pursue a fraud claim, and if he pursues a fraud claim he cannot pursue an ADTPA claim. *Id.*; *see also Carter v. L'Oreal USA, Inc.*, No. 2:16-cv-508-TFM-B, 2019 WL 478949, at *9 (S.D. Ala. Sept. 30, 2019) ("[P]ermitting Plaintiffs to plead ADTPA in addition to their fraud claim would run contrary to the plain language of the statute and enlarge a substantive right that is limited by state law."); *Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *4 n.3 (N.D. Ala. Nov. 17, 2015) ("Holmes' election to bring a claim against Behr under the ADTPA in effect excludes and surrenders all other rights and remedies against Behr, thereby providing an additional basis for dismiss[al] . . . ." (citing Ala. Code § 8-19-15)).[39] Accordingly, Plaintiffs cannot bring a fraudulent

---

[39] There is a split of authority over whether an ADTPA claim and a fraud claim may be plead in the alternative at the pleading stage. *See Morris v. Walmart Inc.*, No. 2:18-CV-650-GMB, 2020 WL 470287, at *6 (N.D. Ala. Jan. 29, 2020). *But see Carter*, 2019 WL 478949, at *9 ("While certainly under the federal rules, [Fed. R. Civ. P.] 8(d), a party may plead alternative or inconsistent claims, the plain text of the ADTPA specifically and unambiguously makes, as an essential element of the

omission claim if their ADTPA claim stands, and they cannot bring an ADTPA claim if their fraudulent omission claim stands.

**2. Arkansas: Plaintiffs fail to state a claim for violation of the Ark. DTPA.**

*a. Plaintiffs have not alleged an actual financial loss proximately caused by DIAM's acts or omissions.*

Plaintiffs have not alleged an "actual financial loss" proximately caused by DIAM's acts or omissions. The Ark. DTPA states that: "A person who suffers an ***actual financial loss*** as a result of his or her reliance on the use or practice declared unlawful by this chapter may bring an action to recover his or her ***actual financial loss*** proximately caused by the offense or violation." Ark. Code Ann. § 4-88-113(f)(1)(A) (emphasis added). The statute defines "actual financial loss" as "an ascertainable amount of money that is equal to the difference between the amount paid by a person for goods or services and the actual market value of the goods or services provided." *Id.* § 4-88-102(9).

In this case, Plaintiffs do not allege an "actual financial loss" caused by DIAM's acts or omissions. Instead, they direct their allegations to Subaru, stating that:

_____

claim, the statutory remedy exclusive of other remedies available under Alabama law." (internal quotation marks omitted)); *id.* ("'[W]hile federal procedural rules displace conflicting state provisions, federal procedure does not abridge, enlarge or modify any substantive right.'" (quoting *List v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015)).

35

> Plaintiff and the other Arkansas Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of **Subaru's** conduct in that Plaintiff and the other Arkansas Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of **Subaru's** misrepresentations, fraud, deceptive practices, and omissions.

(Compl. ¶ 474 (emphasis added)).  The allegations are all directed to the Subaru Defendants; none are directed to DIAM.  Additionally, "[a]ctual damage or injury is not satisfied by mere diminution in value of a product."  *Yazdianpour v. Safeblood Techs., Inc.*, 779 F.3d 530, 538 (8th Cir. 2015).  Plaintiffs have pointed to no ascertainable actual financial loss, and have made no allegations connecting any alleged loss to DIAM.  Accordingly, the Ark. DTPA claim against DIAM should be dismissed.

> ### b. Plaintiffs' Ark. DTPA claim fails because the statute applies only to misrepresentations, not omissions.

Section 4-88-107 of the Ark. DTPA includes 11 distinct subparts describing conduct that violates the Act.  Plaintiffs allege a violation of a single subpart, subpart 10, (Compl. ¶ 471), which proscribes "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade."  Ark. Code § 4-88-107(10).

