## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILLES COHEN, JOHN MICKLO, MUHAMMAD ADNAN, DONNY WOO, BENJAMIN MOORE, MARY LOU PLANTE, MEREDITH MEIN DE VERA, DAN ROSENTHAL, IGOR KRAVCHENKO, ALEXANDRA EFANTIS, BLAISE FONTENOT, KATHERINE MUTSCHLER, JACQUELINE FERGUSON, BENJAMIN CHRISTENSEN, JENNIFER LILLEY, STEVEN BIONDO, CHANTEL NELSON, JACQUELINE BROCKMAN, MARTY BROWN, CHRISTINE KING, and KEVIN KING, individually and on behalf of all others similarly situated, | Case No.: 1:20-cv-08442-JHR-AMD<br><br>**OPINION** |
| Plaintiffs, | |
| v. | |
| SUBARU OF AMERICA, INC., *et al.* | |
| Defendants. | |

This matter is before the Court on the motion to dismiss filed by Defendant Denso International America, Inc. ("Denso"). [Dkt. 78-1]. For the reasons set forth below, the Court will grant Denso's motion in part and deny Denso's motion in part. A summary of the Court's findings is available in Appendix A to this opinion.

1

## I.      Background

As detailed in the procedural history section below, this case results from the consolidation of four separate putative class action lawsuits filed against Denso, its parent company Denso Corporation,[1] and its co-defendants Subaru of America, Inc. and Subaru Corporation.[2]  Plaintiffs in this case are thirty-four individuals who purchased or leased Subaru vehicles manufactured between 2013 and 2019.  The following table identifies Plaintiffs, their states of residence, the year and model of their Subaru vehicle, and the states where they purchased or leased their vehicles:

| Plaintiff | Model | Model Year | Resident State | State of Purchase or Lease |
|---|---|---|---|---|
| Katherine Griffin | Outback | 2018 | Ala. | Ala. |
| Janet Oakley | Outback | 2017 | Ala. | Ala. |
| Adam Whitley | Outback | 2017 | Ala. | Ala. |
| Meredith Mein De Vera | Ascent | 2019 | Ark. | Ark. |
| Muhammad Adnan | Ascent | 2019 | Cal. | Cal. |
| Donny Woo | Impreza | 2019 | Cal. | Cal. |
| Chiara Bancod-Hile | Impreza | 2015 | Cal. | Cal. |
| Robert Karrat | Outback | 2013 | Conn. | N.Y. |
| Paula Weeks | Ascent | 2019 | Conn. | Mass. |
| Martin Torresquintero | Outback | 2019 | Conn. | Conn. |
| Gilles Cohen | Impreza | 2019 | Fla. | Fla. |

---

[1] Denso is incorporated in Delaware and has its principal place of business in Michigan.  [CAC ¶ 178].  Denso is a wholly owned subsidiary of Denso Corporation, which is located in Japan.  [CAC ¶¶ 175–76].

[2] Citations refer to the Consolidated Class Action Complaint ("CAC") filed as a result of this consolidation.  [Dkt. 33].

| Plaintiff | Model | Model Year | Resident State | State of Purchase or Lease |
|---|---|---|---|---|
| Dan Rosenthal | Forester | 2019 | Fla. | Fla. |
| Cole Sweeton | Impreza | 2019 | Ga. | Tenn. |
| Roman Anderson | Outback | 2017 | Haw. | Haw. |
| Igor Kravchenko | Impreza | 2019 | Ill. | Ill. |
| Alexandra Efantis | Ascent | 2019 | Md. | Md. |
| Blaise Fontenot | Outback | 2019 | Md. | Md. |
| John Micklo | Ascent | 2019 | Minn. | Minn. |
| David Sroelov | Outback | 2019 | Nev. | Nev. |
| Katherine Mutschler | Legacy | 2019 | N.J. | N.J. |
| Jacqueline Ferguson | Outback | 2019 | N.J. | N.J. |
| Troy Perry | Ascent | 2020 | N.C. | N.C. |
| Benjamin Moore | Outback | 2019 | N.Y. | Vt. |
| Mary Lou Plante | Outback | 2019 | N.Y. | N.Y. |
| Benjamin Christensen | Outback | 2019 | Or. | Or. |
| Jennifer Lilley | Outback | 2019 | Pa. | Pa. |
| Steven Biondo | Ascent | 2019 | R.I. | R.I. |
| Christine Schultz | Ascent | 2019 | S.C. | S.C. |
| Chantel Nelson | Ascent | 2019 | Tex. | Tex. |
| Mark Gardener | Legacy | 2019 | Tex. | Tex. |
| Jacqueline Brockman | Ascent | 2019 | Wash. | Wash. |
| Marty Brown | Ascent | 2019 | Wash. | Wash. |
| Christine King | Legacy | 2019 | Wis. | Wis. |
| Kevin King | Impreza | 2019 | Wis. | Wis. |

While the CAC contains other facts relevant to each Plaintiff's claims, the Court will discuss those facts in the analysis section as necessary to decide Denso's motion.

Plaintiffs allege that their Subaru vehicles—and all Subaru vehicles manufactured since 2013—contain defective low-pressure fuel pumps[3] manufactured by Denso.  [CAC ¶¶ 1, 14].  According to the CAC, these fuel pumps contain an impeller[4] that is "unsuitable for its environment" because it was produced using a "low density material."  [CAC ¶¶ 199, 204].  Because of this "low density material," the impellers can absorb excessive amounts of fuel, become deformed, and fail to adequately pump fuel from the fuel tank to the engine.  [CAC ¶¶ 199–209].  According to the CAC, Subaru vehicles containing the defective fuel pump are "unsafe to operate because [the vehicles] will not predictably respond to operator input to accelerate and … could stall or completely lose power while in motion."  [CAC ¶ 1].  The Court will refer to this issue of inadequate impeller materials as alleged in the CAC as the "Defect."

Plaintiffs allege that they have suffered economic injuries as a result of the Defect, but do not allege that the Defect caused physical harm to them or anyone else, or that the Defect caused damage to any other property.[5]

---

[3] Low pressure fuel pumps are located in a vehicle's fuel tank.  They lift gas from the fuel tank and send it to the engine.  [CAC ¶¶ 195–96].

[4] The impeller is a component of the fuel pump assembly that spins to generate negative pressure and move fuel from the fuel tank to the engine itself.  [CAC ¶¶ 196–97].

[5] [*E.g.* CAC ¶ 20 ("Plaintiffs accordingly bring this class action complaint to recover on behalf of the Class all relief to which they are entitled, including but not limited to recovery of the purchase price of their vehicles, compensation for overpayment and diminution in the value of their vehicles, out-of-pocket and incidental expenses, and an injunction compelling Subaru to replace or recall and fix the Affected Vehicles.")].

### a. Recalls

Subaru and Denso commenced a series of recalls concerning fuel pump impellers with the National Highway Traffic Safety Administration ("NHTSA").[6]  On April 16, 2020, Subaru initiated a recall which applied to more than 188,000 Subaru Impreza, Outback, Legacy, and Ascent model vehicles from model year 2019 (the "Subaru Recall").  [CAC ¶ 9].  The report announcing the recall (the "Subaru Recall Report") stated in part:

> The affected vehicles may be equipped with a low pressure fuel pump produced during a specific timeframe which includes an impeller that was manufactured with a lower density.  If the surface of the lower density impeller is exposed to solvent drying for longer periods of time, it may develop fine cracks.  Those cracks may lead to excessive fuel absorption, resulting in impeller deformation.  Over time, the impeller may become deformed enough to interfere with the body of the fuel pump, potentially causing the low pressure fuel pump to become inoperative.

[CAC Ex. C].  As this excerpt demonstrates, the Subaru Recall attributes the Defect not just to the impeller's material density but to the combination of low density and excessive exposure to "solvent drying."  [*Id.*].  The CAC alleges that Subaru mischaracterizes the nature of the Defect, by qualifying the Defect in this manner.  [CAC ¶ 204].

As a remedy, the Subaru Recall states that "[f]or all of the potentially affected vehicles, Subaru dealers will replace the low pressure fuel pump … with an improved part at no cost" (the "Recall Repair").  [CAC Ex. C at 7].  The Subaru Recall also states that Subaru "began using the fuel pump with filter with a higher density impeller [sic]" as of July 2019.  [*Id.*].  However, the

---

[6] In the Federal Motor Vehicle Safety Act (the "MVSA"), 49 U.S.C. §§ 30101 et seq., Congress granted the Secretary of Transportation the "authority to investigate possible vehicle defects and, where a defect is found, to require that manufacturers notify owners and remedy the defect."  *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1216 (N.D. Cal. 2002) (citing 49 U.S.C. §§ 30116–30120)).  The Secretary of Transportation then delegated to the NHTSA the authority to carry out these duties and to initiate and oversee vehicle recalls.  49 C.F.R. §§ 501.1–501.2.

CAC alleges that Subaru's efforts are inadequate.  [CAC ¶ 17].  According to the CAC, Subaru does not replace the low-pressure fuel pump, but only replaces the fuel pump's motor which houses the defective impeller.  [*Id.*].  Subaru replaces the motor alone because Denso "provided only the defective fuel pump *motor*, and not the entire fuel pump *module*" to Subaru in an effort to cut costs.  [CAC ¶ 222 (emphasis in original)].  Plaintiffs allege that this repair deviates from the industry standard practice of replacing the fuel pump entirely.[7]  [*Id.*].  It also requires technicians to deconstruct the fuel pump assembly which risks damaging the assembly, causing gas leaks, "creating additional hazards," and "exacerbating the Fuel Pump Defect instead of correcting it."  [*Id.*].  The CAC further alleges that "Subaru failed to train technicians on the complicated procedures required to adequately" and safely repair the fuel pump assembly.  [CAC ¶ 235].  Plaintiffs cite several complaints filed with the NHTSA by non-Plaintiff Subaru owners who received the Recall Repair but experienced subsequent performance issues with their vehicles.  [CAC ¶ 239 n.34].

On April 27, 2020, Denso issued a recall for 2,020,000 fuel pumps that it manufactured between September 1, 2017 and October 6, 2018 ("Denso Recall I").  [CAC ¶ 4].  Denso Recall I stated, in part, that the fuel pumps contain a defective impeller that "could render the fuel pump inoperable."  [CAC ¶ 5].  The recall report that accompanied Denso Recall I ("Recall Report I") identified two potential issues with its impellers, stating that if "an impeller is manufactured with a lower density, and [1] contains a lower surface strength or [2] is exposed to production solvent drying for a longer period of time, higher levels of surface cracking may occur which, when

---

[7] "Subaru's Recall Repair not only deviates from industry norms, but it also departs from Subaru's typical practice.  For example, outside of this Recall, customers who bring their vehicles to a technician for fuel pump repair typically receive a new fuel pump module."  [CAC ¶ 238].

excessive fuel absorption occurs, may result in impeller deformation."[8]  [CAC ¶ 5].  On June 11,

2020, Denso expanded the recall to cover 2,156,057 affected fuel pumps ("Denso Recall II").

[Dkt. 7].  On November 17, 2020, Denso again expanded its recall to include 1,517,721

additional fuel pumps manufactured between June 26, 2017 and June 28, 2019 ("Denso Recall

III).  [CAC ¶ 15].

     According to Plaintiffs, these recalls do not capture all Subaru vehicles affected by the

Defect.  The CAC alleges that "this defect has existed in Subaru vehicles since at least 2013,"

and that other car manufacturers containing the same defective fuel pumps have recalled vehicles

as early as model year 2013.  [CAC ¶ 14].

     **b.  Knowledge and Marketing**

     The CAC alleges that a 2016 patent application [the "Patent Application"]

demonstrates that Denso knew of the Defect before Subaru or Denso initiated

recalls:

> In a patent application filed in 2016 Denso admitted that the
> composite (plastic) impellers in its low-pressure fuel pumps "may
> be swelled due to the fuel and water contained in the fuel, [and]
> therefore a rotation of the impeller may be stopped when the
> impeller is swelled and comes in contact with the [fuel pump]
> housing."  The defect described by the patent application is
> virtually the same as the Fuel Pump Defect at the heart of this case.

[CAC ¶ 211].

     The CAC alleges that consumer complaints filed with the NHTSA "reveal that the fuel

pump defect poses serious safety risks."  [CAC at 74 (capitalization omitted)].  The CAC lists

---

[8] As Plaintiffs point out, the Subaru Recall does not identify low density impellers with a lower
surface strength as being potentially defective.  [CAC ¶ 13].

complaints that document engine performance issues in Subaru vehicles consistent with symptoms of the Defect as early as 2017.  [CAC ¶¶ 243–85].

The CAC also alleges that Denso markets itself as a manufacturer of safe and reliable products.  [CAC ¶ 310].  The CAC points to representations on Denso's website stating that Denso employs "meticulous quality control" and "focuses on safety because cars carry people." [CAC ¶ 308].

Plaintiffs claim that they would have paid less for their vehicles or not purchased their vehicles at all if they knew of the Defect or Subaru's refusal to properly repair the Defect.  [CAC ¶ 311].

### c.  Procedural History

As noted above, this case is the consolidation of four separate putative class action suits. *Griffin  v. Subaru of Am., Inc.*, 2:20-cv-00563 was filed in the Northern District of Alabama on April 23, 2020; *Anderson v. Subaru of Am., Inc.*, 2:20-cv-01587 was filed in the District of Hawaii on June 26, 2020; *Cohen v. Subaru*, 20-cv-08442 was filed in this district on July 7, 2020; and *Adnan v. Subaru*, 1:20-cv-09082 was filed in this district on July 17, 2020.  The Court granted a stipulated motion to consolidate the *Adnan* and *Cohen* cases on October 6, 2020.  [Dkt. 11].  The Northern District of Alabama consolidated the *Anderson* case into the *Griffin* case on October 19, 2020.  [Dkt. 31 ¶ 2].  This Court granted a stipulated motion to consolidate the *Griffin* case into the *Cohen* case on February 3, 2021.  [Dkt. 32].  The CAC names Subaru and Denso as defendants, as well as their parent companies, Subaru Corporation and Denso Corporation, respectively.  [*See* Dkt. 33].  However, Plaintiffs voluntarily withdrew their claims against Denso Corporation, [Dkt. 98], and Subaru Corporation.  [Dkt. 104].  The CAC alleges fifty-nine substantive counts against Subaru and/or Denso.  Denso filed the present motion to

dismiss Plaintiffs' strict product liability, common-law fraud, and consumer protection statute claims.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester Cnty Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[9] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[9] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.*

The Court need not accept "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005))). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   Analysis

#### a.   Strict Liability Claims (Count IV)

Count IV of the CAC alleges common-law strict product liability against Denso.  Denso moves to dismiss these claims, arguing that certain state statutes preempt Plaintiffs' strict liability claims, and that the economic loss rule bars all strict liability claims.  The Court will address these arguments in turn.

##### i.   Choice of Law

Before reviewing Denso's arguments, the Court must determine which state's law applies to Plaintiffs' strict liability claims.  "[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  New Jersey applies the two-step most-significant-relationship test from the Second Restatement of Conflict of Laws.  *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 373 (D.N.J. 2019) (citing *Maniscalco v. Brother Int'l Corp. (USA)*, 793 F. Supp. 2d 696, 704 (D.N.J. 2011)).  "[T]he first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether there is a distinction between them." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008) (citations and quotations omitted).  If that distinction would lead to a different outcome for the claim at issue, a conflict exists, and if the application of either state's law "results in the same outcome, no conflict exists." *McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207, 216 (N.J. 2017) (citing *Rowe v. Hoffmann–La Roche, Inc.*, 917 A.2d 767 (N.J. 2007)).