In interpreting a "catch-all" provision such as subpart 10, Arkansas applies the doctrine of *ejusdem generis*, which applies when:

> (1) The statute contains an enumeration of specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires.

*McKinney v. Robbins*, 892 S.W.2d 502, 503 (Ark. 1995).  Here, all of the other enumerated subparts in the section relate to misrepresentations, not omissions.  The only subpart that relates to omissions, subpart (6), proscribes "[k]nowingly failing to identify flood, water, fire, or accidentally damaged goods as to such damages."  Ark. Code § 4-88-107(6).  This subpart has nothing to do with the facts in this case.

Under the doctrine of *ejusdem generis*, subpart (10) should be interpreted to proscribe misrepresentations, not omissions.  And as explained above, Plaintiffs do not allege that the Denso Defendants made any actionable misrepresentations.  And their alleged omissions do not violate the Act.  Therefore, the Ark. DTPA claim should be dismissed as against DIAM.

> c. *Plaintiffs' claim for punitive damages does not meet the high standard of "malice."*

Plaintiffs' claim for punitive damages under the Ark. DTPA, (Compl. ¶ 476), fails because the allegations do not set forth facts on which they can prove malice.  In order for punitive damages to be imposed, the defendant must have "intentionally pursued a course of conduct for the purpose of causing injury," or known or should have known "that, in light of surrounding circumstances, its conduct would naturally

and probably result in injury," yet "continue[] the conduct in reckless disregard for the circumstances, from which malice may be inferred." *Holiday Inn Franchising, Inc. v. Hotel Assoc., Inc.*, 382 S.W.3d 6 (Ark. 2011). Even if each of Plaintiffs' allegations are credited, they do not remotely approach demonstrating malice. In this case, the Plaintiffs have not met this high standard. They point to nothing other than a 2016 patent application for a new impeller to show that the Denso Defendants had any knowledge of the alleged Fuel Pump Defect before the recall. (*See* Compl. ¶ 18). Seeking to improve a product is commendable, not conduct for which punitive damages are available under Arkansas law. Therefore, the Court should dismiss Plaintiffs' claim for punitive damages under the Arkansas consumer protection statute as against DIAM.

### 3.      <u>California</u>: Plaintiffs fail to state a claim for violation of the CUCL

> #### a. *The CUCL claim based on "unlawful" conduct fails because Plaintiffs have not plausibly alleged such conduct by the DIAM.*

The CUCL applies, *inter alia*, to conduct that is "unlawful" under other California statutes. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiffs vaguely allege violations of three California statutes: (i) the Consumers Legal Remedies Act (Count 15); (ii) the False Advertising Law (Count 16); and (iii) the Song-Beverly Consumer Warranty Act (Count 18). But they have not even attempted to plead a violation of any of those statutes against

DIAM—all three claims are alleged only against the Subaru Defendants. As the California Supreme Court held in *Cel-Tech Communications, Inc.*, *supra*, the CUCL is not intended to be a catch-all provision where plaintiffs cannot otherwise show a violation of law: "Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair." *Id.* at 182. Without identifying DIAM's alleged improper business practice, Plaintiffs fail to allege a viable CUCL claim as against DIAM.

> b. *Plaintiffs are not entitled to any remedy from DIAM under the CUCL.*

"Restitution is the only monetary remedy expressly authorized by" the CUCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1136 (2003). In California, "[r]estitution may be available where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 932 (N.D. Cal. 2012) (internal quotation omitted). Plaintiffs are not entitled to restitution from the Denso Defendants because they do not and cannot allege that the Denso Defendants have their money to be restored.

*Sloan v. GM LLC*, No. 16-cv-07244-EMC, 2020 WL 1955643, at *33 (N.D. Cal. Apr. 23, 2020) is not to the contrary. There, the court held that General Motors could potentially be subject to restitution if "Plaintiffs can demonstrate that the amount they overpaid for [the product] was the amount that [defendant] overcharged, and that any intermediaries merely passed on the overcharge from

[defendant] to . . . end-paying customers, they may recover such funds as restitution under the UCL." *Id.* But here, the Denso Defendants did not directly or indirectly sell a vehicle to Plaintiffs. Thus, there are no funds to be restored and the CUCL claim should be dismissed as against DIAM.