"[I]f no conflict exists, the law of the forum state applies." *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (citations omitted).  "[I]f a conflict does exist, the Court

11

must determine which state has the 'most significant relationship' to the claim, by 'weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action.'" *Id.* (quoting *Nikolin v. Samsung Elecs. Am., Inc.*, Civ. No. 10–1456, 2010 WL 4116997, at *3 (D.N.J. Oct. 18, 2010)).

Section 145 of the Second Restatement of Conflict of laws enumerates factors[10] that apply to torts generally but acknowledges that "special rules" exist for "particular torts and for particular issues in tort." Restatement (Second) Conflict of Laws § 145 cmt. a. The special rules do not map neatly onto Plaintiffs' claims here, as the Second Restatement does not set forth rules for product liability claims as alleged in the CAC. Section 146 provides rules for "personal injuries"—such as physical injuries or "mental disturbance"—that result from negligence or strict liability. *Id.* § 146 cmts. a, b. Section 147 applies to "injuries to tangible things" that result from negligence or strict liability. *Id.* § 147 cmt. a. The CAC alleges strict liability claims based on a defective product which, in some instances, caused vehicle performance issues, but has not

---

[10] Section 145 provides that

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

caused physical injury.  As the Court understands it, the CAC primarily alleges economic

injuries rather than injuries to person or property.[11]  Though §§ 146 and 147 do not squarely

contemplate Plaintiffs' injuries, the Court will rely on these provisions for guidance because they

contemplate injuries resulting from strict liability claims.

Sections 146 and 147 both state that

> the local law of the state where the injury occurred
> determines the rights and liabilities of the parties unless,
> with respect to the particular issue, some other state has a
> more significant relationship under the principles stated in
> § 6 to the occurrence, the thing and the parties, in which
> event the local law of the other state will be applied.

The key question, then, is where Plaintiffs' injuries occurred.  As stated above, the CAC alleges

economic injuries, which Plaintiffs presumably felt in the state where they reside.  *See Air Prod.*

*and Chems., Inc. v. Eaton Metal Prod. Co.*, 272 F. Supp. 2d 482, 503–04 (E.D. Pa. 2003).

Plaintiffs also allege that they use their Subaru vehicles "for personal and family uses."  [*E.g.*

CAC ¶ 131].  Thus, to the extent that vehicle performance difficulties caused by the Defect

constitute injuries in and of themselves, it is reasonable to infer that Plaintiffs also suffered these

injuries in the states where they reside.[12]  Home state law therefore presumptively applies to

Plaintiffs' claims unless some other state has a stronger interest.

---

[11] [*E.g.* CAC ¶ 126 ("Defendants' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Affected Vehicle with the Fuel Pump Defect has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of the Affected Vehicle.")].

[12] Arguably, Plaintiffs suffered injury in the state where they purchased their vehicles because they "overpaid for their Affected Vehicles and did not receive the benefit of their bargain." [CAC ¶ 382].  While the state of purchase may affect the state interest analysis under §§ 6 and 145, the state of purchase is the possible site for a contract-based injury but not a product liability claim.  *See* Restatement (Second) Conflict of Laws § 188.

No other state has a stronger interest.  The only other states with any connection to Plaintiffs' product liability claim against Denso are New Jersey, where the claims are being litigated; Michigan, where Denso holds its principal place of business; and Delaware, where Denso is incorporated.[13]  But the factors set forth in Restatement § 6 do not support applying the law of these states instead of the states where Plaintiffs reside and purchased their vehicles.  In product liability cases, New Jersey courts have found that "interests of comity, the interests of the parties, the purposes of this field of law, and the respective governmental interests favored the state where the party was allegedly injured…."  *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 882–83 (D.N.J. 2010) (citing cases); *Deemer v. Silk City Textile Mach. Co.*, 475 A.2d 648, 652–53 (N.J. Super. Ct. App. Div. 1984) (finding North Carolina law applied to product liability claim where plaintiff suffered injury in North Carolina, but where the product was manufactured in New Jersey by a manufacturer organized in New Jersey).

Ultimately, the Court will apply the law of Plaintiffs' home states if the law of that state conflicts with New Jersey law with respect to Plaintiffs' strict liability claims.

### ii.  Statutory Preemption

Denso first argues that state statutes in North Carolina, New Jersey, Oregon, and Washington preempt or otherwise defeat Plaintiffs' common-law strict liability claims.  [Dkt. 78-1 at 21–22].  As Denso points out, North Carolina has statutorily barred strict product liability tort claims.  *See* N.C. Gen. Stat. § 99B-1.1 ("There shall be no strict liability in tort in product

---

[13] As the chart of Plaintiffs above demonstrates, several Plaintiffs purchased their vehicles in states other than where they live. For these Plaintiffs, the state of purchase could be an interested state under §§ 6 and 145 as "the place where the relationship, if any, between the parties is centered." The Court gives this factor little if any weight here because Plaintiffs purchased their vehicles from Subaru dealerships and not from Denso vendors or retail stores.  Thus, the relationship between Plaintiffs and Denso forged at the state of purchase is weak at best and does not override the presumption in favor of applying the law of the state where the injury occurred.

liability actions."); *Burrell v. Bayer Corp.*, 260 F. Supp. 3d 485, 494 (W.D.N.C. 2017) ("To the extent that plaintiff's products liability claim posits a strict liability theory, state law does not recognize such a theory." (citing *Am. & Efird LLC v. Pittsfield Plastics Eng'g, Inc.*, No. 3:12CV194, 2012 WL 5463130, at *1 (W.D.N.C. Nov. 8, 2012))).  Thus, the Court agrees with Denso that Plaintiffs' strict product liability claim cannot survive under North Carolina law.

Denso argues that New Jersey,[14] Oregon,[15] and Washington[16] have enacted product liability statutes that "subsume" or "supplant" Plaintiffs' common-law strict liability claims.  In other words, Denso argues that Plaintiffs' common-law strict liability claims must be dismissed because the CAC does not explicitly cite these state statutes.  [Dkt. 78-1 at 21–22].  Plaintiffs respond that Federal Rule of Civil Procedure 8 does not require them to explicitly cite these statutes to state claims for strict product liability in New Jersey, Oregon, and Washington.  [Dkt. 94 at 88–89].

Federal Rule of Civil Procedure 8 does not "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).  To "stave off threshold dismissal for want of an adequate statement of their claim" plaintiffs must only "inform[] [defendants] of the factual basis for their complaint."  *Id.* at 11.  "Rule 8's 'liberal pleading principles' do not permit dismissal for 'failure in a complaint to cite a statute, or to cite the correct one. . . .  Factual allegations alone are what matters.'"  *In re DVI, Inc.*, 326 B.R. 301, 309 (Bankr. D. Del. 2005) (quoting *Wynder v.*

---

[14] N.J. Stat. Ann. § 2A:58C-1 et seq.

[15] Or. Rev. Stat. Ann. § 30.920.

[16] Wash. Rev. Code Ann. § 7.72.030.

*McMahon*, 360 F.3d 73, 77 (2d Cir. 2004)); *accord Boone v. T-Mobile USA Inc.*, No. CV 17-378-KM-MAH, 2018 WL 588927, at *13 (D.N.J. Jan. 29, 2018) (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc)).

Under this standard, the Court agrees with Plaintiffs. The CAC alleges strict product liability based on a defective fuel pump but does not specify whether this is a statutory or common-law claim. While "imperfect," the CAC informs Denso that Plaintiffs seeks to recover for strict product liability, which is all Plaintiffs must do at this stage.

In sum, the Court will grant Denso's motion to dismiss Plaintiffs' strict product liability claims under North Carolina law, but deny Denso's motion as to Plaintiffs' strict liability claims under New Jersey, Oregon, and Washington law.

### iii. Economic Loss Rule

Denso argues that nineteen states[17] recognize the economic loss rule, or some variation of the economic loss rule, which bars Plaintiffs' strict liability claims in those states.

The economic loss rule generally holds that "purely economic losses are not recoverable in tort." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 236, 239 (D.N.J. 2020) (first quoting *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (California law); then quoting *Benkle v. Ford Motor Co.*, No. SACV161569, 2017 WL 9486154, at *9 (C.D. Cal. Dec. 22, 2017) (Florida law)); *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588–89 (D.N.J. 2014) (New Jersey law). When applied to

---

[17] Alabama, Arkansas, California, Connecticut, Florida, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, Nevada, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Vermont, and Wisconsin. In its opening brief, Denso argues that the economic loss doctrine bars strict liability claims under Rhode Island law, [Dkt. 78-1 at 27], but concedes on reply that this argument fails. [Dkt. 106 at 34 n.26]. Further, the Court has already dismissed Plaintiffs' North Carolina strict liability claim.

the purchase and sale of consumer products, "[t]he vast majority of courts across the country…
have concluded that purchasers of personal property… should be limited to recovery under
contract principles." *Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 270–71 (N.J. 1997)
(collecting cases).  Thus, unless a product defect causes physical harm or harm to property other
than the product itself, a purchaser can only recover contract damages.  *See id.* at 267
("Generally speaking, tort principles are better suited to resolve claims for personal injuries or
damage to other property." (collecting cases)).[18]  Put differently, plaintiffs generally cannot
recover under negligence or strict product liability theories where they only suffer economic
injury.  *Id.* at 695 A.2d at 267, 275.

Denso argues that Plaintiffs cannot recover for strict product liability under the
economic-loss rule because the CAC does not allege that Plaintiffs suffered physical injury or
injury to property other than Plaintiffs' vehicles.  [Dkt. 78-1 at 23–28].  Plaintiffs do not argue or
point to facts showing injury to person or other property.  Nor do Plaintiffs dispute that these
states apply the economic loss rule.  Instead, Plaintiffs respond that state-specific exceptions to
the economic loss rule defeat Denso's argument.  [Dkt. 94 at 90–96].  The Court will address
each of these state-specific arguments in turn.

---

[18] *See also City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014)
("California's economic loss rule provides that the recovery of economic loss under strict
products liability is appropriate only when there has been physical harm to persons or property
other than the allegedly defective product itself." (citations omitted)); *Roy v. Ward Mfg., LLC*,
No. CIV.A. RDB-13-3878, 2014 WL 4215614, at *4 (D. Md. Aug. 22, 2014) ("A plaintiff
alleging only the third type, economic loss, is generally barred from bringing his claim under a
products liability or any other type of tort theory."); *Tiara Condo. Ass'n, Inc. v. Marsh &
McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013) ("Simply put, the economic loss rule is a
judicially created doctrine that sets forth the circumstances under which a tort action is
prohibited if the only damages suffered are economic losses.  The rule … was primarily intended
to limit actions in the products liability context." (citing *Indem. Ins. Co. of N. Am. v. Am.
Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004))).

### 1.   Choice of law for Economic Loss Rule Defense

New Jersey recognizes the economic loss rule.  *See, e.g.*, *Kuzian v. Electrolux Home Prod., Inc.*, 937 F. Supp. 2d 599, 608 (D.N.J. 2013) ("The Product Liability Act and common law tort actions do not apply to damage caused to the product itself, or to consequential but purely economic losses caused to the consumer because of a defective product." (quoting *Ford Motor Credit Co., LLC v. Mendola*, 48 A.3d 366, 374 (N.J. Super. Ct. App. Div. 2012)); *Alloway*, 695 A.2d at 275 ("[W]e hold that plaintiffs' tort claims are barred.").  As demonstrated below, the majority of the states which Denso cites recognize the economic loss doctrine in the same manner as New Jersey.  In these cases, no conflict exists, and the Court will analyze Denso's argument without moving to step-two of the choice-of-law analysis.  Where conflicts exist, the Court will apply the law of Plaintiffs' home states.

### 2.   Fraud Exception to the Economic Loss Rule

Plaintiffs argue that thirteen states[19] apply an exception to the economic loss rule where plaintiffs have alleged fraudulent or negligent misrepresentation.  [Dkt. 94 at 92].  The Court agrees that some states recognize an exception to the economic loss doctrine where a defendant violates an independent duty not to commit fraud that "aris[es] from principles of tort law." *Ponzio*, 447 F. Supp. at 236 (quoting *Robinson Helicopter, Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004)).  Where applicable, this exception may permit plaintiffs to pursue their fraud claims for purely economic injuries defendants despite the economic rule.  *See id.*  Plaintiffs argue that this exception applies to Plaintiffs' products liability claims because the CAC alleges fraud against Denso.  [Dkt. 94 at 92–93].

---

[19] Those states are Alabama, California, Florida, Hawaii, Illinois, Minnesota, New York, Nevada, Pennsylvania, South Carolina, Tennessee, Texas, and Wisconsin.

Even if this exception generally applies to fraud claims in some states, the Court rejects Plaintiffs' argument.  Although Plaintiffs have raised statutory and common-law fraud claims elsewhere in the CAC, Plaintiffs' strict liability claims are not fraud claims.  *See Alloway*, 695 A.2d at 274 (distinguishing contract and fraud remedies from strict product liability claims for injury to person or other property).  Plaintiffs' separate common-law and statutory fraud claims do not permit Plaintiffs to recover for strict product liability based only on economic losses.  *See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK/KW), 2021 WL 364663, at *6 (D.N.J. Feb. 3, 2021) ("New Jersey federal and state courts, as well as the Third Circuit, have consistently dismissed product-liability-related claims based on common law theories when at the heart of those theories is the potential 'harm caused by a product.'" (collecting cases)); *Robinson Helicopter*, 102 P.3d at 274 ("We hold the economic loss rule does not bar [plaintiff's] fraud and intentional misrepresentation claims because they were independent of [defendant's] breach of contract."); *see also* Minn. Stat. Ann. § 604.10(e) (barring application of economic loss rule only for "causes of action based upon fraud…."). Thus, even if certain states recognize a fraud exception to the economic loss rule, this exception does not save Plaintiffs' strict liability claims.

### 3.  Alabama

Plaintiffs argue that the economic loss rule does not bar their strict product liability claims under Alabama law because Denso and Plaintiffs were "not in contractual privity."  [Dkt. 94 at 91–92].  The Court agrees with Plaintiffs' interpretation of Alabama law.  "Alabama's economic loss rule does not mean that purely economic losses can never be recovered on a tort claim under Alabama law."  Rather, "[w]hat the economic loss rule means is that Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract."  *Freeman*

*v. NIBCO, Inc.*, 526 F. Supp. 3d 1112, 1126 (N.D. Ala. 2020) (citations and quotations omitted);

*Harbin v. RoundPoint Mortg. Co.*, No. 2:15-CV-01069-RDP, 2019 WL 7167588, at *5 (N.D.

Ala. Nov. 6, 2019) (quoting *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala.

2012)) (same).

By contrast, New Jersey law does not impose a privity requirement for the economic loss

doctrine because parties "within the distribution chain of goods" have remedies against a

manufacturer under New Jersey's uniform commercial code even if they are not in strict vertical

privity with the manufacturer.[20]  Thus, Alabama law conflicts with New Jersey law on this issue.

Plaintiffs Griffin, Oakley, and Whitely reside and purchased their vehicles in Alabama.  [CAC ¶¶

129, 133, 138].

Consistent with the Court's choice-of-law analysis above, the Court will apply Alabama

law.  Denso does not argue or point to facts in the CAC suggesting that that Denso and Plaintiffs

had a contractual relationship.  Thus, the economic loss rule does not bar Plaintiffs' strict

liability claim under Alabama law.  The Court denies Denso's motion to dismiss on this issue.