### c. *Plaintiffs' claim for punitive damages fails.*

Plaintiffs' claim for punitive damages under the CUCL fails. "A UCL claim cannot serve as the basis for punitive damages." *Ghazarian v. Magellan Health, Inc.*, 53 Cal. App. 5th 171, 195 (2020); *accord Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) ("[A]ttorney fees and damages, including punitive damages, are not available under the UCL."). Accordingly, Plaintiffs' claim for punitive damages should be dismissed as against DIAM.

### 4. <u>Connecticut</u>: Plaintiffs have failed to state a claim under the CUTPA because DIAM did not engage in trade or commerce in Connecticut.

The CUTPA claim fails because DIAM did not engage in "trade or commerce" in Connecticut. The statute states that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts in the conduct of trade or commerce." Conn. Gen. Stat. § 42-110b(a). "Trade and commerce" is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value *in this state*." *Id.* §

40

42-110a(4) (emphasis added). In this case, Plaintiffs do not allege that DIAM ever engaged in any trade or commerce within the state of Connecticut as required by the statute. The transactions where the Denso Defendants sold the fuel pumps to the Subaru Defendants all happened outside the state of Connecticut. Accordingly, the CUTPA claim fails as against DIAM.

## 5. **Illinois: Plaintiffs' claim for punitive damages fails.**

Plaintiffs' claim for punitive damages, (Compl. ¶ 666), under 815 Ill. Comp. Stat. 505/10a(a) fails because they have not shown "acts done with malice or an evil motive or because they are performed with a reckless indifference toward the rights of others." "Damages recoverable under the Consumer Fraud Act in a private cause of action include actual damages or any other relief which the court deems proper." *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1336 (Ill. 1995). In order to establish a claim for punitive damages in Illinois, "a party must show allegations that rise to the level of actual malice, evil motive or reckless indifference so as to justify an award of punitive damages." *Id*. Allegations that simply state that a defendant "knowingly" and "falsely, deceitfully and fraudulently misrepresented" a particular thing will not justify an award of punitive damages. *See Smith*, 658 N.E.2d at 1336.

As discussed above, here the Plaintiffs point to nothing other than a 2016 patent application for a new impeller to show that the Denso Defendants had any

knowledge of the alleged Fuel Pump Defect before the recall.  (*See* Compl. ¶ 18).
This is not enough to meet the high standard set out in Illinois law interpreting
punitive damages under 815 Ill. Comp. Stat. 505/10a(a).  The claim for punitive
damages under the MPCFA should be dismissed as against DIAM

> **6.**   **Maryland**: **Plaintiffs have failed to state a claim under the Maryland CPA because Plaintiffs have not alleged an identifiable loss.**

Plaintiffs have failed to state a claim under the Maryland CPA, which
prohibits "any [f]alse . . .or misleading oral or written statement, . . . or other
representation of any kind which has the capacity, tendency, or effect of deceiving
or misleading consumers, *id.* § 13-301(1), and any "[d]eception, fraud, false
pretense, false premise, misrepresentation or knowing concealment, suppression, or
omission of any material fact with the intent that a consumer rely on the same in
connection with . . . [t]he promotion or sale of any consumer goods, *id.* § 13-301(9).
Plaintiffs must allege "(1) an unfair or deceptive practice or misrepresentation that
is (2) relied upon, and (3) causes them actual injury."  *Stewart v. Bierman*, 859 F.
Supp. 2d 754, 768 (D. Md. 2012).