### 4.  Arkansas

Denso argues that, under Arkansas law, the component-parts doctrine bars Plaintiffs'

strict liability claims.  [Dkt. 78-1 at 25].  The component-parts doctrine holds that "suppliers of

---

[20] *See Paramount Aviation Corp. v. Agusta*, 288 F.3d 67, 73 (3d Cir. 2002) ("[A]s far as parties
(whether commercial or non-commercial) within the distribution chain of goods are concerned,
the U.C.C. alone controls the liability of a seller of goods for economic loss arising as a result of
a defect in those goods**; there is, accordingly, no liability in a tort action whether it be one
asserting strict liability or negligence**." (citations omitted) (emphasis added)); *see also id.* at
73–74 ("Under New Jersey's U.C.C., a seller of goods … impliedly warrants that its goods are
merchantable to all foreseeable, subsequent buyers.  This implied warranty runs to, and is
enforceable by, not only subsequent buyers, but also to those who subsequently acquire an
interest less than fee title in the goods, as for example a lessee of the goods.  Thus, what is called
'vertical privity' is not a requirement of a warranty claim under New Jersey U.C.C. law.").

inherently safe component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component-part supplier did not design or build." *Wagner v. Gen. Motors Corp.*, 258 S.W.3d 749, 755 (Ark. 2007) (quoting *In re TMJ Implants Prods. Liability Litig. v. E.I. DuPont de Nemours & Co.,* 97 F.3d 1050 (8th Cir. 1996)).  Like the economic loss rule, the component-parts doctrine bars recovery where a plaintiff has only suffered injury to "persons or property."  *Id.*

Plaintiffs respond that Arkansas has not adopted the component-parts doctrine.  [Dkt. 94 at 93–94].  *Wagner*, the only case which Denso cites to support its argument, recognizes that the component-parts doctrine "has not yet been adopted in Arkansas," *Wagner*, 258 S.W.3d at 756, and the Court's research did not identify any Arkansas state court case formally adopting the component-parts doctrine.  But as other federal courts have recognized, the *Wagner* court applied the component-parts doctrine to the facts of the case when analyzing the merits of the summary judgment motion before it.  *Id.* at 277; *see Davis v. Goodyear Tire & Rubber Co.*, No. 4:09CV00030 JMM, 2010 WL 1710001, at *3 (E.D. Ark. Apr. 26, 2010) (citing *Wagner* to grant summary judgment to component manufacturer under the component-parts doctrine).  Thus, it is unclear whether the component-parts doctrine lacks merit under Arkansas law.

At this juncture, the Court need not decide whether the *Wagner* court "adopted" the component-parts doctrine in Arkansas to reject Denso's argument.  The component-parts doctrine applies if the component part is "inherently safe," but the CAC alleges that the fuel pumps at issue here were defective and pleads facts to explain why the pumps were defective. *See Wagner*, 258 S.W.3d at 277 (denying part manufacturer's motion for summary judgment because issue of fact existed as to whether the component part was inherently safe and, therefore, whether the doctrine could apply at all).  At this stage, the Court must accept Plaintiffs' claims as

true and therefore cannot dismiss Plaintiffs' claim under the component-parts doctrine. *Twombly*, 550 U.S. at 556.  Thus, the Court will deny Denso's motion to dismiss on this issue.

### 5. California

"California's economic loss rule provides that the recovery of economic loss under strict products liability is appropriate only when there has been physical harm to persons or property *other* than the allegedly defective product itself."  *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014) (citing *Robinson Helicopter*, 102 P.3d at 273) (emphasis in original).  Because California Plaintiffs do not allege injury to person or other property, the Court will grant Denso's motion to dismiss product liability claims under California law on this issue.

### 6. Connecticut

Plaintiffs argue that Connecticut's Product Liability Law permits plaintiffs to recover purely economic losses resulting from "damage to property, including the product itself."  [Dkt. 94 at 90 (citing Conn. Gen. Stat. §§ 52-572n(a), 52-57m(d))].  The Court agrees with Plaintiffs' reading of Connecticut law.  *See Verdon v. Transam. Ins. Co.*, 446 A.2d 3, 8 (Conn. 1982) ("The legislative history of this statute contains a clear indication that the phrase 'damage to property' in this definition was intended to encompass economic harm.  The effect of this change in our law is to remove the requirement of privity of contract for an action by the person who has sustained an economic loss against the manufacturer or seller responsible for that loss.").  Connecticut law therefore conflicts with New Jersey law on this issue.

As decided above, the Court will apply the law of Plaintiffs' home states to their product liability claims.  Plaintiffs Torresquintero, Karrat, and Weeks reside in Connecticut, [CAC ¶¶ 109, 113, 158], so Connecticut law applies to their product liability claims.  As a result, the

economic loss doctrine does not defeat their strict liability claims and the Court will deny Denso's motion on this issue.

### 7.  Florida

Plaintiffs argue that Florida recognizes an exception to the economic loss rule for "extraordinary circumstances" to protect a plaintiff's economic interests, including where a plaintiff does not have contract remedies available.  [Dkt. 94 at 92].  The Court disagrees with Plaintiffs' reading of Florida law.  Florida law plainly recognizes that the economic loss doctrine prevents plaintiffs from recovering for economic injuries in product liability cases.  *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013) (observing that the economic loss rule "has its roots in the products liability arena, and was primarily intended to limit actions in the products liability context").  Further "the products liability economic loss rule … applies even in the absence of privity of contract."  *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 541 (Fla. 2004).  The Court will therefore grant Denso's motion to dismiss Plaintiffs' strict product liability claims under Florida law.

### 8.  Hawaii

Under Hawaii law, the economic loss rule bars causes of action "where a plaintiff alleges a purely economic loss stemming from injury only to the product itself."  *Keahole Point Fish LLC v. Skretting Canada Inc.*, 971 F. Supp. 2d 1017, 1027–28 (D. Haw. 2013) (citing *State of Hawaii ex rel. Bronster v. U.S. Steel Corp.*, 919 P.2d 294, 301 (Hi. 1996)).  Because Hawaii Plaintiffs do not allege injury to person or other property, the Court will grant Denso's motion to dismiss product liability claims under Hawaii law.

### 9.  Illinois

"Simply put, a product that damages only itself cannot be the subject of a suit for damages" under Illinois law.  *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016) (quoting *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 436 (Ill. Ct. App. 2002)).  "Absent injury to a plaintiff's person or property, a claim presents an economic loss not recoverable in tort."  *Id.* at 706–07 (quoting *In re Chi. Flood Litig.*, 680 N.E.2d 265, 275–76 (Ill. 1997)).  Because Illinois Plaintiffs do not allege injury to person or other property, the Court will grant Denso's motion to dismiss product liability claim under Illinois law on this issue.

### 10. Maryland

Denso acknowledges that a "public safety exception" applies to the economic loss rule under Maryland law, but argues that the exception does not apply in this case.[21]  [Dkt. 78-1 at 26].  This exception permits a plaintiff to recover for purely economic injuries where tortious conduct creates an unreasonable risk of death or personal injury.  *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Cont. Co.*, 517 A.2d 336, 345 (Md. 1986).  To determine whether the exception applies, courts must weigh the "nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury."  *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631–32 (Md. Ct. App. 1995).

> [W]hen analyzing the two elements, the critical test is not whether the plaintiff has alleged facts that meet an articulable threshold for both elements, but, rather, whether that plaintiff has met the

---

[21] The Court is unaware of such an exception under New Jersey law, so a conflict exists between New Jersey law and Maryland law on this issue.  Plaintiffs Efantis and Fontenot reside in Maryland and purchased their vehicles in Maryland.  Maryland therefore has the strongest interest in their claims and the Court will apply Maryland law.

threshold to satisfy either of the elements so long as, under the
facts alleged, both elements are, at a minimum, present.

*Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 269 (Md. Ct. App. 2007). At the same time, "mere

possibilities are legally insufficient to allege the existence of a clear danger of death or serious

personal injury." *Morris*, 667 A.2d at 633.

At this stage of the litigation, Plaintiffs have alleged facts that plausibly show Maryland's

public safety exception to the economic loss rule applies. Although the CAC suggests that the

risk of physical injury is low because it does not identify any physical injuries that resulted from

the Defect, it alleges that consumers have experienced "near misses" due to engine

malfunction.[22] Thus, the CAC alleges that the Defect causes some risk of physical injury, and it

is reasonable to infer that injuries resulting from engine failure could be severe. Thus, the risk

and severity of injury "elements" are "present" in the CAC's allegations. *Lloyd*, 916 A.2d at

269. The Court will therefore deny Denso's motion on this issue.

### 11. Massachusetts

Plaintiffs argue that Massachusetts recognizes an exception to the economic loss rule

where a plaintiff is exposed to an unreasonably dangerous risk of harm, even if they do not suffer

actual physical harm. [Dkt. 94 at 91]. The Court disagrees. "Massachusetts has [not]

recognized plaintiffs' unreasonable risk theory" of the economic loss rule. *Sebago, Inc. v.

Beazer E., Inc.*, 18 F. Supp. 2d 70, 94 (D. Mass. 1998) (citations omitted); *see also id.* ("[T]he

overwhelming majority of decided cases have rejected the adoption of an 'unreasonably

---

[22] [*E.g.* CAC ¶ 280 ("ON THREE SEPARATE OCCASIONS THUS FAR, WHILE DRIVING
APPROXIMATELY 70 MPH ON INTERSTATE 93 IN MASSACHUSETTS AND NEW
HAMPSHIRE, MY 2017 SUBARU FORESTER TOURING (WITH 21K MILES) LOST
POWER AND COMPLETELY SHUTDOWN. ALL THREE TIMES, I WAS LUCKILY ABLE
TO STEER THE VEHICLE TO SAFETY WHILE AVOIDING OTHIS [sic] MOTOR
VEHICLES….") (capitalization in original)].

dangerous,' 'unduly hazardous' or 'sudden and calamitous event.'" (collecting cases)); *Pub. Serv. Mut. Ins. v. Empire Comfort Sys., Inc.*, 573 F. Supp. 2d 372, 380–81 (D. Mass. 2008) ("There is no 'strict liability in tort' action recognized by Massachusetts law apart from liability for breach of warranty under the Uniform Commercial Code."). The Court will therefore grant Denso's motion to dismiss Plaintiffs' strict product liability claim under Massachusetts law.

### 12. Minnesota

Minnesota has codified the economic loss rule for product liability and negligence claims. *See* Minn. Stat. Ann. § 604.10. Under this statute, "[i]f the damages sought comprise damages to the product itself, then the economic-loss doctrine bars recovery for tort claims. But if tangible personal property other than the allegedly defective good is damaged, a buyer may bring a product-defect tort." *Cleveland v. Whirlpool Corp.*, -- F. Supp. 3d --, No. 20-CV-1906 (WMW/KMM), 2021 WL 3173702, at *5 (D. Minn. July 27, 2021). *See also Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 871 (D. Minn. 2012) (same). Plaintiffs have not alleged damage to other property, and the Court will grant Denso's motion on this issue.

### 13. Nevada

"Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007) (collecting cases). Nevada plaintiffs allege purely economic harm, and the Court will grant Denso's motion to dismiss on this issue.

### 14. New York

Under New York law, "when a plaintiff seeks to recover damages for purely economic loss related to the failure or malfunction of a product, such as the cost of replacing or retrofitting the product, or for damage to the product itself, the plaintiff may not seek recovery in tort against

the manufacturer or the distributor of the product." *126 Newton St., LLC v. Allbrand Com. Windows & Doors, Inc.*, 121 A.D.3d 651, 652 (N.Y. App. Div. 2014) (collecting cases). Because Plaintiffs seek damages prohibited under New York law, the Court will grant Denso's motion on this issue.

### 15. Pennsylvania

Under Pennsylvania law, "the economic loss doctrine provides that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.'" *Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.,* 648 F. Supp. 2d 707, 713 (E.D. Pa. 2009) (*Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). *See also id.* ("[C]ontrolling Federal and Pennsylvania state law hold that privity of contract is not required for application of the economic loss doctrine to Plaintiff's negligence claims." (collecting cases)).  The Court will grant Denso's motion on this issue.

### 16. South Carolina

The economic loss doctrine defeats Plaintiffs' product liability claims under South Carolina law.  *See Sapp v. Ford Motor Co.*, 687 S.E.2d 47, 50 (S.C. 2009) (upholding summary judgment on product liability claims under the economic loss doctrine because "[t]he only damage caused by the defect in the trucks was damage to the trucks themselves—purely an economic loss to Appellants.").  The Court will therefore grant Denso's motion to dismiss on this issue.

### 17. Tennessee

"In Tennessee, the consumer does not have an action in tort for economic damages under strict liability."  *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995) (citations omitted).  The Court will therefore grant Denso's motion on this issue.

### 18. Texas

"In Texas … 'strict liability does not apply to economic losses.'  In order to bring a strict liability claim, a plaintiff must demonstrate that the defective product caused physical harm to himself or his property."  *Helen of Troy, L.P. v. Zotos Corp*, 511 F. Supp. 2d 703, 721 (W.D. Tex. 2006) (quoting *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 80 (Tex. 1977)). *See also id.* at 723 ("[U]nder Texas law, the economic loss rule applies to tort claims against upstream suppliers of defective components." (citing *Hininger v. Case Corp.*, 23 F.3d 124, 127– 29 (5th Cir. 1994)).  Because Plaintiffs only allege economic losses, the Court will grant Denso's motion on this issue.

### 19. Vermont

Plaintiffs argue that Vermont law "recognizes a consumer's right to pursue an action for purely economic loss in strict products liability."  [Dkt. 94 at 91].  To support this argument, Plaintiffs cite a case from the District of Vermont, which predicted that the Vermont Supreme Court would permit ordinary consumer plaintiffs to seek remedies for purely economic harm under a strict product liability theory where product manufacturer was not in privity with the consumer.  *Mainline Tractor & Equip. Co. v. Nutrite Corp.*, 937 F. Supp. 1095, 1104 (D. Vt. 1996).  This focus on a contractual relationship is consistent with the Supreme Court of Vermont's determination that economic loss rule's applicability "turns on whether there is a duty of care independent of any contractual obligations*." Springfield Hydroelectric Co. v. Copp*, 779 A.2d 67, 71 (Vt. 2001).

Because Vermont law permits consumers not in privity with a manufacturer to pursue purely economic damages for strict liability claims, it conflicts with New Jersey law.  As noted above, the Court will apply the law of Plaintiffs' residence when a conflict arises.  But the only

Plaintiff connected to Vermont—Plaintiff Moore—resides in New York and purchased his car in Vermont.  [CAC ¶ 41].  The law of New York, Moore's home state, applies to his strict liability claim.  Because the CAC does not allege a strict product liability claim on behalf of a Plaintiff to whom Vermont law applies, the Court will therefore grant Denso's motion to dismiss Plaintiffs' product liability claim under Vermont law.

### 20. Wisconsin

Under Wisconsin law, "'[t]he economic loss doctrine is a judicially created doctrine providing that a commercial purchaser of a product cannot recover from a manufacturer, under tort theories of negligence or strict products liability, damages that are solely 'economic' in nature.'"  *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 592 N.W.2d 201, 205 (Wis. 1999) (quoting *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 573 N.W.2d 842 (Wis. 1998)).  Because Plaintiffs allege purely economic injuries, the Court will grant Denso's motion on this issue.