The Maryland CPA requires that Plaintiffs' injuries be "objectively
identifiable."  *Lloyd v. General Motors Corp.*, 916 A.2d 257, 277 (Md. Ct. App.
2007).  "In other words, the consumer must have suffered an identifiable loss,
measured by the amount the consumer spent or lost as a result of his or her reliance

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

on the sellers' misrepresentation." *Id.* "A complaint adequately pleads loss, for instance, when it points to some amount that it would take to remedy the loss the plaintiff incurred as a result of the respondents' alleged deceptive trade practices." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 575, 621 (D. Md. 2014) (internal quotation marks and brackets omitted).

*Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 670, 683-84 (D. Md. 2010) is instructive. There, the plaintiff alleged a Maryland CPA claim based on the defendant's alleged failure to disclose that the plaintiff's car had previously been used as a short-term rental vehicle. *Id.* at 683. The court found that the plaintiff had not adequately alleged damages under the Maryland CPA because "[t]he complaint does not point to any 'cost of remedy' or any other actual harm." *Id.* at 684. The plaintiff's allegations that "she would not have purchased the car or would have demanded a significant price concession" were insufficient. *Id.* (internal quotation marks omitted). The court found that "[a] hypothetical price concession is simply not the type of tangible injury appropriately recognized in a private Maryland CPA action." *Id.*

The alleged damages in this case are similar. Plaintiff Efantis alleges that she has damages for "out-of-pocket loss, future attempted repairs, and diminished value of the Affected Vehicle." (Compl. ¶ 62). Like in *Jones*, these allegations are

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

insufficient to show an "identifiable loss" as required by the Maryland CPA.  The Maryland CPA claim should be dismissed as against DIAM.

### 7.    <u>Minnesota</u>: Plaintiffs have failed to state a claim for violation of the MPCFA.

#### a.  *Plaintiffs' MPCFA claim fails because they do not allege that DIAM made any statements "in connection with the sale of any merchandise."*

Plaintiffs' MPCFA claim fails because they do not allege that DIAM made any statements "in connection with the sale of any merchandise." The MPCFA states that:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon ***in connection with the sale of any merchandise***, whether or not any person has in fact been misled, deceived, or damaged thereby is enjoinable.

Minn. Stat. § 325F.69(1) (emphasis added).  "Sale" means "any sale, offer for sale, or attempt to sell any merchandise for any consideration."  *Id.* § 325F.68(4).  In this case, the Plaintiffs do not allege that DIAM made any statements or engaged in any deceptive practice in connection with any "sale."  The "sale" was between each Plaintiff and a Subaru dealership.  The Plaintiffs do not allege that they had any contact with DIAM whatsoever, or that they ever saw any of the puffing statements on the Denso Defendants' website.  Accordingly, the statute does not apply and the MPCFA claim should be dismissed as against DIAM.

44

> b. *Plaintiffs have failed to state a MPCFA claim because they have failed to state an actionable claim based on an omission.*

Plaintiffs have failed to state a MPCFA claim because they have failed to state an actionable claim based on an omission. "Omission-based claims are actionable under the [MPCFA] only 'when special circumstances exist that trigger a legal or equitable duty to disclose the omitted facts.'" *McQueen v. Yamaha Motor Corp., U.S.A.*, --- F. Supp. 3d ---, No. 19-2559 (DWF/BRT), 2020 WL 5630006, at *7 (D. Minn. Sept. 21, 2020) (quoting *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014)). These types of "special circumstances" include: "(1) a confidential or fiduciary relationship with the other party; (2) special knowledge of material facts to which the other party does not have access; and (3) when a person is speaking, they must say enough to prevent the words communicated from misleading the other party." *Id.* (internal quotation marks omitted).

In this case, Plaintiffs do not claim that DIAM made any statements to them, so their only claims must be based on omissions. But none of the three "special circumstances" apply. First, there was no "confidential or fiduciary relationship" between DIAM and the Plaintiffs—there was no relationship at all. Second, the Plaintiffs' only allegation regarding DIAM's knowledge prior to the recall is that in 2016 DIAM applied for a patent for a new impeller. (*See* Compl. ¶ 18). This is not

enough to show knowledge.  And third, DIAM never spoke to the Plaintiffs at all, so it had no duty to refrain from misleading words.  Accordingly, the MPCFA claim should be dismissed as against DIAM.