### 21. Summary

For the reasons set forth above, the Court will deny Denso's motion as to Plaintiffs whose claims are governed by the laws of Alabama (Griffin, Oakley, Whitley), Connecticut (Karrat, Weeks, Torresquintero), and Arkansas (Mein de Vera), but grant Denso's motion as to all other Plaintiffs.

### b.  Plaintiffs' Fraud and Deception Claims

### i.  Overview of Fraud Claims

Throughout the CAC, Plaintiffs allege that Denso deceived Plaintiffs by misrepresenting the quality and reliability of Denso's products, [CAC ¶¶ 364–65], concealing its knowledge of the Defect, [*e.g.* CAC ¶ 220], and failing to disclose the Defect to Plaintiffs.  [*E.g.* CAC ¶ 18].  Count II of the CAC alleges common-law "fraudulent concealment/omission" based on this

alleged misconduct.  Plaintiffs allege that Denso violated state consumer protection statutes based on this same conduct.

Before addressing Denso's challenges to Plaintiffs' claims, the Court will first clarify the scope of Plaintiffs' claims.  First, as noted above, Count II of the CAC alleges fraud based on concealment and omission rather than affirmative representation.  The only affirmative representations attributable to Denso in the CAC are vague statements about the quality and reliability of Denso's products.[23]  These statements are commercial puffery which cannot provide the basis for a claim sounding in fraud or deception.  *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 350 (D.N.J. 2019); *Resnick v. Hyundai Motor Am., Inc.*, No. CV1600593BROPJWX, 2016 WL 9455016, at *9 (C.D. Cal. Nov. 14, 2016) (quoting *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1233 (N.D. Cal. 2012)); *Tatum v. Chrysler Grp. LLC.*, No. 10-CV-4269 DMC JAD, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (collecting cases).  Thus, Plaintiffs' claims fail to the extent that state law requires them to plead an affirmative misrepresentation or an omission from a specific representation.

Further, the CAC alleges "concealment" in a conclusory manner, and does not allege any facts suggesting that Denso actively concealed information concerning the Defect.  While the CAC alleges that Denso did not disclose its knowledge of the Defect, "[m]ere nondisclosure does not constitute active concealment."  *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (collecting cases).  The CAC therefore does not plausibly allege claims based on concealment.  Thus, Denso's alleged failure to disclose its knowledge of the Defect provides the sole basis for Plaintiffs' deception claims against Denso.

_____

[23] [*E.g.*, CAC ¶ 307 ("On its website, Denso represented that it is committed to making high-quality products that contribute to a higher quality of life for all people….")].

"Though the precise contours of common-law omissions and representations fraud claims [sic] vary from state to state, the cause of action generally requires: (1) omissions or misrepresentations of fact; (2) in the case of omissions, a duty to disclose; (3) intent to mislead; (4) materiality; (5) justifiable reliance; and (6) damages proximately caused by that reliance. *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 184 (D.N.J. 2013) (collecting cases).

### ii.   Federal Rule of Civil Procedure 9(b)

Denso first argues that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims applies to Plaintiffs' common-law fraudulent omission claims and statutory consumer law claims in twenty-one states.[24]  [Dkt. 78-1 at 28].  Denso argues that Plaintiffs' fraud claims against Denso do not satisfy this standard.

Rule 9(b) requires plaintiffs to plead circumstances surround fraud "with particularity." Fed. R. Civ. P. 9(b).  Typically, this requires plaintiffs to "support their allegations of fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is the 'who, what, when, where and how' of the events at issue.'" *Fin. Tr. Co. v. Citibank, N.A.*, 351 F. Supp. 2d 329, 331 (D.V.I. Dec. 30, 2004) (quoting *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002)).  For fraudulent omission claims, "a plaintiff must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 263 (D.N.J. 2011) (quoting *Luppino v. Mercedes–Benz USA, LLC*, Civ No. 09–5582, 2010

---

[24] Those states are Alabama, Arkansas, California, Connecticut, Florida, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Washington, Wisconsin.

WL 3258259, at *7 (D.N.J. Aug. 16, 2010); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101

(S.D.N.Y. 1997) (citing *Adler v. Berg Harmon Assoc.*, 816 F. Supp. 919, 924 (S.D.N.Y. 1993)).

Even assuming that Rule 9(b) applies to all of Plaintiffs' common-law and statutory

claims,[25] Plaintiffs have satisfied their 9(b) pleading requirements.  Plaintiffs allege that Denso

"had exclusive knowledge of the Fuel Pump Defect since at least 2016 when, in a patent

application for a more robust impeller, it acknowledged the problem with lower-density

materials like that used in the defective fuel pumps."  [CAC ¶ 18].  Plaintiffs have also alleged

that Denso sold its defective pumps for use in Subaru vehicles without publicly disclosing

information concerning the Defect.  [*Id.*].  Plaintiffs allege that they would not have purchased or

paid as much for their Subaru vehicles if they were aware of the Defect.  [*E.g.* CAC ¶ 116].  The

Court finds that these allegations sufficiently notify Denso of the claims against it.  *See In re

Party City Sec. Litig.*, 147 F. Supp. 2d 282, 298 (D.N.J. 2001) ("[T]he purpose of the heightened

pleading requirement is to give defendants "notice of the claims against them…."" (quoting *In re

Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997))).

Denso argues that Plaintiffs have failed to satisfy Rule 9(b), and Rule 8's less stringent

pleading requirements, principally because the CAC refers repeatedly to "Defendants" without

distinguishing between Denso and Subaru.  [Dkt. 78-1 at 29–31].  The Court disagrees. The

Court understands that "[w]hen multiple defendants are involved, the complaint must plead with

particularity by specifying the allegations of fraud applying to each defendant."  *MDNet, Inc. v.

Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).  And the CAC often refers to Subaru

---

[25] Plaintiffs argue that Rule 9(b) does not apply to consumer protection statutes of Connecticut, New York, Florida, Oregon, Vermont, and Wisconsin at all, and does not apply to bans on "unlawful" or "unfair" conduct under consumer protection statutes of Illinois, California, Hawaii, Nevada, Pennsylvania and Washington.  [Dkt. 94 at 35–38].

and Denso collectively as "Defendants."  But the CAC does not do so exclusively, and alleges

facts unique to Denso.  [*E.g.* CAC ¶ 18].  Moreover, these references to "Defendants" do not

obscure the nature of the claim against Denso, which is that Denso—like Subaru—failed to

disclose known information about the Defect.  The Court therefore rejects Denso's argument that

Plaintiffs have violated Rules 8 and 9(b) by referring to Denso and Subaru collectively as

"Defendants" in the CAC.

### iii.  Choice of Law

When determining which state's law applies to which Plaintiffs' common-law and

statutory claims, the Court must follow New Jersey's two-step choice-of-law procedure as

discussed above.  If a conflict exists between New Jersey law and the law of another state at step

two of this analysis, the Court will apply § 148 of the Second Restatement of Conflict of Laws,

which applies to fraud and misrepresentation, to determine which state has the most significant

relationship to the claim.  Section 148 states that

> (1) When the plaintiff has suffered pecuniary harm on account of
> his reliance on the defendant's false representations and when
> the plaintiff's action in reliance took place in the state where
> the false representations were made and received, the local law
> of this state determines the rights and liabilities of the parties
> unless, with respect to the particular issue, some other state has
> a more significant relationship under the principles stated in § 6
> to the occurrence and the parties, in which event the local law
> of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in
> part in a state other than that where the false representations
> were made, the forum will consider such of the following
> contacts, among others, as may be present in the particular case
> in determining the state which, with respect to the particular
> issue, has the most significant relationship to the occurrence
> and the parties:
>
>> (a)  the place, or places, where the plaintiff acted in
>> reliance upon the defendant's representations,

      (b)   the place where the plaintiff received the representations,

      (c)   the place where the defendant made the representations,

      (d)   the domicil, residence, nationality, place of incorporation and place of business of the parties,

      (e)   the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

      (f)   the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Section 148(2) applies to Plaintiff's fraud claims here.  Presumably, Denso failed to disclose the Defect in Michigan, the state where Denso has its principal place of business.  [CAC ¶ 178].  No Plaintiff resides in Michigan or purchased a car in Michigan, so Plaintiffs did not "act in reliance" on Denso's alleged omission in the same state where Denso failed to disclose the defect.  *See Maniscalco*, 709 F.3d at 207 (finding that § 148(2) applies under similar facts).  The factors set forth in § 148(2) will therefore govern step two of the choice-of-law analysis.

For most Plaintiffs—those who purchased their vehicles in the state where they reside— these factors weigh in favor of applying the law of their home states.  Under these circumstances, factors (a) and (e) weigh in favor of applying Plaintiffs' home state law because this is the state where Plaintiffs' vehicles were presumably located upon purchase and where Plaintiffs acted in reliance on the fraud.  *See Maniscalco*, 709 F.3d at 208–09 (noting that "the overwhelming majority of courts" apply the law of the state where a plaintiff relied on the fraud (collecting cases)).  Factor (d) also weighs in favor of applying the law of Plaintiffs' home states because Plaintiffs' fraud claims allege pecuniary loss.  *See id.* at 208 ("[I]n cases of pecuniary loss … '[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant' because 'financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship.'" (quoting § 148

cmt. i)).  Although the omissions may have originated in Michigan, factor (c) alone does not

outweigh these other interests.  *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 449 (D.N.J.

2012).

The issue is less clear, however, with respect to the few Plaintiffs who purchased vehicles

in states other than the states where they reside.  Factors (a) and (e) would weigh in favor of

applying the law of the state of purchase because this is the state where Plaintiffs relied on

Denso's deception and, presumably, where Plaintiffs' vehicles were located at the time of

purchase.  Under comment j to § 148, it appears that these factors would control and require

application of the law of the state of purchase: ""[i]f any two of the [factors in § 148(2)], apart

from the defendant's domicil, state of incorporation or place of business, are located wholly in a

single state, this will usually be the state of the applicable law with respect to most issues…."

But, as noted above, a plaintiff's state of residence is given some weight in the case of pecuniary

injury.  At the same time, "the place of loss does not play so important a role in the

determination of the law governing actions for fraud."  § 148 cmt. c.  Following comment j, the

Court finds that factors (a) and (e) dictate that the law of the state of purchase will apply to

Plaintiffs' fraud claims where a conflict exists with New Jersey law and where Plaintiffs reside

in one state but purchased their vehicle in another.  *See In re Grand Theft Auto Video Game*

*Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) ("Because the fraud at issue in this case

occurred in the state of purchase ... the interest analysis favors the application of the consumer-

fraud law of the state wherein each Settlement Class member purchased his copy of GTA:SA."

(citations omitted)); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004) ("States

have a strong interest in protecting consumers with respect to sales within their borders … but

they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states." (citations omitted)).

### iv.  Economic Loss Rule Applied to Common-Law Fraudulent Omission Claims

Denso argues that the economic loss rule precludes common-law fraudulent omission claims under Alabama, California, Florida, Texas, and Wisconsin law.  [Dkt. 78-1 at 38]. Plaintiffs do not disagree that the economic loss doctrine applies but argues that these states "recognize an exception to the economic loss doctrine for a claim sounding in fraud, as Plaintiffs' omissions claims plainly do."  [Dkt. 94 at 38].  Denso argues that this exception does not apply to fraudulent omission claims under Alabama, California, Florida, Texas, and Wisconsin law.  [Dkt. 78-1 at 38].

The Court must first determine whether the law of Plaintiffs' home states apply to their fraud claims.  New Jersey law recognizes the economic loss rule and an exception to that rule where a plaintiff alleges "pre-contractual misrepresentations that are extrinsic to the parties' agreement."  *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 465 (D.N.J. 2020) (citing *Grasso Foods, Inc. v. Wynn Envir'tl Sales Co.*, No. 17-6430, 2018 WL 3455479, at *3 (D.N.J. July 18, 2018)).  The Court understands "pre-contractual misrepresentations" to mean affirmative misrepresentations rather than pure omissions.  *See Grasso Foods*, 2018 WL 3455479, at *1–2 (discussing the affirmative representations that

permitted the exception to the economic loss rule).  Alabama,[26] California,[27] and Florida[28] also recognize a fraud exception to the economic loss rule, but only for affirmative misrepresentations.  Thus, there is no conflict between New Jersey common law and the common law of Alabama, California, and Florida on this issue.  Because Plaintiffs only allege fraudulent omissions, the Court will grant Denso's motion to dismiss the common-law fraud claims of Alabama, California, and Florida Plaintiffs.

Plaintiffs' fraud claims also fail under Wisconsin common law.  Under Wisconsin law, the economic loss doctrine bars fraud claims concerning "the quality or the characteristics" of the goods for which the parties contracted.[29]  *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 219 (Wis. 2005).  This rule applies here because, at bottom, Plaintiffs allege that Denso misrepresented the quality of its products by failing to disclose the Defect to consumers despite Denso's knowledge of the Defect.  Wisconsin law bars such claims.  *See Kaloti Enters.*, 699 N.W.2d at 219.  The Court will grant Denso's motion to dismiss the common-law fraud claims of Wisconsin Plaintiffs Christine King and Kevin King.

---

[26] *See Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998) ("This lawsuit involves this question: Does an alleged product defect that has not manifested itself in such a way as to cause any observable adverse physical or economic consequences constitute an 'injury' that will support a claim of fraudulent suppression? We simply hold that it does not."); *Harris Moran Seed Co. v. Phillips*, 949 So. 2d 916, 932–33 (Ala. Ct. App. 2006).

[27] *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 847–50 (C.D. Cal. 2020) (holding under California law that "the economic loss rule bars Plaintiff's claim for fraudulent inducement by omission").

[28] *Ponzio*, 447 F. Supp. 3d 194, 236 (D.N.J. 2020) (dismissing fraudulent concealment claims under California and Florida law).

[29] Although New Jersey does not apply Wisconsin's version of the economic loss rule, both versions of the rule result in dismissal of Plaintiffs' claims.  Therefore, no conflict exists.

The Court disagrees with Denso's argument under Texas law. "Texas law has long imposed a duty to refrain from fraudulently inducing a party to enter into a contract, and our prior decisions made it clear that tort damages were not precluded simply because a fraudulent representation caused only an economic loss."[30] *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex.1998)). "As such, he economic loss rule does not preclude Plaintiffs' fraudulent omission claim under Texas law." *Peguero v. Toyota Motor Sales, USA, Inc.*, No. 220CV05889VAPADSX, 2021 WL 2910562, at *12 (C.D. Cal. Apr. 26, 2021). The Court will therefore deny Denso's motion on this issue.

### v.  Duty to Disclose—Common Law Fraudulent Omission Claims

Denso argues that Plaintiffs' common-law fraudulent omission claims cannot survive because Plaintiffs have failed to show that Denso owed a duty to disclose information concerning the Defect to Plaintiffs. [Dkt. 78-1 at 39]. Plaintiffs respond that Denso's "exclusive or superior knowledge" of the Defect created a duty to disclose, and that the CAC adequately pleads this superior knowledge. [Dkt. 94 at 69 (citing *In re Volkswagen Timing Chain Products Liability Lit.*, 2017 WL 1902160, *17 (D.N.J. May 8, 2017))]. Denso argues that, even if superior knowledge can create a duty to disclose, the CAC fails to adequately allege that Denso knew of the Defect. [Dkt. 78-1 at 39–42].

While not all states recognize a duty to disclose based on exclusive or superior knowledge, the Court generally finds that Plaintiffs have adequately alleged that Denso had superior knowledge of information concerning the Defect in states that recognize such a duty.

---

[30] Plaintiffs Nelson and Gardener purchased their vehicles in Texas, so Texas law applies to their common-law fraud claims.