> c. *Plaintiffs' claim for punitive damages under the MPCFA fails because they have not plausibly alleged "deliberate disregard."*

Plaintiffs' claim for punitive damages, (Compl. ¶ 735), under Minn. Stat. § 549.20(1)(a) fails because they have not shown "deliberate disregard."  In order to establish a claim for punitive damages in Minnesota, "a party must show—by clear and convincing evidence—that the Defendant acted with 'deliberate disregard for the rights or safety of others.'"  *Healey v. I-Flow, LLC*, 953 F. Supp. 2d 868, 875 (D. Minn. 2012) (quoting Minn. Stat. § 549.20(1)(a)).  "[D]eliberate disregard is shown only:

> if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or
>
> (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20(1)(b).  "'A mere showing of negligence is not sufficient' to sustain a claim for punitive damages."  *Healey*, 853 F. Supp. 2d at 875 (quoting *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 268

(Minn. 1992)).  "The deliberate disregard standard in Minnesota is a high standard" and "the Minnesota Court of Appeals has characterized this new standard as a heightened one."  *Id.* (internal quotation marks omitted).

In this case, the Plaintiffs have not met this high standard.  They point to nothing other than a 2016 patent application for a new impeller to show that the Denso Defendants had any knowledge of the alleged Fuel Pump Defect before the recall.  (*See* Compl. ¶ 18).  This is not enough to meet the high standard set out in the Minnesota statutes.  The claim for punitive damages under the MPCFA should be dismissed as against DIAM.

> **8.**   **New Jersey:** **Plaintiffs have failed to state a claim for violation of the NJCFA because the Plaintiffs fail to allege an ascertainable loss.**

The NJCFA claim fails because the Plaintiffs have failed to allege an "ascertainable loss."  Section 56:8-19 of the NJCFA states that "[a]ny person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action."  "An ascertainable loss under the NJCFA is one that is quantifiable or measurable, not hypothetical or illusory." *Schecter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2019 WL 3416902, at *8 (D.N.J. July 29, 2019) (internal quotation marks omitted); *see also In re AZEK Bldg. Prods., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 624 (D.N.J. 2015).

An ascertainable loss may take the form of on "out-of-pocket loss" or "a demonstration of loss in value." *Id.*

*Schecter* is instructive.    There, the plaintiff alleged that he suffered an ascertainable loss because:

> he was mislead into leasing his Class Vehicle which was worth less than promised [as a result of the] Powertrain Defect and he suffered an out-of-pocket loss constituting the difference between the value of the vehicle with a fully functioning powertrain versus the value of the vehicle with the Powertrain Defect.

*Schecter*, 2019 WL 3416902, at *8 (internal quotation marks omitted).  The plaintiff further alleged that "had Plaintiff known the true nature of the vehicle as he alleges, he would not have leased the vehicle on the same terms and would have paid less, or he would have leased a comparable vehicle instead." *Id.* (internal quotation marks omitted).  The court found that the plaintiff "failed to plead an ascertainable loss that is sufficiently quantifiable or measurable in nature."  The plaintiff provided no

> information with respect to the terms of his leased vehicle, including its price; nor has he alleged any facts that describe what a hypothetical lease for a vehicle with a defective powertrain would be, in order for the Court to ascertain, or even reasonably estimate, the difference in value between Plaintiff's lease and the alleged lease which he would have executed. Rather, Plaintiff merely contends that he "would have paid less" if he was informed about the condition of his Class Vehicle. With nothing more, this theory of "loss" is purely based on conjecture. Alternatively, in the event Plaintiff would have leased a different vehicle, he does not identify a comparable vehicle or allege its price. These allegations cannot satisfy the ascertainable loss element, as Plaintiff has not shown that his alleged out-of-pocket losses are readily quantifiable.