To support their knowledge argument, Plaintiffs cite to the 2016 Patent Application where Denso stated that it sought to use different impeller materials in its fuel pumps because the impellers "may be swelled due to the fuel and water contained in the fuel, [and] therefore a rotation of the impellers may be stopped when the impeller is swelled and comes in contact with the [fuel pump] housing."  [CAC ¶ 211].  As Plaintiffs point out, the "rotation" issue identified in the Patent Application "is virtually the same as the [Defect] at the heart of this case."  [CAC ¶ 211]. Thus, the Patent Application provides a plausible basis to infer that Denso knew that its fuel pumps would malfunction.

Denso urges the Court to find otherwise for three reasons which the Court rejects.  First, Denso argues that the Patent Application only suggests that Denso sought to "improve" its fuel pump, not that the fuel pump was defective.  [Dkt. 78-1 at 39].  Had the Patent Application stated that the proposed changes would merely "improve" performance by, for example, pumping fuel more efficiently, the Court might agree.  But the Patent Application states that the impeller "may be stopped" due to swelling, which permits an inference that a swollen impeller might cause the fuel pump to malfunction.  Second, Denso argues that public policy concerns require dismissal as permitting Plaintiffs' fraud claims to proceed based on the Patent Application would stifle innovation.  [Dkt. 78-1 at 39].  This is a valid concern and one that Denso would state more forcefully if, as discussed above, the Patent Application sought only to improve Denso's technology rather than prevent its technology from malfunctioning.  Moreover, the Court is reluctant to categorically elevate the interest in innovation over the interest in using publicly available information to ferret out fraud where it exists.  Finally, Denso argues that consumer complaints filed with the NHTSA concerning defective Subaru vehicles do not support an

inference that Denso knew of the Defect. [Dkt. 78-1 at 39–41]. The Court agrees,[31] but the NHTSA complaints are not necessary for Plaintiffs to plausibly allege that Denso knew of the Defect.

Having found that the CAC plausibly alleges that Denso knew of the Defect as early as 2016, the following subsections analyze Denso's disclosure obligations on a state-by-state basis for Plaintiffs' remaining common-law fraud claims.

### 1. New Jersey

In New Jersey

> courts will not imply a duty to disclose in a case alleging fraudulent concealment…. The duty to disclose arises in the following three types of relationships:
>
> > (1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee;
> >
> > (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and
> >
> > (3) relationship involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties.

*Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009) (citations and quotations omitted). New Jersey courts have found that no fiduciary relationship establishing a duty to disclose exists in vendor-vendee transactions such as the relationship between Plaintiffs and Denso here. *See In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *25 (collecting cases). The Court will therefore grant Denso's motion to dismiss on this issue.

---

[31] The CAC does not allege that Denso monitored NHTSA complaints, or that Denso even knew which Subaru vehicles contained Denso fuel pumps.

### 2. Arkansas

Under Arkansas law, omissions are not actionable unless an "established" "contractual" or "fiduciary" relationship exists between the parties that gives rise to a duty to disclose. *White v. Volkswagen Grp. of Am., Inc.*, No. 2:11-CV-02243, 2013 WL 685298, at *9 (W.D. Ark. Feb. 25, 2013); *Perez v. Volkswagen Grp. of Am., Inc.*, No. 2:12-CV-02289, 2013 WL 1661434, at *10 (W.D. Ark. Apr. 17, 2013); *Day v. Tri-State Delta Chemicals, Inc.*, 165 F. Supp. 2d 830, 835 (E.D. Ark. 2001) (finding no duty to disclose in an arms-length commercial transaction). Because Plaintiffs have not alleged a relationship giving rise to a duty to disclose, the Court will grant Denso's motion on this issue.

### 3. Connecticut

"[A]lthough 'mere nondisclosure does not [usually] amount to fraud … [n]ondisclosure may ... amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak.'" *Est. of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 194 (D. Conn. 2007) (quoting *Dockter v. Slowik*, 881 A.2d 479 (Conn. Ct. App. 2005)). Such a duty may arise in the context of a fiduciary relationship. *See id.* at 194 (citing *Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP*, 874 A.2d 266 (Conn. Ct. App. 2005)). Because Plaintiffs have failed to allege a fiduciary relationship or other "circumstances" giving rise to a duty to speak, the Court will grant Denso's motion on this issue.

### 4. Hawaii

"Under Hawaiʻi law, liability for fraudulent nondisclosure is governed by the Restatement (Second) of Torts § 551." *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010) (citing *Elliot Megdal & Assocs. v. Hawaii Planing Mill, Ltd.*, 814 F. Supp. 898, 904 (D. Haw. 1993)). Section 551 requires a duty of disclosure before liability for nondisclosure can

attach, and lists five circumstances where a duty can attach for parties "to a business transaction."  Restatement (Second) of Torts § 551(2).  The CAC does not allege that Hawaii Plaintiffs were parties to a business transaction with Denso.  Moreover, the commentary to § 551(2) contemplates duties to disclose in direct business negotiations, not a remote component part manufacturer's duty to disclose to individuals with whom it has no direct commercial dealings.  The Court will therefore grant Denso's motion on this issue.

### 5.  Illinois

Fraudulent omission claims under Illinois law require a duty to disclose, which "arises if 'plaintiff and defendant are in a fiduciary or confidential relationship' or in a 'situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.'"  *Flynn v. FCA US LLC*, 327 F.R.D. 206, 218 (S.D. Ill. 2018) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012)).  The CAC does not plead facts suggesting a fiduciary relationship or a relationship of "trust and confidence" between Plaintiffs and Denso.  The Court will therefore grant Denso's motion on this issue.

### 6.  Maryland

Under Maryland law, a duty to disclose can arise "when one party is in a fiduciary or confidential relationship with the other," or "when one party makes a partial and fragmentary statement of fact.'"  *Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F. Supp. 2d 424, 431 (D. Md. 2000) (citations and quotations omitted).  The CAC does not allege facts showing a "fiduciary or confidential relationship."  As noted above, the only affirmative statements attributed to Denso are puffery.  *See Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 330 (D. Md. 2021) (finding that "vague and general" statements do not give rise to

duty to disclose).  Plaintiffs have therefore failed to plead facts showing that Denso had a duty to disclose information concerning the Defect.  The Court will grant Denso's motion on this issue.

### 7.  Massachusetts

Under Massachusetts common law, "[t]o show fraud by omission, the plaintiff must allege both concealment of material information and a duty requiring disclosure."  *Costa v. FCA US LLC*, 542 F. Supp. 3d 83, 101 (D. Mass. 2021) (quoting *Buffalo-Water 1, LLC v. Fidelity Real Estate Co.*, 111 N.E.3d 266, 277 (Mass. 2018)).  Plaintiffs here do neither.  As noted above, Plaintiffs do not plead any facts to support their conclusory allegation that Denso "concealed" any information.  Plaintiffs also do not plead facts showing that Denso had a duty to disclose. *See Costa*, 2021 WL 2338963, at *12 (finding that manufacturer had no duty to disclose alleged safety defect in automobile despite allegations against manufacturer analogous to those against Denso).  The Court will grant Denso's motion on this issue.

### 8.  Minnesota

Under Minnesota common law, omission-based fraud claims require a duty to disclose, but a duty to disclose may arise where "a party has special knowledge of material facts to which the other party does not have access."  *Cleveland v. Whirlpool Corp.*, No. 20-CV-1906 (WMW/KMM), -- F. Supp. 3d --, 2021 WL 3173702, at *8 (D. Minn. July 27, 2021) (citations omitted). *See also Sadeghi-A v. Daimler Trucks N. Am. LLC*, No. 19-CV-2373 (MJD/ECW), 2021 WL 856919, at *12 (D. Minn. Mar. 8, 2021).  Plaintiffs allege that Denso "had exclusive knowledge of the Fuel Pump Defect since at least 2016 when, in a patent application for a more robust impeller, it acknowledged the problem with lower-density materials like that used in the defective fuel pumps."  [CAC ¶ 18].  This allegation is sufficient to demonstrate Denso's special

knowledge of the Defect creating a duty to disclose.  The Court will therefore deny Denso's

motion to dismiss under Minnesota law.

### 9.  Nevada

Under Nevada law, "a straightforward vendor-vendee relationship … as a matter of law,

creates no fraud-based duty to disclose" *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406,

1417 (D. Nev. 1995) (citations and quotations omitted).  At most, a vendor-vendee relationship

existed between Denso and Plaintiffs, which does not create a duty to disclose.  The Court will

therefore grant Denso's motion on this issue.

### 10. New York

Under New York law:

> [a] concealment of facts supports a cause of action only if the non-
> disclosing party has a duty to disclose. Such a duty ordinarily
> arises where the parties are in a fiduciary or other relationship
> signifying a heightened level of trust. Absent a fiduciary
> relationship, "a duty to disclose may arise if: (1) one party makes a
> partial or ambiguous statement that requires additional disclosure
> to avoid misleading the other party; or (2) one party possesses
> superior knowledge, not readily available to the other, and knows
> that the other is acting on the basis of mistaken knowledge," but
> only "when it becomes apparent to the non-disclosing party that
> another party is operating under a mistaken perception of material
> fact."

*Trahan v. Lazar*, 457 F. Supp. 3d 323, 353 (S.D.N.Y. 2020) (quoting *Remington Rand Corp. v.*

*Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995)).  "Although normally this

duty to disclose [due to superior knowledge] arises in the context of direct business transactions,

courts have also imposed this duty on a manufacturer who has exclusive knowledge of a product

defect or danger."  *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 125 (E.D.N.Y. 2011) (collecting

cases).  Because a duty to disclose can arise where one party has superior knowledge, New York

law conflicts with New Jersey law on this issue.  Plaintiff Plante resides in and purchased her

vehicle in New York [CAC ¶ 45] so New York law applies to her claim.  Plaintiff Karrat resides

in Connecticut but purchased his vehicle in New York.  Consistent with the Court's analysis

above, the Court finds that New York law applies to his common-law fraud claim.  [CAC ¶ 158].

Plaintiff Moore resides in New York but purchased his vehicle in Vermont.  Vermont law

therefore applies to Plaintiff Moore's common-law fraud claim.  [CAC ¶ 41].

For the reasons stated above, Plaintiffs have plausibly alleged that Denso had superior

knowledge of the Defect and, therefore, that Denso had a duty to disclose.  The Court will

therefore Deny Denso's motion on this issue as it applies to Plaintiffs whose fraud claims are

governed by New York law.

### 11. North Carolina

"[W]here no fiduciary relationship exists … a duty to disclose may arise when[] 'one

party has knowledge of a latent defect in the subject matter of the negotiations about which the

other party is both ignorant and unable to discover through reasonable diligence." *Packrite, LLC*

*v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 WL 7060395, at *3 (M.D.N.C. Dec. 2,

2020) (*Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009)).  The CAC does not

allege that Plaintiffs "negotiated" with Denso before purchasing or renting a vehicle containing a

Denso fuel pump, and therefore fails to plead facts showing that a duty to disclose existed.  The

Court will therefore grant Denso's motion on this issue.  *See Packrite*, 2020 WL 7060395, at *6

(dismissing fraud claim for failure to identify a "conversation or written communication" that

constituted a negotiation).

### 12. Oregon

Under Oregon law

> A duty to speak or disclose exists when there is a special
> relationship between a plaintiff and a defendant.  *Gardner v. First*

> *Escrow Corp.*, 696 P.2d 1172 (Or. Ct. App. 1985).  When a special
> relationship exists, the defendant has a duty to disclose to the
> plaintiff all material matters of which the defendant had
> knowledge.  *See Gebrayel v. Transam. Title Ins. Co.*, 888 P.2d 83
> (Or. Ct. App. 1995). A special relationship exists when the plaintiff
> has authorized the defendant to exercise independent judgment on
> the plaintiff's behalf and the defendant has accepted this
> responsibility.  *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785
> (Or. 2001). A special relationship does not exist if the parties were
> merely in an "arm's-length" commercial or business relationship
> where they were acting in their own economic interest. *See
> Conway v. Pacific Univ.*, 924 P.2d 818 (Or. 1996); *see also Moore
> Excavating, Inc. v. Consol. Supply Co.*, 63 P.3d 592 (Or. 2003).

*Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020).  Because the CAC only

alleges an arms-length commercial relationship, at most, the CAC does not plead facts giving

rise to a duty to disclose under Oregon law.  The Court will therefore Grant Denso's motion on

this issue.

### 13. Pennsylvania

"It is axiomatic, of course, that silence cannot amount to fraud in the absence of a duty to

speak.  This duty does not normally arise unless there is a confidential or fiduciary relationship

between the parties*." Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d

644, 656 (W.D. Pa. 1999) (citations omitted); *see also Silverstein v. Percudani*, 2005 WL

1252199, at *8 (M.D. Pa. May 26, 2005) (citations omitted).  Because Plaintiffs do not allege

facts showing that a fiduciary relationship existed, they also fail to allege that Denso had a duty

to disclose.  The Court will therefore grant Denso's motion on this issue.

### 14. Rhode Island

Omissions are only actionable under Rhode Island law where a duty to disclose exists,

and "[t]his duty may arise where one party to a business transaction knows of facts or

circumstances that 'are not open to equal observation by both parties and are not discoverable by

the exercise of ordinary diligence.'" *Alex & Ani, LLC v. Elite Level Consulting, LLC*, 31 F.

Supp. 3d 365, 377 (D.R.I. 2014) (quoting 37 Am. Jur. 2d, Fraud and Deceit, § 205 at 249).   A

conflict therefore exists between New Jersey law and Rhode Island law on this issue.   Plaintiff

Biondo resides and purchased his vehicle in Rhode Island, [CAC ¶ 85], so Rhode Island law

applies to his common-law fraud claim.   The CAC plausibly alleges that Denso had superior

knowledge of the Defect and that Denso had a duty to disclose its knowledge of the Defect as a

result.   The Court will therefore deny Denso's motion on this issue.

### 15. South Carolina

Under South Carolina law, a duty to disclose can give rise to a fraudulent omission claim

in relationships or transactions that are "intrinsically fiduciary."   *Regions Bank v. Schmauch*, 582

S.E.2d 432, 445 (S.C. Ct. App. 2003) (quoting *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C.

1967)).   Because Plaintiffs do not allege a fiduciary relationship with Denso, Denso had no duty

to disclose the Defect.   The Court will therefore grant Denso's motion on this issue.

### 16. Tennessee

Tennessee common law imposes a duty to disclose "any condition or defect that [a seller]

knows or should know about that renders the product defective or dangerous, and … basic,

material information if [the seller] knows that the buyer is about to act without knowledge of the

information and is without reasonable means to acquire the information itself."   *Bearden v.

Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 941 (M.D. Tenn. 2010) (citations and quotations

omitted) (discussing development of duty to disclose under Tennessee law).   Tennessee law

therefore conflicts with New Jersey law on this issue.   The only Plaintiff with a connection to

Tennessee is Plaintiff Sweeton, who resides in Georgia but purchased his vehicle in Tennessee.

[CAC ¶ 117].  Consistent with the Court's analysis above, the Court will apply Tennessee law to his fraud claim.

The CAC alleges that Denso knew of the Defect and knew that consumers were unaware of the Defect when they purchased their vehicles.  [CAC ¶ 370].  The Court therefore finds that Plaintiffs adequately alleged a duty to disclose under Tennessee law and will deny Denso's motion on this issue.

### 17. Texas

Under Texas law, a duty to disclose arises:

> (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression.

*Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 745 (N.D. Tex. 2014) (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. 1997)).  Plaintiffs have not pled facts giving rise to a duty to disclose under any of these four circumstances.  Because Denso did not have a duty to disclose under Texas law, the Court will grant Denso's motion on this issue.

### 18. Vermont

"[L]iability for nondisclosure will arise when there is 'some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.'"  *White v. Pepin*, 561 A.2d 94, 96 (Vt. 1989) (quoting *Cheever v. Albro*, 421 A.2d 1287, 1290 (Vt. 1980)).  A conflict therefore exists between Vermont law and New Jersey law.  The only Plaintiff with a connection to Vermont is Plaintiff Moore, who resides in New York but purchased his vehicle in Vermont.  Consistent with the Court's analysis above, Vermont law applies to his claim.

As discussed above, Plaintiffs have plausibly alleged that Denso had "superior knowledge or means of knowledge" of the Defect giving rise to a duty to disclose. The Court will therefore deny Denso's motion on this issue.

### 19. Washington

"[U]nder Washington law, when a 'manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that information.'" *Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1280 (W.D. Wash. 2020) (quoting *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010)). A conflict therefore exists between New Jersey law and Washington law. Plaintiffs Brown and Brockman reside and purchased their vehicles in Washington. [CAC ¶¶ 93, 97]. Washington law therefore applies to their common-law fraud claims.

Plaintiffs have plausibly alleged that Denso had "superior information" concerning the Defect giving rise to a duty to disclose. The Court will therefore deny Denso's motion on this issue.

### vi.   Statutory Claims: Affirmative Misrepresentations, Omissions, and Duty to Disclose

Denso argues that it cannot be held liable under the consumer protection statutes of certain states[32] because Plaintiffs have not alleged that Denso made any actionable affirmative misrepresentations. [Dkt. 78-1 at 33–34]. Denso argues that, to the extent that Plaintiffs ground

---

[32] Those states are Alabama, Arkansas, California, Connecticut, Florida, Hawaii, Illinois, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Washington, and Wisconsin. [Dkt. 78-1 at 33; Dkt. 78 App'x A].

their statutory claims in omissions, Denso had no duty to disclose the Defect in those states.  [*Id*].

The following subsections summarize the Court's findings with respect to these issues.

### 1. New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 et seq., Count VI

New Jersey law requires a duty to disclose for omission-based claims under the NJCFA.

*Arcand*, 673 F. Supp. 2d at 297.  New Jersey courts have refused to find a duty to disclose in

common-law and statutory fraud claims involving arms-length transactions as in this case.  *See*

*In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *25 (collecting cases).  The

Court will therefore grant Denso's motion to dismiss on this issue.

### 2. Alabama Deceptive Trade Practices Statute ("ADTPA"), Ala. Code §§ 8-19-1 et seq., Count X

Omissions are actionable under the ADTPA.  *See Barcal v. EMD Serono, Inc.*, No. 5:14-

CV-01709-MHH, 2016 WL 1086028, at *5 (N.D. Ala. Mar. 21, 2016).  However, the court's

research did not identify any case law showing that Plaintiffs alleging an omission-based

ADTPA claim must establish a duty to disclose.  *See id.* (discussing ADTPA claims based on

omissions without mentioning a duty to disclose).  Because Alabama does not recognize a duty

to disclose, it conflicts with New Jersey law on this issue.  Plaintiffs Griffin, Oakley, and

Whitley reside and purchased their vehicles in Alabama law, so the Court will apply Alabama

law to their claims.

The Court declines to impose a duty to disclose where none exists under Alabama law.

The Court will therefore deny Denso's motion on this claim.

### 3. Arkansas Deceptive Trade Practice Act, Ark. Code Ann. § 4-88-101 et seq., Count XII

Arkansas law requires a duty to disclose for common law and statutory omission claims,

and only recognizes such a duty where a contractual or fiduciary relationship exists.  *White*, 2013

WL 685298, at *9.  Plaintiffs do not allege a contractual or fiduciary relationship.  The Court

will therefore grant Denso's motion to dismiss this count.

### 4.   California Unfair Competition Law ("CUCL"), Cal. Civ. Code. § 1750 et seq., Count XIV

California courts find a duty to disclose when the alleged omission concerns a "safety

issue."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (collecting cases).

As noted above, New Jersey does not recognize such a duty.  New Jersey law therefore conflicts

with California law on this issue.  Plaintiffs Adnan, Woo, and Bancod-Hile reside and purchased

their vehicles in California, so the Court will apply California law to their claims.

The Court finds that Plaintiffs have established a duty to disclose because they plausibly

allege that the Defect causes engine performance issues that threaten driver safety.  The Court

will therefore deny Denso's motion on this issue.

### 5.   Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. Ann. § 42-110A et seq., Count XIX

"Although a failure to disclose can constitute a CUTPA violation, it will do so 'only if, in

light of all the circumstances, there is a duty to disclose.'"  *Willow Springs Condo. Ass'n, Inc. v.*

*Seventh BRT Dev. Corp.*, 717 A.2d 77, 100 (Conn. 1998) (quoting *Normand Josef Enters., Inc. v.*

*Conn. Nat'l Bank*, 646 A.2d 1289 (1994)).  Plaintiffs cite *Willow Springs* for the proposition that

"knowledge of a defect gives rise to a duty to disclose."  [Dkt. 94 at 57].  But *Willow Springs*

does not establish a broad-based duty to disclose "defects" that Plaintiffs allege.  In that case, the

court found that property owned by the defendant was subject to "express and implied

warranties" imposed by a state statute, and that the defendant was under "a continuing duty not

to conceal information within its knowledge with the purpose of concealing a cause of action for

breach of warranty pursuant to" that statute.  *Willow Springs*, 717 A.2d at 100.  Plaintiffs have

not identified an analogous statutory duty of disclosure.  Plaintiffs have therefore failed to plead

a duty to disclose, and the Court will grant Denso's motion to dismiss on this issue.

### 6.   Florida Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. § 501.201 et seq., Count XXI

Omissions are actionable under the FDUTPA, but the court's research did not identify

any case law showing that Plaintiffs alleging an omission-based FDUTPA claim must establish a

duty to disclose.  *See Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *6

(S.D. Fla. Nov. 14, 2014) ("Deception [for FDUTPA purposes] 'occurs if there is a

representation, *omission*, or practice that is likely to mislead the consumer acting reasonably in

the circumstances, to the consumer's detriment.'" (quoting *Merrill Lynch Bus. Fin. Servs., Inc. v.

Performance Machine Sys. USA, Inc.*, 2005 WL 975773, *8 (S.D. Fla. Mar. 4, 2005) (alterations

and emphasis in original)).  Florida law conflicts with New Jersey law on this issue.  Plaintiffs

Rosenthal and Cohen reside and purchased their vehicles in Florida, so the Court will apply

Florida law to their claims.  [CAC ¶¶ 25, 53].

The Court declines to impose a duty to disclose where none exists under Florida law.

The Court will therefore deny Denso's motion on this claim.  *Cardenas v. Toyota Motor Corp.*,

418 F. Supp. 3d 1090, 1105 (S.D. Fla. 2019) (denying motion to dismiss omission-based

FDUTPA claim).

### 7.   Hawaii Unfair and Deceptive Acts and Practices Act ("HUDAP"), H.R.S. §§ 480 et seq., 481A et seq., Counts XXIV, XXV

Omissions are actionable under the HUDAP.  *See Courbat v. Dahana Ranch, Inc.*, 141

P.3d 427, 435 (Haw. 2006) (citations omitted).  However, the Court's research did not identify

authority stating that a duty to disclose must exist for omission-based HUDAP claims.  *See Ryan

v. Salisbury*, No. CV 18-00406 ACK-RT, 2019 WL 5269092, at *11 (D. Haw. Oct. 17, 2019)

(discussing omission-based HUDAP claims without discussing duty to disclose) (citations and quotations omitted).  Hawaii law therefore conflicts with New Jersey law on this issue, but Hawaii law applies because Plaintiff Anderson resides and purchased his vehicle in Hawaii. [CAC ¶ 148].

The Court declines to impose a duty to disclose where Hawaii courts have not recognized one, and will deny Denso's motion on this issue.

### 8. Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1 et seq., Count XXVII

The ICFA prohibits deceptive omissions, but "[u]nder the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (citations and quotations omitted).  Here Plaintiffs do not allege that they received any specific communications from Denso and allege generally that Denso failed to disclose information about the Defect.  *See id.* (dismissing ICFA claim based on analogous allegations).  The Court will therefore grant Denso's motion to dismiss on this ground.

### 9. Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law § 13-101 et seq., Count XXX

Omissions are actionable under the MCPA.  *See Goss v. Bank of Am., N.A.*, 917 F. Supp. 2d 445, 450 (D. Md. 2013), *aff'd sub nom. Goss v. Bank of Am., NA*, 546 F. App'x 165 (4th Cir. 2013) (noting that MCPA can apply to a "[f]ailure to state a material fact if the failure deceives or tends to deceive." (quoting Md. Code Ann., Com. Law, § 13–301)).  Maryland appears not to require plaintiffs to establish a duty to disclose for omission-based MCPA claims.  *See Green v. H & R Block, Inc.*, 735 A.2d 1039, 1058 (Md. Ct. App. 1999) ("Green's CPA claim therefore should not have been dismissed for lack of a fiduciary duty to disclose.").  Maryland law

therefore conflicts with New Jersey law on this issue.  Plaintiffs Efantis and Fontenot reside and

purchased their vehicles in Maryland, so Maryland law applies to their claims.  [CAC ¶¶ 61, 65].

Because Maryland law does not require a duty to disclose, the Court denies Denso's motion on

this issue.

### 10. Massachusetts Consumer Protection Act ("Mass. CPA"), Mass. Gen. Laws Ch. 93A § 1 et seq., Count XXXI

The Mass. CPA applies to a broader scope of conduct than common-law fraud claims,

and "Massachusetts case law suggests that one difference between a fraud claim and the more

liberal 93A is allowance of a cause of action even in the absence of a duty to disclose." *Costa v.*

*FCA US LLC*, No. 20-CV-11810-ADB, 2021 WL 2338963, at *10–*11 (D. Mass. June 8, 2021)

(quoting *CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, No. 14-cv-12405, 2016 WL 1642573, at *5

(D. Mass. Apr. 25, 2016)).  Massachusetts law therefore conflicts with New Jersey law.  The

only Plaintiff with any connection to Massachusetts is Plaintiff Weeks, who resides in

Connecticut but purchased her vehicle in Massachusetts. [CAC ¶ 109].  Consistent with the

Court's analysis above, the Court will apply Massachusetts law, the law of the state of purchase,

to Plaintiff Weeks' statutory claim.  Because no duty of disclosure is required under the Mass.

CPA, the Court will deny Denso's motion on this issue.

### 11. Minnesota Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. § 325F.68 et seq., Count XXIII[33]

"Omission-based claims are actionable under the [MP]CFA only 'when special

circumstances exist that trigger a legal or equitable duty to disclose the omitted facts.'"

---

[33] The Amended Complaint lists this claim as Count XXIII.  This appears to be a typographical error, as it appears sequentially where Count XXXIII should appear, and the Amended Complaint also identifies another claim as Count XXIII.  For consistency, the Court refers to Plaintiffs' MPCFA claim as Count XXIII here.

*McQueen v. Yamaha Motor Corp., U.S.A.*, 488 F. Supp. 3d 848, 860 (D. Minn. 2020) (quoting

*Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d

682, 693 (Minn. 2014)).  A duty to disclose may exist where one party "special knowledge of

material facts to which the other party does not have access." *Id.* (citations and quotations

omitted).[34]  Plaintiffs allege that Denso "had exclusive knowledge of the Fuel Pump Defect since

at least 2016 when, in a patent application for a more robust impeller, it acknowledged the

problem with lower-density materials like that used in the defective fuel pumps."  [CAC ¶ 18].

This allegation is sufficient to demonstrate Denso's special knowledge of the Defect creating a

duty to disclose.  The Court will therefore deny Denso's motion to dismiss under Minnesota law.

### 12. Nevada Deceptive Trade Practices Act ("NDTPA"), Nev. Rev. Stat. § 598.0903 et seq., Count XXXVI

The CAC alleges violations of the NDTPA based on affirmative misrepresentations,[35] but

factually alleges that Denso failed to disclose information about the Defect.  [CAC ¶ 764].  To

the extent that the Plaintiffs allege an NDTPA violation based on omissions, Nevada law

requires a duty to disclose to state an NDTPA claim.  *See Poole v. Nevada Auto Dealership*

*Invs., LLC*, 449 P.3d 479, 488 n.6 (Nev. App. 2019) (noting that omission-based NDTPA claims

require "an affirmative duty to disclose").  "[A] straightforward vendor-vendee relationship … as

a matter of law, creates no fraud-based duty to disclose." *Nev. Power*, 891 F. Supp. at 1417

---

[34] Because Minnesota imposes a duty to disclose based on superior knowledge, a conflict exists
with New Jersey law.  Plaintiff Micklo purchased his vehicle in Minnesota, so Minnesota law
applies to his statutory fraud claim.  [Am. Compl. ¶ 29].

[35] [CAC ¶ 763 ("DTPA further prohibits "[k]nowingly makes a false representation as to the
characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale
or lease . . .." Nev. Rev. Stat. Ann. § 598.0915(5))"].

(citations and quotations omitted).  Because no duty to disclose exists, the Court will grant

Denso's motion to dismiss on this issue.

### 13. New York General Business Law, N.Y. Gen. Bus. Law §§ 349, 350, Counts XXXVII, XXXVIII

"An omission may form the basis of a GBL section 349 claim."  *Chiarelli v. Nissan N.*

*Am., Inc.*, No. 14-CV-4327 NGG VVP, 2015 WL 5686507, at *11 (E.D.N.Y. Sept. 25, 2015).

While a duty to disclose is required for common-law fraud claims, *Trahan*, 457 F. Supp. 3d at

353 (quoting *Remington Rand.*, 68 F.3d at 1483), the New York General Business Law prohibits

"deceptive acts or practices" broadly, and a "deceptive practice need not reach the level of

common-law fraud."  *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 561 (S.D.N.Y.

2016) (citations and quotations omitted).  The Court's research did not identify a duty do

disclose under this relaxed standard.  *See Catalano*, 167 F. Supp. 3d at 561–62 (denying motion

to dismiss GBL § 349 claim based on omissions).  New Jersey law therefore conflicts with New

York law on this issue.

Plaintiff Plante lives in and purchased her vehicle in New York, so New York law applies

to her claims.  [CAC ¶ 45].  Plaintiff Moore resides in New York but purchased his vehicle in

Vermont [CAC ¶ 41] and Plaintiff Karrat purchased his vehicle in New York but resides in

Connecticut.  [CAC ¶ 158].  Consistent with the Court's analysis above, the Court will apply

New York law to Plaintiff Karrat's statutory claim because he purchased his vehicle in New

York, but not to Plaintiff Moore, whose claim is governed by Vermont law.

Because claims under § 349 do not require a duty to disclose, the Court will deny

Denso's motion on this issue as to Plaintiffs Plante and Karrat.

Section 350, however, does not apply broadly to all deceptive acts, but is "specific to

advertising."  *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y.

2015) (citations and quotations omitted); *see also* N.Y. Gen. Bus. Law § 350 (prohibiting "[f]alse

advertising in the conduct of any business, trade or commerce or in the furnishing of any service

in this state."). As noted above, the only advertising identified in the CAC is non-actionable

puffery that cannot provide the basis for a § 350 claim. *Duran v. Henkel of Am., Inc.*, 450 F.