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

*Id.*  Other courts have come to similar conclusions.  *See, e.g.*, *Lieberson v. Johnson***Error! Bookmark not defined.** *& Johnson Con. Cos., Inc.*, 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011) ("[A]bsent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss.").

In this case, the allegations are similar to *Schecter*.  Plaintiff Mutschler alleges that she suffered losses from "out-of-pocket loss, future attempted repairs, and diminished value of the Affected Vehicle."  (Compl. ¶ 70).  Like in *Schecter*, the Complaint provides no indication as to any actual values of the vehicles or the hypothetical leases.  "[I]n the absence of any basis for valuation, the Court is left without a method to quantify Plaintiffs' loss. Under New Jersey law, that will not do."  *In re AZEK Bldg. Prods., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d at 624.  Accordingly, the Plaintiffs have not shown an ascertainable loss and the NJCFA claim fails as against DIAM.

### 9.    <u>Oregon</u>: Plaintiffs' claim for punitive damages fails.

Plaintiffs' claim for punitive damages under O.R.S. 646.638(1), (Compl. ¶ 852), fails because the pleadings do not establish facts on which Plaintiffs can prove by clear and convincing evidence that DIAM "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has

acted with a conscious indifference to the health, safety and welfare of others." O.R.S. § 31.730(1).  The 2016 patent application allegedly establishing that the Denso Defendants had knowledge of the alleged Fuel Pump Defect before the recall, (*See* Compl. ¶ 18), is not evidence upon which Plaintiffs can prove malice and recklessness.  Therefore, the Court should dismiss Plaintiffs' claim for punitive damages under the Oregon consumer protection statute as against DIAM.

### 10. <u>Rhode Island</u>: Plaintiffs' claim for punitive damages fails.

Plaintiffs' claim for punitive damages under the Rhode Island consumer protection statute, (Compl. ¶ 900), fails because such damages are available under R.I. Gen. L. 6-13.1-5.2(a) only for willful, wanton, reckless or wicked [conduct] so as to merit the imposition of punitive damages." *Champlin v. Washington Tr. Co., of Westerly*, 478 A.2d 985, 987 (R.I. 1984).  Therefore, the Court should dismiss Plaintiffs' claim for punitive damages under the Rhode Island consumer protection statute as against DIAM.

### 11. <u>Texas</u>: Plaintiffs fail to state a claim for violation of the TDTPA because DIAM did not communicate directly with consumers.

The TDTPA claim fails because the statute does not apply to DIAM.  The TDTPA was not intended to reach upstream manufacturers and suppliers when their representations are not communicated to the consumer directly.  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).  The TDTPA only imposes liability

50

for a defendant's deceptive conduct when it occurred "in connection with" a consumer transaction with the plaintiff. *Brittan Commc'ns. Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002). The "in connection with" requirement of the TDTPA limits liability to the person actually committing the deception, rather than imposing liability on defendants who introduce a particular product into the stream of commerce. *Amstadt*, 919 S.W.2d at 650. The TDTPA does not shift the focus from a defendant's deceptive conduct to whether a product that was sold caused injury to a plaintiff. *Id.*

In this case, the Plaintiffs failed to plead any facts showing that the Denso Defendants engaged in any false, misleading, or deceptive acts in connection with Plaintiff Gardener's purchase of his vehicle, much less with the particularity standard required under Rule 9(b). Indeed, the Plaintiffs allege only that Plaintiff Gardener's decision to lease was based on *Subaru's* marketing materials, without any reference to the Denso Defendants. (Compl. ¶¶ 165, 167).