Supp. 3d 337, 346 (S.D.N.Y. 2020) ("Statements that are mere puffery cannot support a claim

under GBL §§ 349 or 350."). The Court will therefore grant Denso's motion as to Plaintiffs' §

350 claim.

### 14. North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75–1.1 et seq., Count XL

"For a concealment or omission to be actionable under the [NC]UDTPA, the defendant

must have had a duty to disclose that which was concealed or omitted." *City of High Point, N.C.*

*v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 635–36 (M.D.N.C. 2020) (citing *Kron Med.*

*Corp. v. Collier Cobb & Assocs., Inc.*, 420 S.E.2d 192, 198, *disc. review denied*, 424 S.E.2d 910

(1992)). A duty to disclose may exist where "no fiduciary relationship exists and one party has

knowledge of a latent defect in the subject matter of the negotiations about which the other party

is both ignorant and unable to discover through reasonable diligence." *Id.* at 636 (quoting

*Hutton v. Hydra-Tech, Inc.*, No. 1:14CV888, 2018 WL 1363842, at *7 (M.D.N.C. Mar. 15,

2018)). But as decided above with respect to Plaintiffs' common-law fraud claim under North

Carolina law, the CAC does not allege that Plaintiffs "negotiated" with Denso. The Court will

therefore grant Denso's motion on this issue.

### 15. Oregon Unlawful Trade Practices Act ("OUTPA"), Or. Rev. Stat. § 72-3140, Count XLIII

Oregon law holds that a duty to disclose is required to state omission-based OUTPA

claims. *See Martell*, 492 F. Supp. 3d at 1145. Such a duty does not exist where "the parties

were merely in an 'arm's-length' commercial or business relationship where they were acting in their own economic interest." *Id.* at 1143 (citing *Conway*, 924 P.2d at 823–24).  Because the CAC only alleges an arms-length commercial transaction in this case, at most, the Court will grant Denso's motion to dismiss on this issue.

### 16. Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et seq., Count XLIV

"When allegations underlying a UTPCPL claim involve a defendant's nondisclosure rather than misrepresentation, the omission is actionable only if there is a duty to disclose.  In other words, for silence to be actionable there must be a duty to speak." *DeSimone v. U.S. Claims Servs., Inc.*, No. CV 19-6150, 2020 WL 1164794, at *3 (E.D. Pa. Mar. 11, 2020) (citing *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989)).  "In Pennsylvania, a duty to speak requires the presence of a fiduciary or other confidential relationship 'as prerequisite to liability for omissions.'" *Id.* (quoting *Silverstein v. Percudani*, 2005 WL 1252199, at *8 (M.D. Pa. May 26, 2005)).  Because Plaintiffs do not allege a confidential or fiduciary relationship, the Court will Grant Denso's motion on this issue.

### 17. Rhode Island Deceptive Trade Practices Act ("RIDTPA"), R.I. Gen. Laws 6-13.1 et seq., Count XLVI

The RIDTPA applies to omissions.  *See Long v. Dell, Inc.*, 93 A.3d 988, 1003 (R.I. 2014).  However, the Court's research did not identify authority stating that a duty to disclose is required to state an omission-based claim under the RIDTPA, and the Court declines to assume that such a duty exists absent authority.  New Jersey law therefore conflicts with Rhode Island law on this issue.  Plaintiff Biondo resides and purchased his vehicle in Rhode Island, so Rhode Island law applies to his claim.  [CAC ¶ 85].

58

Because Rhode Island law does not require a duty to disclose for omission-based statutory claims, the Court will deny Denso's motion to dismiss on this issue.

### 18. South Carolina Unfair and Deceptive Trade Practices Act ("SCUTPA), S.C. Code Ann. §§ 39–5–10 et seq., Count XLVIII

"Under South Carolina law, '[n]on-disclosure is fraudulent when there is a duty to speak." *Harrell v. BMW of N. Am., LLC*, 517 F. Supp. 3d 527, 539 (D.S.C. 2021) (discussing omission-based SCUTPA claim) (quoting *Regions Bank*, 582 S.E.2d at 445.  A duty to disclose:

> may be reduced to three distinct classes: (1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Regions Bank*, 582 S.E.2d at 445–46.  Because no fiduciary relationship exists between Plaintiffs and Denso as described above, Denso had no duty to disclose.  The Court will therefore grant Denso's motion on this issue.

### 19. Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 et seq., Count L

The TCPA applies to omissions.  *See Cloud Nine, LLC v. Whaley*, 650 F. Supp. 2d 789, 796 (E.D. Tenn. 2009) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn.1997)). However, the Court's research did not identify authority stating that a duty to disclose is necessary to state an omission-based TCPA claim.  *See Langer v. BMW of N. Am., LLC*, 533 F. Supp. 3d 626, 633–34 (E.D. Tenn. 2021) (discussing analogous omission-based claims without mentioning duty to disclose).  Tennessee law therefore conflicts with New Jersey law on this issue.  The only Plaintiff with a connection to Tennessee is Plaintiff Sweeton, who resides in

Georgia but purchased his vehicle in Tennessee.  [CAC ¶ 117].  Consistent with the Court's analysis above, the Court will apply Tennessee law to his claim.

Because Tennessee law does not require a duty-to-disclose for omission-based TCPA claims, the Court will deny Denso's motion on this issue.

> ### 20. Texas Deceptive Trade Practices Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.41 et seq., Count LII

"A DTPA violation for failure to disclose requires the defendant to have known material information and have failed to bring it to the plaintiff's attention." *Washburn v. Sterling McCall Ford*, 521 S.W.3d 871, 876 (Tex. App. 2017) (citing Tex. Bus. & Com. Code § 17.46(b)(24); and *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 479 (Tex. 1995)).  Because failure to disclose known information can give rise to a DTPA violation, Texas law conflicts with New Jersey law. Plaintiff Gardener resides and purchased his vehicle in Texas, [CAC ¶ 163], so Texas law applies to his claim.  Because the CAC alleges that Denso knew of the Defect, as discussed above, the Court will deny Denso's motion on this issue.

> ### 21. Vermont Consumer Fraud Act ("VCFA"), Vt. Stat. Ann. Tit. 9A § 2-314 et seq., Count LIV

The VCFA applies to omissions.  *See Moffitt v. Icynene, Inc.*, 407 F. Supp. 2d 591, 603 (D. Vt. 2005) (citing *Jordan v. Nissan North America, Inc.*, 853 A.2d 40 (Vt. 2004)).  However, the Court's research did not identify a duty to disclose requirement for omission-based VCFA claim.  *See Bergman v. Spruce Peak Realty, LLC*, 847 F. Supp. 2d 653, 671–73 (D. Vt. 2012) (discussing disclosure duty under common-law fraudulent omission claim but not VCFA claim).  A conflict therefore exists between Vermont law and New Jersey law.  The only Plaintiff with a connection to Vermont is Plaintiff Moore, who resides in New York but purchased his vehicle in Vermont.  [CAC ¶ 41].  Consistent with the Court's analysis above, Vermont law applies to his

claim.  Because Vermont does not require a duty to disclose to state a VCFA claim, the Court will deny Denso's motion to dismiss on this issue.

### 22. Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code Ann. § 19.86.010 et seq., Count LVII

"[A] party's failure to disclose material facts may give rise to a CPA violation." *Carideo*, 706 F. Supp. 2d at 1135 (citing *Griffith v. Centex Real Estate Corp.*, 969 P.2d 486, 492 (Wash. Ct. App. 1998)).  The Court's research did not identify a duty-to-disclose requirement for omission-based WCPA claims.  *See Rydman v. Champion Petfoods USA, Inc.*, No. C18-1578 RSM, 2020 WL 4347512, at *3, *3 n.5 (W.D. Wash. July 29, 2020) (granting motion to dismiss common-law fraud claim for failure to establish duty to disclose but permitting WCPA claim to proceed).  Thus, New Jersey and Washington law conflict on this issue.  Plaintiffs Brockman and Brown reside and purchased their vehicles in Washington, so Washington law applies to their claim.  [CAC ¶¶ 93, 97].  Because Denso had no duty do disclose under the WCPA, the Court will deny Denso's motion to dismiss on this issue.

### 23. Wisconsin Deceptive Trade Practices Act ("WDTPA"), Wis. Stat. § 110.18, Count LIX

Omissions are not actionable under the WDTPA.  *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1052 (W.D. Wis. 2018) ("Because the statute prohibits only assertion[s], representation[s] or statement[s], it does not prohibit omissions." (citing Wis. Stat. § 100.18(1)); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wis. 2004) ("Silence—an omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1).  The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading.").  Plaintiffs therefore cannot ground their WDTPA claims in Denso's failure to disclose the Defect.

The only affirmative representations attributable to Denso in the CAC are vague statements about the quality and reliability of Denso's products, which are commercial puffery. "WDTPA claims cannot be premised on expressions of opinion or statements of mere 'puffery.'" *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1126 (E.D. Wis. 2016).  The Court will therefore grant Denso's motion to dismiss on this issue.

### vii.   Causation, Reliance

Denso argues that Plaintiffs' statutory claims for nine states,[36] and common-law fraud and deception claims in all states fail because Plaintiffs have not adequately stated the reliance elements of these claims [Dkt. 78-1 at 35–36].  Relatedly, Denso argues that Plaintiffs have not adequately alleged the causation element of consumer protection statutes from twenty states.[37] [Dkt. 78-1 at 37].  Denso argues that dismissal is required on the reliance and causation elements because the CAC only alleges that Plaintiffs viewed and relied on "**Subaru's** persistent advertising messaging that its vehicles were of high quality and were safe, and were reliable" when purchasing a Subaru vehicle [CAC ¶ 120] (emphasis added), but not any representations from Denso. [Dkt. 78-1 at 36].[38]

The Court rejects this argument with respect to Plaintiffs' common-law fraudulent omission claims.  The problem with this argument is that Plaintiffs allege that Denso failed to disclose the Defect, not that Denso made affirmative or partial misrepresentations concerning its

---

[36] Arkansas, California, Hawaii, Maryland, Minnesota, Nevada, North Carolina, Pennsylvania, and Vermont.  [Dkt. 78-1 at 35].

[37] Arkansas, California, Florida, Hawaii, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, Texas, Vermont, Washington, and Wisconsin.  [Dkt. 78-1 at 37].

[38] The Court will not consider this argument as to the state statutory claims dismissed on other grounds above.

products.  [*E.g.* CAC ¶ 368].  Plaintiffs allege that they would not have purchased their vehicles

if Denso disclosed that its fuel pumps were defective [*e.g.* CAC ¶ 311], and that they have

suffered economic losses as a result.  [*E.g.* CAC ¶¶ 164].  Courts in this district and elsewhere

have found that analogous pleadings are sufficient to survive a motion to dismiss.  *See, e.g.*, *In re*

*Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2017 WL 2406711, at *5 (S.D. Fla. June 1,

2017) (denying motion to dismiss common-law fraud claims); *Gray v. BMW of N. Am., LLC*, 22

F. Supp. 3d 373, 385–86 (D.N.J. 2014) (denying motion to dismiss on California common-law

fraud claim where "Plaintiffs [pled] that they justifiably relied on the omission by paying full

price for the BMWs when they would not have if BMW had disclosed the defect.  The resulting

damages are the cost of repairs." (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099

(N.D. Cal. 2007))); *Henderson v. Volvo Cars of N. Am., LLC*, No. CIV. 09-4146 (DMC), 2010

WL 2925913, at *5–*6 (D.N.J. July 21, 2010); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505,

527–28 (D.N.J. 2008).

As explained below on a state-by-state basis, the Court also rejects Denso's argument

with respect to the Plaintiffs' state statutory claims.

### 1.  California CUCL, Count XIV (reliance and causation)

"To establish the causal nexus between the omission and a plaintiff's harm, a plaintiff

must plead that she would not have purchased the product or service at issue if she had known

the material fact that Defendant allegedly omitted." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp.

3d 1101, 1119 (N.D. Cal. 2016) (quoting *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066,

1076 (N.D. Cal. 2014)).  Similarly, "[r]eliance can be demonstrated by showing that but-for

defendant's conduct, plaintiff would not, in all reasonable probability, have engaged in the

injury-producing conduct." *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1265 (N.D. Cal. 2014)

(citing *In re Actimmune Marketing Litig.*, No. 08–02376–MHP, 2009 WL 3740648, at *8 (N.D. Cal. Nov. 6, 2009)).  Plaintiffs satisfy these pleading requirements because the CAC alleges that Plaintiffs would not have purchased or paid as much their vehicles containing Denso fuel pumps had they known of the Defect.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### 2.   Florida FDUTPA, Count XXI (causation)

"Instead of actual reliance, a plaintiff must simply prove that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances'" to state an FDUTPA claim.  *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1234 (S.D. Fla. 2021) (quoting *BPI Sports v. Labdoor, Inc.*, No. 15-62212, 2016 WL 739652, at *5 (S.D. Fla. Feb. 25, 2016)). Plaintiffs have alleged their vehicles contain a defective fuel pump that prevents their vehicle engines from working properly [CAC ¶ 2], and that Plaintiffs would not have purchased or paid has much their vehicles containing Denso fuel pumps had they known of the Defect.  [*E.g.* CAC ¶ 374].  These claims plausibly allege that Denso's failure to disclose information about the defect would have misled reasonable consumers.  The Court will therefore deny Denso's motion on this issue.

### 3.   Hawaii HUDAP §§ 480, 481(A), Counts XXIV & XXV

Under the HUDAP, "[a]ny injury must be fairly traceable to the defendant's actions." *Ryan*, 380 F. Supp. 3d at 1049 (quoting *In re Kekauoha–Alisa*, 674 F.3d 1083, 1092 (9th Cir. 2012)).  The Court finds that Plaintiffs have adequately alleged that their alleged injury is "traceable" to Denso's alleged failure to disclose information about the Defect.  Plaintiffs have alleged their vehicles contain a defective fuel pump that prevents their vehicle engines from working properly [CAC ¶ 2], and that Plaintiffs would not have purchased or paid has much their

vehicles containing Denso fuel pumps had they known of the Defect.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### 4.   Maryland MCPA, Count XXIX (causation, reliance)

"[A] consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information."  *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 535 (D. Md. 2011); *see also id.* at 532 (noting that "that but-for causation [is] not the proper test for reliance in" fraud-based MCPA cases).  The CAC alleges that Plaintiffs would not have purchased or paid has much their vehicles containing Denso fuel pumps had they known of the Defect, which satisfies pleading requirements under the MCPA.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### 5.   Mass. CPA, Count XXXI (causation)

Under the Mass. CPA, "a plaintiff 'need not show proof of actual reliance on a misrepresentation in order to recover damages'; instead, the plaintiff must show 'a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception.'"  *Ferreira v. Sterling Jewelers, Inc.*, 130 F. Supp. 3d 471, 478 (D. Mass. 2015) (quoting *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 886 n.12 (Mass. 2008)).  Plaintiffs allege that they would not have purchased or paid has much their vehicles containing Denso fuel pumps had they known of the Defect, which is sufficient to state a Mass. CPA claim under this standard.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### 6.   New York NYGBL § 349, Count XXXVII (causation)

"[W]hile the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or

practice that caused actual, although not necessarily pecuniary, harm." *Tomassini v. FCA U.S. LLC*, No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343, at *8 (N.D.N.Y. June 23, 2015) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741 (N.Y. 1995)).  Plaintiffs allege that they would not have purchased or paid has much their vehicles containing Denso fuel pumps had they known of the Defect, [*e.g.* CAC ¶ 374], which is sufficient under this standard.  The Court will therefore deny Denso's motion on this issue.