The Denso Defendants cannot be liable under the TDTPA simply for inserting its Fuel Pump into the stream of commerce. *See Amstadt*, 919 S.W.2d at 650. The *Amstadt* case involved TDTPA claims by homeowners against manufacturers and suppliers of raw material used in the manufacture of polybutylene plumbing systems. At issue was whether the Legislature intended for upstream suppliers of raw material and component parts to incur liability under the TDTPA when none of their alleged

51

misrepresentations reached the plaintiffs. The Texas Supreme Court answered this question firmly in the negative, ruling that the upstream manufacturers and suppliers—which never directly marketed or promoted their product to the homeowners—could not be found liable under the TDTPA. The court reasoned that none of the misrepresentations alleged by the plaintiffs as a basis for their TDTPA claim were made "in connection with" a consumer transaction—the plaintiffs' purchase of their homes. Consequently, as a matter of law, the raw material supplier had no liability under the TDTPA.

The same functional analysis of *Amstadt* applies here. Because the Plaintiffs failed to allege any facts claiming that the Denso Defendants engaged in any false, misleading, or deceptive conduct in connection with its consumer transaction, the TDTPA claim fails as to DIAM.

### 12.   <u>Vermont</u>: Plaintiffs' claim for punitive damages fails.

Plaintiffs' claim for punitive damages, (Compl. ¶ 1002), under Vermont law fails because they have not shown that the Denso Defendants have acted with actual malice. In order to establish punitive damages under the Consumer Fraud Act, there must be "a showing of actual malice." *Bruntaeger v. Zeller*, 515 A.2d 123, 127 (Vt. 1986). "In this respect, the consumer fraud law differs from ordinary civil law where an award of exemplary damages is discretionary with the fact finder even where malice is present. Under our consumer fraud statute, exemplary damages may be

52

appropriate in certain circumstances.  They are not, however, mandated merely upon a showing of a statutory violation."  *Id.*  "Malice is shown through conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights," *Crump v. P & C Food Mkts., Inc.,* 576 A.2d 441, 449 (Vt. 1990), and it may be inferred from the surrounding circumstances and the nature of the defendant's conduct." *L'Esperance v. Benware*, 830 A.2d 675, 682 (Vt. 2003) (internal quotation marks and citation omitted).

In this case, the Plaintiffs have not met this high standard.  They point to nothing other than a 2016 patent application for a new for a new impeller to show that the Denso Defendants had any knowledge of the alleged Fuel Pump Defect before the recall and disregarded the facts by failing to disclose them to the public. (*See* Compl. ¶ 18).  This is not enough to meet the high standard set out under Vermont common law.  The claim for punitive damages under Count II should be dismissed as against DIAM.

## III.    All Claims should be dismissed as prudentially moot

As explained in greater detail in Subaru of America's brief, all claims should be dismissed under the prudential mootness doctrine, because Subaru's recall, under the auspices of NHTSA, has mooted the court's ability to provide meaningful relief. *See, e.g., Winzler v. Toyota Motor Sales U.S.A.*, Inc., 681 F.3d 1208, 1210-1212 (10th Cir. 2012) ("[T]he act of notifying NHTSA of a defect and announcing a recall

. . . set into motion the statutorily mandated and administratively overseen national recall process"). Therefore, dismissal is proper.

## CONCLUSION

For the foregoing reasons, DIAM respectfully requests that the Court grant its Motion and dismiss all claims against it.


Dated: March 22, 2021

*/s/* Jose L. Linares
Jose L. Linares
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Email: jlinares@mccarter.com

Kristofor T. Henning
**McCARTER & ENGLISH, LLP**
1600 Market St.
Suite 3900
Philadelphia, PA 19103
Telephone: (215) 979-3800

Daniel R.W. Rustmann (*pro hac vice*)
**BUTZEL LONG, P.C.**
150 West Jefferson Avenue, Suite 100
Detroit, MI 48226
(313) 225-7000
rustmann@butzel.com

IBLOOMFIELD\000137556\0012\3089183.v1-3/22/21

Sheldon H. Klein (*pro hac vice*)
**BUTZEL LONG, P.C.**
41000 Woodward Avenue
Stoneridge West Building
Bloomfield Hills, MI 48304
(248) 258-1414
klein@butzel.com

*Counsel for Denso International America, Inc.*

55