### 7.   Rhode Island RI UTPCPA, Count XLVI

Rhode Island statute requires plaintiffs to show that they suffered a loss "as a result of" a defendant's unlawful conduct.  6 R.I. Gen. Laws Ann. § 6-13.1-5.2(a).  Plaintiffs have plausibly stated that they were injured as "as a result" of Denso's conduct because they allege that they would not have purchased or paid has much their vehicles containing Denso fuel pumps had they known of the Defect.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### 8.   Tennessee TCPA, Count L

"As stated expressly in the TCPA, a claim may be brought by any person, including corporations, who 'suffers an ascertainable loss' proximately caused by unfair or deceptive actions declared unlawful by the TCPA." *Asurion, LLC v. SquareTrade, Inc.*, 407 F. Supp. 3d 744, 751 (M.D. Tenn. 2019).  "Ordinarily, proximate cause is a question for a jury unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Act for Health v. Case Mgmt. Assocs., Inc.*, 128 F. Supp. 3d 1020, 1036 (E.D. Tenn. 2014) (citations and quotations omitted).  Plaintiffs have plausibly alleged the proximate cause element because they allege that they would not have

purchased or paid has much their vehicles containing Denso fuel pumps had they known of the Defect.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### 9.   Vermont VCFA, Count LIV

To bring a VCFA claim, plaintiffs must show that they "relied upon" false or fraudulent representations, suffered an injury "as a result" of false or fraudulent practices.  *JLD Props. of St. Albans, LLC v. Patriot Ins. Co.*, No. 2:20-CV-00134, 2021 WL 2077952, at *4 (D. Vt. May 21, 2021) (quoting *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014)).  Plaintiffs have plausibly alleged they purchased their vehicles "as a result" of Denso's conduct because they allege that they would not have purchased or paid has much their vehicles containing Denso fuel pumps had they known of the Defect.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### 10. Washington WCPA, Count LVII

Causation is an element of WCPA claims, but "causation under the CPA for omission of material facts includes a rebuttable presumption of reliance."  *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 391 P.3d 582, 589 (Wash. Ct. App. 2017).  At this stage of the litigation, Washington Plaintiffs are entitled to this rebuttable presumption because they allege that they would not have purchased or paid has much their vehicles containing Denso fuel pumps if they knew of the Defect.  [*E.g.* CAC ¶ 374].  The Court will therefore deny Denso's motion on this issue.

### viii.   State-Specific Defenses

### 1.   Notice—Alabama ADTPA, Count X

Denso argues that Plaintiffs' ADTPA claim fails because Plaintiffs do not allege that they provided a "written demand for relief" as the ADTPA requires.  [Dkt. 78-1 at 42].  The Court

agrees.[39]  *See* Ala. Code § 8-19-10(e); *Meadows v. HSBC Mortg. Corp.*, No. 2:10-CV-01974-JEO, 2011 WL 13134199, at *6 (N.D. Ala. Sept. 27, 2011) ("Alabama's DTPA requires that at least 15 days prior to the filing of any action under this section, a prospective plaintiff must file a written demand for relief to any prospective respondent reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." (citations and quotations omitted)). Because the CAC does not allege that Alabama Plaintiffs provided pre-suit notice to Denso, the Court will grant Denso's motion to dismiss on this issue.

## 2.  California CUCL, Count XIV

Denso argues that California Plaintiffs' CUCL claim fails for several reasons.  First, Denso argues that Plaintiffs have failed to allege that Denso engaged in "unlawful" conduct for the purposes of the CUCL, and that section of the CAC dedicated to Plaintiffs' CUCL claim only describes Subaru's unlawful conduct.  [Dkt. 78-1 at 48–49].  The Court agrees that this particular section of the CAC only discusses Subaru.  [CAC ¶¶ 492–98].  But the Court must review the CAC "as a whole," and the Court has already determined that the CAC otherwise adequately pleads fraudulent omission.  "Fraudulent omissions are actionable under [the CUCL]."  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 324–26 (Cal. Ct. App. 2012)).

Denso next argues that Plaintiffs cannot recover from Denso under the CUCL because restitution is the only remedy available under the CUCL and Plaintiffs "do not and cannot allege that the Denso Defendants have their money to be restored."  [Dkt. 78-1 at 49].

---

[39] New Jersey law does not require plaintiffs to provide notice before suing a manufacturer for breach of implied warranty.  *See Powell v. Subaru of Am., Inc.*, No. 1:19-CV-19114, 2020 WL 6886242, at *10–11 (D.N.J. Nov. 24, 2020).  Plaintiffs Griffin, Oakley, and Whitley reside and purchased their vehicles in Alabama, so Alabama law applies to their claims.  [CAC ¶¶ 129, 133, 138].

"The UCL only provides for restitution or injunctive relief."  *Cabebe v. Nissan of N. Am., Inc.*, No. 18-CV-00144-WHO, 2018 WL 5617732, at *4 (N.D. Cal. Oct. 26, 2018) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003)).  California courts have found that plaintiffs can seek restitution from goods manufacturers under the CUCL even where plaintiffs purchased those goods from third-party vendors.  *See Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at *32–*33 (N.D. Cal. Apr. 23, 2020); *Cabebe*, 2018 WL 5617732, at *5 (noting that "UCL restitution claims" are not limited to "direct purchases as a matter of law." (citing *Shersher v. Superior Ct.*, 65 Cal. Rptr. 3d 634, 636 (Cal. Ct. App. 2007))).

Denso argues that this case law concerning third-party vendors does not apply here because Denso did not sell a finished product to consumers by way of a third party vendor. Instead, Denso sold fuel pumps to Subaru which incorporated the fuel pumps into its vehicles, and the vehicles were sold through Subaru dealerships to consumers.  [Dkt. 78-1 at 49–50]. Though it cites no authority to support its argument, Denso argues that the case law concerning third-party vendors does not permit Plaintiffs to sue Denso here.

The Court disagrees.  The ultimate questions in a CUCL claim are whether a defendant "was unjustly enriched as a result of its allegedly unlawful business practices," and whether the restitution sought "represent[s] the return of the money or property the defendant acquired through its unfair practices to a plaintiff's detriment."  *Cabebe*, 2018 WL 5617732, at *5 (citations and quotations omitted).  If Denso benefitted financially by selling defective fuel pumps and Plaintiffs suffered financially by purchasing vehicles with defective fuel pumps, the fact that Subaru incorporated Denso's fuel pumps into its vehicles does not change the

underlying economic analysis.  Plaintiffs will ultimately have to prove the amount of detriment to Plaintiffs and the amount of benefit to Denso, but they have met their burden at this stage.

Finally, Denso argues that Plaintiffs cannot recover punitive damages under the CUCL. [Dkt. 78-1 at 50].  But the CAC does not seek punitive damages for Plaintiffs' CUCL claim. [CAC ¶ 498].

In sum, the Court rejects Denso's arguments concerning the CUCL and will deny Denso's motion to dismiss the CUCL claim on these grounds.

### 3.  Maryland MCPA, Count XXX

Denso argues that Plaintiffs' MCPA claim fails under Maryland law because Plaintiffs "have not alleged an identifiable loss."  [Dkt. 78-1 at 52].  The Court agrees.  The MCPA requires plaintiffs to allege that deceptive conduct "caused the plaintiff actual injury."  *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 328 (D. Md. 2021) (citing *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018)).  Maryland Plaintiffs Efantis and Fontenot do not satisfy this requirement because they do not allege that they have experienced any mechanical problems.  *See Demetry v. Lasko Prod.*, Inc., 284 F. App'x 14, 15 (4th Cir. 2008) (upholding dismissal of plaintiff's MCPA claim for failure to allege actual injury because the plaintiff did not allege that the product at issue "malfunctioned as a result of the design defect.").  The Court will therefore grant Denso's motion on this issue.

### 4.  Punitive Damages—Rhode Island RI UTPCPA, Count XLVI

Denso argues that Plaintiffs cannot pursue punitive damages under Rhode Island's consumer protection statute because the CAC does not allege that Denso committed any "willful, wanton, reckless or wicked" conduct. [Dkt. 78-1 at 60].  Plaintiffs respond that the CAC's

allegations concerning Denso's failure to disclose the Defect to the public sufficiently allege that Denso's conduct warrants punitive damages.  [Dkt. 94 at 74–75].

"[P]unitive damages are severely restricted under Rhode Island law."  *Mark v. Congregation Mishkon Tefiloh*, 745 A.2d 777, 779 (R.I. 2000) (citing *Johnson v. Johnson*, 654 A.2d 1212, 1217 (R.I. 1995).  "[F]or punitive damages to be awarded there must be a showing that the defendant acted with malice or in bad faith" that rises to the level of "criminality." *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I. 1993) (citing *Sherman v. McDermott*, 329 A.2d 195, 196 (R.I. 1974); and *Morin v. Aetna Casualty and Surety Co.*, 478 A.2d 964, 967 (R.I. 1984)).

Plaintiffs have not stated a plausible claim for punitive damages.  Nothing in the CAC suggests that Denso acted maliciously or criminally by failing to disclose its knowledge of the Defect or otherwise.  The Court will grant Denso's motion on this issue.

### c.  Prudential Mootness

Denso finally argues that the CAC should be dismissed in its entirety under the doctrine of prudential mootness because Subaru initiated a recall with the NHTSA.  [Dkt. 78-1 at 63–64]. Denso incorporates by reference the arguments raised in Subaru's companion motion to dismiss [*id.*], so the Court will refer primarily to Subaru's brief in discussing the merits of Denso's argument.

Even where a federal court has jurisdiction to hear a case under Article III of the Constitution, the court may refuse to exercise jurisdiction over a case that is "prudentially moot." *Sierra Club v. U.S. Army Corps of Engineers*, 277 F. App'x 170, 172 (3d Cir. 2008).  The Third Circuit has found that federal courts may "decline to exercise our discretion to grant declaratory and injunctive relief if the controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold

relief it has the power to grant.'"  *Id.* (quoting *Chamber of Com. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)).

Subaru argues that the Court should dismiss the CAC entirely because Subaru voluntarily commenced the Recall according to federal statute and under the NHTSA's supervision.  [Dkt. 80-1 at 87–88].  Subaru relies on *Winzler v. Toyota Motor Sales USA, Inc.*, where the Tenth Circuit found that a product liability class action suit seeking equitable remedies from a car manufacturer was prudentially moot after the car manufacturer recalled the allegedly defective car component.  681 F.3d 1208, 1215 (10th Cir. 2012).  The *Winzler* court found that the NHTSA-coordinated recall provided adequate remedies to the putative class plaintiffs and that allowing the lawsuit to proceed would encroach on the remedial process which other branches of government created.[40]  Subaru and Denso ask the Court to adopt *Winzler's* reasoning and conclusion in this case.

---

[40]  *See Winzler*, 681 F.3d at 1211

> The weight a remedial promise plays in the equitable calculus depends, of course, on who is making the promise and the reliability of that party's past promises. And it should come as no surprise that the remedial commitments of the coordinate branches of the United States government bear special gravity.  Neither do we take governmental promises seriously only because they are generally trustworthy. We also take them seriously because affording a judicial remedy on top of one already promised by a coordinate branch risks needless inter-branch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources. It risks, too, the entirely unwanted consequence of discouraging other branches from seeking to resolve disputes pending in court.

(citations and quotations omitted).

The Court declines to do so because Subaru's argument overlooks a key distinction between this case and *Winzler*.  The plaintiffs in *Winzler* only sought equitable remedies, *id.* at 1210, but Plaintiffs here assert a host of legal claims seeking legal remedies.  [*See generally* CAC].  Neither Subaru nor Denso have offered any authority showing that a court may exercise its discretion to find legal claims prudentially moot.  *Cf. Sierra Club*, 277 F. App'x 170 at 172 (noting that courts may "decline to exercise our discretion **to grant declaratory and injunctive relief**….") (emphasis added).  As with Subaru, the Court will deny Denso's motion with respect to its prudential mootness argument.

## IV.   Conclusion

For the reasons set forth above, the Court will grant Subaru's motion in part and deny Subaru's motion in part.  An appropriate order will follow.


March 10, 2022                                          __/s/ Joseph H. Rodriguez_____

                                                        Hon. Joseph H. Rodriguez, USDJ

## Appendix A

| Strict Product Liability Claims Against Denso (Count IV) ||
|---|---|
| **State** | **Finding** |
| Ala. | Motion denied |
| Ark. | Motion denied |
| Cal. | Motion granted (economic loss rule) |
| Conn. | Motion denied |
| Fla. | Motion granted (economic loss rule) |
| Haw. | Motion granted (economic loss rule) |
| Ill. | Motion granted (economic loss rule) |
| Md. | Motion denied |
| Mass. | Motion granted (economic loss rule) |
| Minn. | Motion granted (economic loss rule) |
| Nev. | Motion granted (economic loss rule) |
| N.Y. | Motion granted (economic loss rule) |
| N.C. | Motion granted (preempted by statute) |
| Pa. | Motion granted (economic loss rule) |
| S.C. | Motion granted (economic loss rule) |
| Tenn. | Motion granted (economic loss rule) |
| Tex. | Motion granted (economic loss rule) |
| Vt. | Motion granted |
| Wis. | Motion granted (economic loss rule) |

| Fraud/Deception Claims Against Denso |||
|---|---|---|
| **State** | **Common law (Count II)** | **Statutory** |
| Ala. | Motion granted (economic loss rule) | Motion granted (pre-suit notice) (Count X) |
| Ark. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count XII) |
| Cal. | Motion granted (economic loss rule) | Motion denied (Count XIV) |
| Conn. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count XIX) |
| Fla. | Motion granted (economic loss rule) | Motion denied (Count XXI) |
| Haw. | Motion granted (duty to disclose) | Motion denied (Count XXIV) |
| Ill. | Motion granted (duty to disclose) | Motion granted (no actionable omission) (Count XXVII) |
| Md. | Motion granted (duty to disclose) | Motion granted (identifiable loss) (Count XXX) |
| Mass. | Motion granted (duty to disclose) | Motion denied (Count XXXI) |

| | | |
|---|---|---|
| Minn. | Motion Denied | Motion Denied (Count XXIII)[41] |
| Nev. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count XXXVI) |
| N.J. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count VI) |
| N.Y. | Motion denied | Motion denied (N.Y. GBL § 349) (Count XXXVII)<br><br>Motion Granted (N.Y. GBL § 350) (actionable conduct) (XXXVIII) |
| N.C. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count XL) |
| Or. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count XLIII) |
| Pa. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count XLIV) |
| R.I. | Motion denied | Motion granted as to punitive damages only (Count XLVI) |
| S.C. | Motion granted (duty to disclose) | Motion granted (duty to disclose) (Count XLVIII) |
| Tenn. | Motion denied | Motion Denied (Count L) |
| Tex. | Motion granted (duty to disclose) | Motion denied (Count LII) |
| Vt. | Motion denied | Motion denied (Count LIV) |
| Wash. | Motion denied | Motion denied (Count LVII) |
| Wisc. | Motion granted (economic loss rule) | Motion granted (omissions not actionable) (Count LIX) |

### Additional Claims Against Denso

| Issue | Finding |
|---|---|
| Prudential mootness (all claims) | Motion denied |

[41] The Amended Complaint lists this claim as Count XXIII. This appears to be a typographical error, as it appears sequentially where Count XXXIII should appear, and the Amended Complaint also identifies another claim as Count XXIII. For consistency, the Court refers to Plaintiffs' MPCFA claim as Count XXIII here.