# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILLES COHEN, JOHN MICKLO, MUHAMMAD ADNAN, DONNY WOO, BENJAMIN MOORE, MARY LOU PLANTE, MEREDITH MEIN DE VERA, DAN ROSENTHAL, IGOR KRAVCHENKO, ALEXANDRA EFANTIS, BLAISE FONTENOT, KATHERINE MUTSCHLER, JACQUELINE FERGUSON, BENJAMIN CHRISTENSEN, JENNIFER LILLEY, STEVEN BIONDO, CHANTEL NELSON, JACQUELINE BROCKMAN, MARTY BROWN, CHRISTINE KING, and KEVIN | Case No.: 1:20-cv-08442-JHR-AMD  **OPINION** |
| KING, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| SUBARU OF AMERICA, INC., *et al.* | |
| Defendants. | |

This matter is before the Court on the motion to dismiss filed by Defendant Subaru of America, Inc. ("Subaru"). [Dkt. 80]. For the reasons set forth below, the Court will grant Subaru's motion in part and deny Subaru's motion in part. Appendix A to this opinion summarizes the Court's findings.

# I.      Background

As detailed in the procedural history below, this case results from the consolidation of four putative class action lawsuits[1] filed against Subaru,[2] its parent company Subaru Corporation,[3] and co-defendants Denso Corporation and Denso International of America, Inc. Subaru is a wholly owned subsidiary of Subaru Corporation that is "responsible for marketing, selling, distributing, and servicing [Subaru vehicles] in the United States."  [CAC ¶ 171]. Plaintiffs in this case are thirty-four individuals who purchased or leased Subaru vehicles manufactured between 2013 and 2019.  The following table identifies Plaintiffs, their state of residence, the year and model of their Subaru vehicle, and the states where they purchased or leased their vehicles:

| Plaintiff | Model | Model Year | Resident State | State of Purchase or Lease |
|---|---|---|---|---|
| Katherine Griffin | Outback | 2018 | Ala. | Ala. |
| Janet Oakley | Outback | 2017 | Ala. | Ala. |
| Adam Whitley | Outback | 2017 | Ala. | Ala. |
| Meredith Mein De Vera | Ascent | 2019 | Ark. | Ark. |
| Muhammad Adnan | Ascent | 2019 | Cal. | Cal. |
| Donny Woo | Impreza | 2019 | Cal. | Cal. |
| Chiara Bancod-Hile | Impreza | 2015 | Cal. | Cal. |

---

[1] Citations refer to the Consolidated Class Action Complaint ("CAC") filed as a result of this consolidation.  [Dkt. 33].

[2] Subaru is a New Jersey corporation with a principal place of business in New Jersey.  [CAC ¶ 170].

[3] Subaru Corporation is a Japanese Company with its principal place of business in Japan.  [CAC ¶ 168].

| Plaintiff | Model | Model Year | Resident State | State of Purchase or Lease |
|---|---|---|---|---|
| Robert Karrat | Outback | 2013 | Conn. | N.Y. |
| Paula Weeks | Ascent | 2019 | Conn. | Mass. |
| Martin Torresquintero | Outback | 2019 | Conn. | Conn. |
| Gilles Cohen | Impreza | 2019 | Fla. | Fla. |
| Dan Rosenthal | Forester | 2019 | Fla. | Fla. |
| Cole Sweeton | Impreza | 2019 | Ga. | Tenn. |
| Roman Anderson | Outback | 2017 | Haw. | Haw. |
| Igor Kravchenko | Impreza | 2019 | Ill. | Ill. |
| Alexandra Efantis | Ascent | 2019 | Md. | Md. |
| Blaise Fontenot | Outback | 2019 | Md. | Md. |
| John Micklo | Ascent | 2019 | Minn. | Minn. |
| David Sroelov | Outback | 2019 | Nev. | Nev. |
| Katherine Mutschler | Legacy | 2019 | N.J. | N.J. |
| Jacqueline Ferguson | Outback | 2019 | N.J. | N.J. |
| Benjamin Moore | Outback | 2019 | N.Y. | Vt. |
| Mary Lou Plante | Outback | 2019 | N.Y. | N.Y. |
| Troy Perry | Ascent | 2020 | N.C. | N.C. |
| Benjamin Christensen | Outback | 2019 | Or. | Or. |
| Jennifer Lilley | Outback | 2019 | Pa. | Pa. |
| Steven Biondo | Ascent | 2019 | R.I. | R.I. |
| Christine Schultz | Ascent | 2019 | S.C. | S.C. |
| Chantel Nelson | Ascent | 2019 | Tex. | Tex. |
| Mark Gardener | Legacy | 2019 | Tex. | Tex. |

| Plaintiff | Model | Model Year | Resident State | State of Purchase or Lease |
|---|---|---|---|---|
| Jacqueline Brockman | Ascent | 2019 | Wash. | Wash. |
| Marty Brown | Ascent | 2019 | Wash. | Wash. |
| Christine King | Legacy | 2019 | Wis. | Wis. |
| Kevin King | Impreza | 2019 | Wis. | Wis. |

While the CAC contains other facts relevant to each Plaintiff's claims, the Court will discuss those facts in the analysis section as necessary to resolve Subaru's motion.

Plaintiffs allege that their Subaru vehicles—and all Subaru vehicles manufactured since 2013—contain defective low-pressure fuel pumps[4] manufactured by Denso.  [CAC ¶¶ 1, 14].  According to the CAC, these fuel pumps contain an impeller[5] that is "unsuitable for its environment" because it was produced using a "low density material."  [CAC ¶¶ 199, 204].  Because of this "low density material," the impellers can absorb excessive amounts of fuel, become deformed, and fail to adequately pump fuel from the fuel tank to the engine.  [CAC ¶¶ 199–209].  According to the CAC, Subaru vehicles containing the defective fuel pump are "unsafe to operate because [the vehicles] will not predictably respond to operator input to accelerate and … could stall or completely lose power while in motion."  [CAC ¶ 1].  The Court will refer to this issue of inadequate impeller materials as alleged in the CAC as the "Defect."

---

[4] Low pressure fuel pumps are located in a vehicle's fuel tank.  They lift gas from the fuel tank and send it to the engine.  [CAC ¶¶ 195–96].

[5] The impeller is a component of the fuel pump assembly that spins to generate negative pressure and move fuel from the fuel tank to the engine itself.  [CAC ¶¶ 196–97].

a.   **Recalls**

Subaru and Denso commenced a series of recalls concerning fuel pump impellers with the National Highway Traffic Safety Administration ("NHTSA").[6]  On April 16, 2020, Subaru initiated a recall which applied to more than 188,000 Subaru Impreza, Outback, Legacy, and Ascent model vehicles from model year 2019 (the "Subaru Recall").  [CAC ¶ 9].  The report announcing the recall (the "Recall Report") stated, in part, that

> [t]he affected vehicles may be equipped with a low pressure fuel pump produced during a specific timeframe which includes an impeller that was manufactured with a lower density.  If the surface of the lower density impeller is exposed to solvent drying for longer periods of time, it may develop fine cracks.  Those cracks may lead to excessive fuel absorption, resulting in impeller deformation. Over time, the impeller may become deformed enough to interfere with the body of the fuel pump, potentially causing the low pressure fuel pump to become inoperative.

[CAC Ex. C].  As this excerpt demonstrates, the Subaru Recall attributes the Defect not just to the impeller's material density but to the combination of low density and excessive exposure to "solvent drying."  [*Id.*].  The CAC alleges that Subaru mischaracterizes the nature of the Defect by qualifying the Defect in this manner.  [CAC ¶ 204].

As a remedy, the Subaru Recall states that "[f]or all of the potentially affected vehicles, Subaru dealers will replace the low pressure fuel pump … with an improved part at no cost" (the "Recall Repair").  [CAC Ex. C at 7].  The Subaru Recall also states that Subaru "began using the fuel pump with filter with a higher density impeller [sic]" as of July 2019.  [*Id.*].  However, the

---

[6] In the Federal Motor Vehicle Safety Act (the "MVSA"), 49 U.S.C. §§ 30101 et seq., Congress granted the Secretary of Transportation the "authority to investigate possible vehicle defects and, where a defect is found, to require that manufacturers notify owners and remedy the defect." *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1216 (N.D. Cal. 2002) (citing 49 U.S.C. §§ 30116–30120)).  The Secretary of Transportation then delegated to the NHTSA the authority to carry out these duties and to initiate and oversee vehicle recalls.  49 C.F.R. §§ 501.1–501.2.

CAC alleges that Subaru's efforts are inadequate.  [CAC ¶ 17].  According to the CAC, Subaru does not replace the low-pressure fuel pump, but only replaces the fuel pump's motor which houses the defective impeller.  [*Id.*].  Plaintiffs allege that the Recall Repair deviates from the industry standard practice of replacing the fuel pump entirely.[7]  [*Id.*].  The Recall Repair also requires technicians to dissemble the fuel pump assembly which risks damaging the assembly, causing gas leaks, "creating additional hazards," and "exacerbating the Fuel Pump Defect instead of correcting it."  [*Id.*].  The CAC further alleges that "Subaru failed to train technicians on the complicated procedures required to adequately" and safely repair the fuel pump assembly.  [CAC ¶ 235].  Plaintiffs cite several complaints raised by non-Plaintiff Subaru owners who received the Recall Repair but experienced subsequent performance issues with their vehicles.  [CAC ¶ 239 n.34].

On April 27, 2020, Denso issued a recall for 2,020,000 fuel pumps that it manufactured between September 1, 2017 and October 6, 2018 (the "Denso Recall").  [CAC ¶ 4].  The Denso Recall stated, in part, that the fuel pumps contain a defective impeller that "could render the fuel pump inoperable."  [CAC ¶ 5].  The Denso Recall identified two potential issues with its impellers, stating that if "an impeller is manufactured with a lower density, and [1] contains a lower surface strength or [2] is exposed to production solvent drying for a longer period of time, higher levels of surface cracking may occur which, when excessive fuel absorption occurs, may result in impeller deformation."[8]  [CAC ¶ 5].  On June 11, 2020, Denso expanded the recall to

---

[7] "Subaru's Recall Repair not only deviates from industry norms, but it also departs from Subaru's typical practice. For example, outside of this Recall, customers who bring their vehicles to a technician for fuel pump repair typically receive a new fuel pump module."  [CAC ¶ 238].

[8] As Plaintiffs point out, the Subaru Recall does not identify low density impellers with a lower surface strength as being potentially defective.  [CAC ¶ 13].

cover 2,156,057 affected fuel pumps.  [Dkt. 7].  On November 17, 2020, Denso again expanded

its recall to include 1,517,721 additional fuel pumps manufactured between June 26, 2017 and

June 28, 2019.  [CAC ¶ 15].

   According to Plaintiffs, these recalls do not capture all Subaru vehicles affected by the

Defect.  The CAC alleges that "this defect has existed in Subaru vehicles since at least 2013,"

and that other car manufacturers containing the same defective fuel pumps have recalled vehicles

as early as model year 2013.  [CAC ¶ 14].

   **b.  Knowledge and Marketing**

   The CAC alleges that Subaru learned of the Defect as early as 2013 when Subaru

consumers began to file complaints with the NHTSA stating that they experienced performance

issues with their Subaru vehicles.  [*See* CAC ¶ 245].  The CAC also alleges that Subaru learned

of the Defect through "warranty claims; non-warranty repair records; testing [Subaru] claims to

undertake in the development of new models; and customer complaints to Subaru and its

dealers."  [CAC ¶ 287].  Plaintiffs allege that, despite this knowledge, Subaru marketed its

vehicles as "safe and reliable" without disclosing the Defect.  [CAC ¶¶ 291–310].  Plaintiffs also

allege that Subaru failed to disclose the Defect to Plaintiffs and the public in several ways.  For

example, Plaintiffs claim that Subaru's website did not disclose any information concerning the

Defect.  [CAC ¶ 293].  Plaintiffs also allege that they reviewed the Monroney stickers[9] on their

vehicles, which did not disclose any information concerning the Defect.  [CAC ¶ 27].  Plaintiffs

further allege that Subaru dealership representatives did not disclose any information concerning

the Defect when Plaintiffs leased or purchased their vehicles.  [CAC ¶¶ 23, 174].  Plaintiffs claim

---

[9] Subaru, like all car manufacturers, is required to affix "Monroney stickers" to every vehicle
under the Automobile Information Disclosure Act of 1958, 15 U.S.C. § 1231 et seq.

that they would have paid less for their vehicles or not purchased their vehicles at all if they knew of the Defect or Subaru's refusal to properly repair the Defect.  [CAC ¶ 311].

### c.   Limited Warranty

Subaru provided a limited warranty in connection with each Plaintiff's Subaru vehicle (the "Limited Warranty").  The Limited warranty covers each vehicle for three years or 36,000 miles, whichever occurs sooner.  [CAC ¶ 314].  The Limited Warranty applies, in pertinent part, to "any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use…."  [CAC ¶ 315].  The Limited Warranty requires that

> Warranty claims must be made as soon as reasonably possible after a defect is discovered, and before the end of warranty coverage on the particular part. … When a warranty repair is needed, your vehicle must be brought to an Authorized SUBARU Retailer's place of business during normal business hours. A reasonable time must be allowed or the Retailer to perform necessary repairs.

[Dkt. 80-1 at 8].

### d.   Procedural History

As noted above, this case is the consolidation of four separate putative class action suits. *Griffin  v. Subaru of Am., Inc.*, 2:20-cv-00563 was filed in the Northern District of Alabama on April 23, 2020; *Anderson v. Subaru of Am., Inc.*, 2:20-cv-01587 was filed in the District of Hawaii on June 26, 2020; *Cohen v. Subaru*, 20-cv-08442 was filed in this district on July 7, 2020; and *Adnan v. Subaru*, 1:20-cv-09082 was filed in this district on July 17, 2020.  The Court granted a stipulated motion to consolidate the *Adnan* and *Cohen* cases on October 6, 2020.  [Dkt. 11].  The Northern District of Alabama consolidated the *Anderson* case into the *Griffin* case on October 19, 2020.  [Dkt. 31 ¶ 2].  This Court granted a stipulated motion to consolidate the *Griffin* case into the *Cohen* case on February 3, 2021.  [Dkt. 32].  The CAC names Subaru and

Denso as defendants, as well as their parent companies, Subaru Corporation and Subaru Denso, respectively.  [*See* Dkt. 33].  However, Plaintiffs voluntarily withdrew their claims against Denso Corporation, [Dkt. 98], and Subaru Corporation.  [Dkt. 104].  The CAC alleges fifty-nine substantive counts against Subaru and/or Denso.

## II.   Jurisdiction

Plaintiffs filed this Complaint pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4 (2005), 28 U.S.C. § 1332(d).  [CAC ¶ 181].  The Court therefore has jurisdiction under 28 U.S.C. § 1331.

## III.   Legal Standards

Subaru seeks to dismiss certain claims alleged in the CAC for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and other claims under Rule 12(b)(6) for failure to state a claim.  The relevant legal standards follow below.

### a.   Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a claim for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "'The party invoking federal jurisdiction bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter in which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'"  *Focus v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  "The Constitution limits the subject matter jurisdiction of federal courts to

'cases' and 'controversies.'"  *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 221

(D.N.J. 2020) (quoting U.S. Art. III § 2).  Plaintiffs may establish that their case presents a

controversy and, therefore, that they have standing to bring their case, "by setting forth specific

facts that indicate that the party has been injured in fact or that injury is imminent, that the

challenged action is causally connected to the actual or imminent injury, and that the injury may

be redressed by the cause of action."  *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999)

(citing *Lujan*, 504 U.S. at 560–61).

Parties moving under Rule 12(b)(1) may raise facial or factual challenges to subject

matter jurisdiction.  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack

"requires the court to 'consider the allegations of the complaint as true.'"  *Id.* (quoting *Petruska*

*v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  A factual challenge "attacks the factual

allegations underlying the complaint's assertion of jurisdiction, either through the filing of an

answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v.*

*Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)) (alterations in original).  "In reviewing a facial attack,

the court must only consider the allegations of the complaint and documents referenced therein

and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs. Inc. v. United*

*States*, 220 F.3d 169, 176 (3d Cir. 2000).  But when reviewing a factual attack, courts must

"permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court

then decides the jurisdictional issue by weighing the evidence.  If there is a dispute of a material

fact, the court must conduct a plenary hearing on the contested issues prior to determining

jurisdiction."  *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006) (citations

omitted).

### b.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  *Id.*  In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6).  *See Chester Cnty Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence.  *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d. Cir. 2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[10] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

The Court need not accept "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of

---

[10] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.*

truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d

Cir. 2007) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a

complaint when deciding a motion to dismiss." (quoting *Evancho v. Fisher*, 423 F.3d 347, 351

(3d Cir. 2005))).  *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than

conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation

to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions,

and a formulaic recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at

555 (internal citations omitted).  *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are

"enough to raise a right to relief above the speculative level on the assumption that all of the

complaint's allegations are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 556 (internal

citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.   Analysis

### a.   Standing

Subaru raises two standing arguments under Rule 12(b)(1).  First, Subaru argues that

Plaintiffs lack standing to sue under the laws of states where no Plaintiff resides or purchased a

vehicle.  Second, Plaintiffs argue that Plaintiff Karrat lacks standing to sue because his make and

model Subaru vehicle does not contain a defective Denso fuel pump as defined in the CAC.  The

Court will address these arguments below.

### i.  Unrepresented States

Subaru argues that Plaintiffs lack standing to bring claims based on the laws of states

where Plaintiffs "neither reside nor purchased their vehicles."  [Dkt. 80 at 33–34].  Plaintiffs

contend that the Court must withhold a decision on this issue until the class certification stage

under Federal Rule of Civil Procedure 23.  [Dkt. 93 at 33].  To establish standing, a plaintiff

must show that he or she

> (1) [he or] she "suffered an injury in fact, an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b)
> actual or imminent, not conjectural, or hypothetical"; (2) there is a
> "causal connection between the injury and the conduct complained
> of—the injury has to be fairly ... traceable to the challenged action
> of the defendant, and not ... the result of the independent action of
> some third party not before the court"; and (3) "that the injury will
> be redressed by a favorable decision."

*Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 459 (D.N.J. 2013) (quoting *Lujan*, 504 U.S. at

560–61).

As Plaintiffs point out, there is disagreement in this district over whether plaintiffs in a

class action may assert claims under the laws of states where the complaint does not allege

connections between the named plaintiffs and those states.  Some courts have found that this is

not a standing issue, but a question of predominance properly considered under Rule 23(b)(3).

*See Rolland v. Spark Energy, LLC*, No. CV172680MASLHG, 2019 WL 1903990, at *5 n.6

(D.N.J. Apr. 29, 2019) (quoting *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 96

(2d Cir. 2018)).  However, this Court and others[11] in this district have found that named

---

[11] *See Semeran v. Blackberry Corp.*, No. CV 15-750, 2016 WL 3647966, at *6, *6 n.10 (D.N.J.
July 6, 2016) (stating that "[a] named plaintiff must be a part of the class which he seeks to

Plaintiffs "lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury." *Ponzio*, 447 F. Supp. 3d at 223 (citations omitted). To reach this conclusion this Court relied on the well-settled principle that "'a plaintiff must demonstrate standing for each claim he seeks to press.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006)).

Consistent with its prior rulings, the Court will grant Subaru's motion to dismiss Plaintiffs' "state specific claims to the extent they are brought on behalf of putative class members outside of the … states represented by named Plaintiffs." *Ponzio*, 447 F. Supp. 3d at 223.

### ii. Plaintiff Karrat

Subaru argues next that Plaintiff Karrat's claims should be dismissed for lack of standing because Plaintiff Karrat cannot satisfy the "traceability" requirement. [Dkt. 80-1 at 34–35]. Subaru argues that Plaintiff Karrat's 2013 Outback does not contain the fuel pump alleged to be defective in this case and, therefore, that any injuries he suffered are not "traceable" to the Defect as alleged in the CAC. [*Id.*]. To support this argument, Subaru submits a declaration from

---

represent" and deciding standing issues at the pleadings stage "in light of the fact that [p]laintiff was not a member of the Multi-State Class, and because such a class would require the court to apply the substantive law from numerous other states."); *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury."); *In re Magnesium Oxide Antitrust Litig.*, No. 10-5943, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011) (finding that excusing standing requirements for each claim would allow a plaintiff "to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis."); *accord In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (citations omitted).

Michael Campbell, Vice President of Service and Quality, stating that 2013 Outbacks "were not equipped with Denso low-pressure fuel pumps" (the "Campbell Declaration"). [Dkt. 80-2 ¶ 11].

In opposition, Plaintiffs first argue that the Court cannot consider the Campbell Declaration on a motion to dismiss. [Dkt. 93 at 34]. However, defendants may raise factual challenges to subject matter jurisdiction that allow courts to consider evidence outside the pleadings. *Gould Elecs. Inc.*, 220 F.3d at 176. Second, Plaintiffs point to complaints filed with the NHTSA concerning performance issues with 2013 Outbacks that appear to be consistent with symptoms of the Defect. [Dkt. 93 at 34]. This competing evidence creates an issue of fact which requires the Court to "permit the plaintiff to respond with rebuttal evidence in support of jurisdiction," and to pursue this evidence through discovery. *McCann*, 458 F.3d at 290. The Court will therefore deny Subaru's motion on this ground. Subaru may raise this issue again after Plaintiffs obtain additional information concerning 2013 Outbacks in discovery.

### b. Choice of Law for State Claims

Plaintiffs and Subaru dispute the state law applicable to Plaintiffs' nationwide claims. Subaru argues that the Court should conduct a choice-of-law analysis and apply the law of each Plaintiff's home state to his or her respective claims. [Dkt. 80-1 at 32-33]. Plaintiffs argue that a choice-of-law analysis is premature at this stage of the litigation and that the Court should apply the law of New Jersey—where Subaru is headquartered—to the present motion. [Dkt. 93 at 31–32].

"[C]ourts in this Circuit have sometimes determined that the choice of law analysis in a putative class action can be done at the motion to dismiss stage." *Amato v. Subaru of Am., Inc.*, No. CV 18-16118, 2019 WL 6607148, at *4 (D.N.J. Dec. 5, 2019) (quoting *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011)). "When performing a choice-of-law

analysis, the Court applies choice-of-law rules of the forum state, which is New Jersey in this case." *In re Subaru Battery Drain Prod. Liab. Litig.*, No. 1:20-CV-03095-JHR-JS, 2021 WL 1207791, at *9 (D.N.J. Mar. 31, 2021) (citing *Barbey v. Unisys Corp.*, 256 Fed. Appx. 532, 533 (3rd Cir. 2007)). Under New Jersey rules, the "choice of law analysis must be undertaken on an issue-by-issue basis." *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (citing *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007)). Thus, the Court will consider the facts alleged in the CAC and determine whether a choice-of-law analysis is appropriate on an issue-by-issue basis.

When considering choice-of-law questions, "New Jersey courts apply the two-pronged 'most significant relationship' test of the Restatement (Second) of Conflict of Laws." *Curtiss-Wright Corp. v. Rodney Hunt Co.*, 1 F. Supp. 3d 277, 283 (D.N.J. 2014) (citing *P.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008)). At step one of this two-part test, the Court must "determine whether an actual conflict exists" between the law of the states with an interest in the claim. *P.V.*, 962 A.2d at 460. "That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Id.* (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If that distinction would lead to a different outcome for the claim at issue, a conflict exists, and if the application of either state's law "results in the same outcome, no conflict exists." *McCarrell v. Hoffmann-La Roche, Inc.*, 153 A.3d 207, 216 (N.J. 2017). If no conflict exists, a court may "refer interchangeably to the laws of [relevant states] in discussing the law applicable to the case." *On Air Ent. Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000).

If a conflict exists, step two requires courts to "determine which jurisdiction has the 'most significant relationship' to the claim." *Curtiss-Wright Corp.*, 1 F. Supp. 3d at 283 (citing

*P.V.*, 962 A.2d 453).  The Second Restatement of Conflict of Laws sets forth factors to be applied in making this determination depending on the type of claim at issue, and the factors set forth in § 6 of the Second Restatement[12] guide all choice-of-law determinations.  *See P.V.*, 962 A.2d at 458.  The Court will apply New Jersey's two-part test on a claim-by-claim basis if necessary.

### c.  Magnuson Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("MMWA"): Express Warranty Claims (Count I)

Count I of the CAC alleges that Subaru violated the MMWA by breaching express warranties on Plaintiffs' vehicles.  The MMWA "provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation ... under a written warranty, [or] implied warranty.'" *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 600 (D.N.J. 2016) (quoting 15 U.S.C. § 2310(d)(1)).  "Magnuson–Moss claims based on breaches of express and implied warranties under state law depend upon those state law claims." *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 331 (D.N.J. 2014) (quoting *Cooper v. Samsung Electronics Am., Inc.*, 2008 WL 4513924, at

───────────────

[12] Section 6 of the Second Restatement provides

[T]he factors relevant to the choice of the applicable rule of law include

(a)    the needs of the interstate and international systems,
(b)    the relevant policies of the forum,
(c)    the relevant policies of other interested states and the relative interests of
          those states in the determination of the particular issue,
(d)    the protection of justified expectations,
(e)    the basic policies underlying the particular field of law,
(f)    certainty, predictability and uniformity of result, and
(g)    ease in the determination and application of the law to be applied.

*6 (D.N.J. Sept. 30, 2008)).  Thus, to evaluate Plaintiffs' MMWA claim, the Court must turn to

state warranty law.  *See Argabright*, 201 F. Supp. 3d at 600–01.

Subaru raises two challenges to Plaintiffs' MMWA claim.  First, Subaru argues that the

Court lacks subject-matter jurisdiction to hear Plaintiffs' MMWA claim.  [Dkt. 80-1 at 55–56].

Second, Subaru argues that Plaintiffs cannot establish necessary predicate violations of state

warranty law because the Limited Warranty does not cover the Defect; advertising statements

concerning "quality" are not warranties; Plaintiffs have not brought their cars for repair as the

Limited Warranty requires; and the Limited Warranty is not unconscionable.  The Court agrees

with Subaru that it lacks subject-matter jurisdiction and declines to consider Subaru's alternative

arguments for dismissal.

### i.  Subject-Matter Jurisdiction

Subaru argues that the Court lacks jurisdiction to hear Plaintiffs' MMWA claims because

Plaintiffs failed to at least name 100 plaintiffs as the MMWA requires.  [*Id.*].  The Court agrees

that it lacks jurisdiction over Plaintiffs' MMWA claims.

The MMWA vests jurisdiction "(A) in any court of competent jurisdiction in any State or

the District of Columbia; or (B) in an appropriate district court of the United States, subject to

paragraph (3) of this subsection."  15 U.S.C. § 2310(d)(1).  Paragraph (3) requires plaintiffs to

satisfy three elements: (A) the amount in controversy for each plaintiff exceeds $25; (B) the total

amount in controversy exceeds $50,000; and (C) "the number of named plaintiffs is at least 100."

*Id.* § 2310(d)(3).

There is no dispute that the CAC names fewer than 100 plaintiffs.  Subaru argues that

Plaintiffs therefore cannot meet element (3) and have failed to establish jurisdiction.  [Dkt. 80-1

at 55].  Plaintiffs argue that they need not meet element (3) or § 2310(d)(1)(B) at all.  They argue

that this Court is a court of "competent jurisdiction in any State" under § 2310(d)(1)(A) because

the Court has jurisdiction over all claims in this case under CAFA.  [Dkt. 93 at 56].  According

to Plaintiffs, the 100-plaintiff requirement applies only where plaintiffs must rely on §

2310(d)(1)(B) to establish jurisdiction, which is not the case here.  [*Id.*].

The parties' arguments "reflect[] a disagreement in this district as to whether courts may

exercise jurisdiction over MMWA claims where, as here, a complaint fails to name 100 plaintiffs

but where the court otherwise has jurisdiction to hear the case*." In re Subaru Battery Drain*

*Prod. Liab. Litig.*, 2021 WL 1207791, at *19; *compare, e.g.*, *Powell v. Subaru of Am., Inc.*, 502

F. Supp. 3d 856, 884–85 (D.N.J. 2020) (finding no jurisdiction under the MMWA) *with Payne v.*

*Fujifilm U.S.A., Inc.*, No. CIV.A. 07-385 (JAG), 2007 WL 4591281, at *6 (D.N.J. Dec. 28, 2007)

(finding jurisdiction under the MMWA).  This Court previously agreed with Judge Hillman's

opinion in *Powell*, which relies on *Floyd v. American Honda Motor Co., Inc.*, 966 F.3d 1027,

1035 (9th Cir. 2020) to find that jurisdiction does not exist under these circumstances.  *In re*

*Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *19 (discussing *Powell*, 502 F.

Supp. 3d at 884–85).  This Court previously observed that

> [i]n finding a lack of jurisdiction in *Powell*, Judge Hillman held
> that plaintiffs "may not use CAFA as a means to evade the explicit
> jurisdictional requirements of the MMWA."  Judge Hillman noted
> that finding jurisdiction despite a plaintiff's "failure to satisfy the
> plain-language requirement of at least one hundred named
> plaintiffs would have the effect of overriding a part of the
> MMWA" without Congress's authorization or intent.  Judge
> Hillman also interpreted the statute to find that 15 U.S.C. §
> 2310(d)(1)(A) applies only to cases brought in state courts.

*In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *19 (citations omitted).

The Court still agrees with Judge Hillman's analysis, and finds that it lacks jurisdiction over

Plaintiffs' MMWA claims.  The Court will grant Subaru's motion to dismiss Count I of the CAC.

### ii.  Predicate State Warranty Law Violations

Because the Court lacks subject-matter jurisdiction to hear Plaintiffs' MMWA claims, it need not consider Subaru's arguments concerning Plaintiffs' failure to allege viable claims under state warranty law.  The CAC alleges breach of implied warranty claims on a state-by-state basis independent of Plaintiffs' MMWA claim.  *See, e.g.* Counts VII, XI, XIII, and so on.  But the CAC does not allege a count for breach of express warranty based on the Limited Warranty apart from the MMWA claim.  Although Subaru substantively argues that Plaintiffs' state-law express warranty claims should be dismissed and Plaintiffs have substantively responded, it is ultimately unclear to the Court whether the CAC seeks recovery for common-law breach of express warranty apart from the MMWA.  The Court declines to rule on these substantive arguments and will grant Plaintiffs leave to amend their complaint if they wish to add common-law breach of express warranty claims apart from their MMWA claim.

### d.  Plaintiffs' Implied Warranty of Merchantability Claims

Counts VII (New Jersey), XI (Alabama), XIII (Arkansas), XVIII (California), XX (Connecticut), XXII (Florida), XXVI (Hawaii), XXVIII (Illinois), XXX (Maryland), XXXII (Massachusetts), XXXIV (Minnesota), XXXVII (Nevada), XXXIX (New York), XLI (North Carolina), XLIII (Oregon), XLV (Pennsylvania), XLVII (Rhode Island), XLIX (South Carolina), LI (Tennessee), LIII (Texas), LV (Vermont), LVIII (Washington) allege that Subaru breached implied warranties of merchantability by selling vehicles that were not merchantable or fit for their ordinary purposes.  Defendants raise several arguments to dismiss these claims.  First, Defendants argue that certain Plaintiffs' implied warranty claims must be dismissed because they

have failed to allege that the defect ever manifested in their vehicles.  Second, Defendants argue that some Plaintiffs fail to adequately allege that they provided pre-suit notice to Subaru as required under the laws of their respective states.  [Dkt. 80-1 at 50–51].  Third, Defendants argue that Plaintiffs fail to plead privity of contract between Subaru and certain Plaintiffs as required under the laws of their home states.  [Dkt. 80-1 at 51–54].

### i. Choice of Law

As demonstrated below, deciding Subaru's arguments will require the court to determine which state's law applies to Plaintiffs implied warranty claims due to conflicts with New Jersey law.  Where conflicts with New Jersey law exist, New Jersey's choice-of-law rules require the Court to "determine which jurisdiction has the 'most significant relationship to the claim.'" *Amato*, 2019 WL 6607148, at *12 (citing *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014)).  The factors set forth in §§ 188 and 191 of the Restatement (Second) of Conflict of Laws will determine which state has the "most significant relationship" Plaintiffs' warranty claims.

Section 188 applies where parties to a contract have "not made an effective choice of law" determination in the contract.  *Cont'l Ins. Co. v. Honeywell Int'l, Inc.*, 188 A.3d 297, 315 (N.J. 2018).  Section 188 instructs courts to consider the following contacts:

    (a)    The place of contracting,
    (b)    The place of negotiation of the contract,
    (c)    The place of performance,
    (d)    The location of the subject matter of the contract, and
    (e)    The domicil, residence, nationality, place of incorporation and place of business of the parties.

Section 191, which applies to "contracts to sell interests in chattel," "determines such questions as whether … there has been a breach of warranty, express or implied, by the seller." Unless the parties select the law governing their relationship, warranty claims are governed

21

> by the local law of the state where under the terms of the contract
> the seller is to deliver the chattel unless, with respect to the
> particular issue, some other state has a more significant
> relationship under the principles stated in § 6 to the transaction and
> the parties, in which event the local law of the other state will be
> applied.

Restatement (Second) Conflict of Laws § 191.  "When delivery occurs in the course of a face-to-face encounter between the buyer and seller, such as when the buyer purchases the chattel in the seller's store, the place of delivery is the place where the parties deal with each other."  *Id.* cmt. d.  "In probably the majority of instances, the place of delivery will be in the state where the seller is domiciled or does business."  *Id.*

Plaintiffs' state of purchase applies to their implied warranty claims.  Section 191 supports this conclusion because it is the state Plaintiffs' vehicles were "delivered." [13]  *See In re Dollar Gen. Corp. Motor Oil Mktg. & Sales Pracs. Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292, at *9 (W.D. Mo. Mar. 21, 2019) (applying law of the state of purchase and noting that "states have in protecting its consumers and regulating businesses who do business within their borders.").  Factors (a), (b), and (d) of § 188 favor the application the law of the state of purchase because that is presumably where Plaintiffs negotiated and executed their lease or purchase contracts and where their cars were located upon purchase.  *See Scott v. Jayco Inc.*, 443 F. Supp. 3d 1143, 1149 (E.D. Cal. 2020) (finding that warranties were "purchased" in the same place as the vehicle that was the subject of the sales agreement (citing *De Shazer v. Nat'l RV Holdings, Inc.*, 391 F. Supp. 2d 791, 794-795 (D. Az. 2005)))  Factor (c) is ambiguous as it is unclear from

---

[13] Comment e to Section 191 states that the state of delivery may not control where a "contract contemplates a continued relationship between the parties which will be centered in a state other than that where delivery took place."  To the extent that the CAC alleges a "continuing relationship" between Subaru and Plaintiffs, it does not allege that the parties understood that the relationship would be "centered" in one state instead of another.

Plaintiffs allegations where the parties should have "performed" their implied warranty obligations.  As a result, this factor "bear[s] little weight in the choice of the applicable law." § 188 cmt. e.  With respect to factor (e), the state of the parties' respective domiciles does not carry particular weight on its own, but "assumes greater importance when combined with other contacts."  The fact that Subaru and some Plaintiffs may be domiciled in states other than the state of purchase does not, by itself, outweigh the other factors identified above, which all center on the state of purchase. Thus, where a conflict exists, the Court will apply the law of the state of purchase to Plaintiffs' implied warranty claims.

### ii.  Manifestation of Defect

"Under an implied warranty of merchantability, a manufacture[r] warrants to deliver a product that is reasonably suitable for the ordinary uses it was manufactured to meet." *Green v. G.M.C.*, No. A-2831-01T-5, 2003 WL 21730592, at *6 (N.J. Super. Ct. App. Div. July 10, 2003). *See also Argabright*, 201 F. Supp. 3d at 598 ("An implied warranty of merchantability 'protect[s] buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose.'" (quoting *Crozier v. Johnson & Johnson Consumer Co.*, 901 F. Supp. 2d 494, 509 (D.N.J.2012))).  "In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation." *Green*, 2003 WL 21730592, at *6 (collecting cases).  "[T]o establish a breach of this warranty, a plaintiff must show … that the product at issue was defective.  A plaintiff can meet this burden by proving that the product 'functioned improperly in the absence of abnormal use and reasonable secondary causes.'" *Am. Atelier, Inc. v. Materials, Inc.*, 675 F. App'x 149, 152 (3d Cir. 2017) (quoting *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)).

Defendants argue that thirteen Plaintiffs' implied warranty claims must be dismissed because they do not allege that the Defect ever caused their vehicles to malfunction and, therefore, that their vehicles are not "suitable" for ordinary use.[14]  [Dkt. 80-1 at 48].  The Court agrees.  Courts in this district and elsewhere have dismissed claims for breach of implied warranty of merchantability where plaintiffs use their vehicles without the alleged defect "having manifested itself." *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-1814(JBS), 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (collecting cases); *Glass v. BMW of N. Am., LLC*, No. CIV.A. 10-5259 ES, 2011 WL 6887721, at *15 (D.N.J. Dec. 29, 2011) (quoting *Sheris v. Nissan N.A., Inc.*, No. 07–2516, 2008 WL 2354908 (D.N.J. June 3, 2008)).[15]  Because these Plaintiffs fail to plead facts showing that the Defect manifested in their vehicles and, therefore, that their vehicles are unfit for ordinary use, the Court will dismiss their implied warranty claims.[16]  *Green*, 2003 WL 21730592, at *6; *Fisher v. Harley-Davidson Motor Grp., LLC*, 2:19-CV-14154, 2019 WL 8014364, at *5 (S.D. Fla. Oct. 18, 2019) (dismissing implied warranty claim where plaintiff failed to "allege that a defect manifested during the warranty period.").

---

[14] Defendants' motion lists fifteen Plaintiffs whose vehicles never showed symptoms of the Defect: Rosenthal (Fla.), Efantis (Md.), Fontenot (Md.), Mutschler (N.J.), Ferguson (N.J.), Christensen (Or.), Biondo (R.I.), Christine King (Wis.), Kevin King (Wis.), Weeks (Conn.), Torresquintero (Conn.), Sweeton (Tenn.), Perry (N.C.), Schultz (S.C.), and Griffin (Ala.). However, the CAC does not allege breach of implied warranty claims on behalf of Plaintiffs Christine King or Kevin King because it does not allege breach of implied warranty under Wisconsin law.

[15] Neither party argues that New Jersey law conflicts with the law of other jurisdictions on this point.  The Court will therefore apply New Jersey law without moving to step-two of New Jersey's choice-of-law analysis.

[16] Plaintiffs argue and the CAC alleges that the Defect "manifests" as soon as gasoline contacts the impeller made of low-density materials.  [CAC ¶ 207; Dkt. 93 at 42].  The Court finds that this allegation does not save Plaintiffs' implied warranty claim because the ultimate question in an implied warranty claim is whether the product "functioned improperly."  *Am. Atelier, Inc.*, 675 F. App'x at 152 (citations and quotations omitted).

Subaru also argues that implied warranty claims cannot survive for the twelve[17] Plaintiffs who "have already received replacement fuel pump components pursuant to the recall." [Dkt. 80-1 at 48–49]. The Court rejects this argument because it relies on facts and materials outside of the CAC. The CAC does not allege that these individuals received the Recall Repair. Subaru instead cites to Michael Campbell's declaration which states that these twelve Plaintiffs received the Recall Repair according to Subaru's internal records. [Dkt. 80-2 ¶ 9]. Accurate or not, the Court cannot consider this information when deciding whether Plaintiffs fail to state a claim because Plaintiffs do not rely on Subaru's internal records in the CAC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). The Court denies Subaru's motion with respect to these twelve Plaintiffs.

Defendants next argue that Plaintiff Sroelov's (NV) implied warranty claim fails because his "vehicle's fuel pump [was] replaced free of charge under warranty." [Dkt. 80-1 at 49]. The Court agrees. The CAC alleges that Plaintiff Sroelov received a replacement fuel pump[18] and does not allege that he experienced symptoms of the Defect after doing so. [*See* CAC ¶¶ 153–57]. Thus, Plaintiff Sroelov fails to allege that his vehicle "manifest[s] a defect which renders [his vehicle] unfit for the ordinary purpose for which [it is] used." *Holmes v. Merck & Co.*, 2:04–cv–00608, 2008 WL 11348410, at *3 (D. Nev. June 16, 2008) (citing *Ackermann v. Wyeth Pharms.*, 471 F. Supp. 2d 739, 744–45 (E.D. Tex. 2006)); *In re Ford Motor Co. Ignition Switch*

---

[17] These twelve Plaintiffs are Adnan, Brown, Brockman, Kevin King, Lilley, Mein de Vera, Mutschler, Nelson, Plante, Schultz, Weeks, and Woo. [Dkt. 80-1 at 48–49].

[18] Elsewhere in the CAC, Plaintiffs allege that Subaru's proposed recall repair is inadequate because it only replaces the fuel pump's motor when Subaru should replace the entire fuel pump. [CAC ¶ 221]. Thus, according to the CAC, Sroelov received the preferred repair.

*Prod. Liab. Litig.*, 2001 WL 1266317, at *22; *Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250 FLW DEA, 2015 WL 3487756, at *13 (D.N.J. June 2, 2015) (finding that a plaintiff's ability to drive his vehicle after receiving a repair "casts substantial doubt on his claim that the car was unfit for its purpose of providing transportation.").  The Court will grant Subaru's motion as to Sroelov's implied warranty claim.

Subaru also argues that eighteen Plaintiffs'[19] claims must be dismissed because they "do not allege that a Subaru dealership ever confirmed the existence of any fuel pump malfunction in their vehicles."  [Dkt. 80-1 at 49].  Subaru does not cite any authority for the proposition that a Subaru dealer must confirm that Plaintiffs' car troubles—that are consistent with the Defect—actually result from the Defect in order to state an implied warranty claim.  Subaru also points out that these Plaintiffs "have driven their vehicles for thousands of miles and continue to drive their vehicles" despite having car troubles.  [Dkt. 80-1 at 49].  But the CAC does not identify the number of miles each of these Plaintiffs drove their vehicles before or after their vehicles malfunctioned, and the Court cannot draw inferences adverse to Plaintiffs at this stage.  *Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 269 (3d Cir. 2020), *cert. denied sub nom. Geness v. Pennsylvania*, 210 L. Ed. 2d 833 (May 24, 2021) ("At the motion to dismiss stage, 'we accept all well-pleaded allegations in the Complaint as true and draw all reasonable inferences in favor of the nonmoving part[y].'" (quoting *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 340, 342 (3d Cir. 2003))).  The Court will deny Subaru's motion as to these Plaintiffs.

---

[19] These Plaintiffs are Anderson, Adnan, Bancod-Hile, Cohen, Brockman, Brown, Gardener, Karrat, Kravchenko, Lilley, Mein de Vera, Micklo, Moore, Nelson, Oakley, Plante, Whitley, and Woo.

In sum, the Court will grant Subaru's motion to dismiss implied warranty claims on this issue for Plaintiffs Sroelov, Rosenthal, Efantis, Fontenot, Mutschler, Ferguson, Christensen, Biondo, Christine King, Kevin King, Weeks, Torresquintero, Sweeton, Perry, Schultz, and Griffin.  The Court denies Subaru's motion as to Plaintiffs Anderson, Adnan, Bancod-Hile, Cohen, Brockman, Brown, Gardener, Karrat, Kravchenko, Lilley, Mein de Vera, Micklo, Moore, Nelson, Oakley, Plante, Whitley, and Woo.

### iii.  Pre-Suit Notice

Subaru next argues that Plaintiffs from twelve states[20] fail to state a claim for breach of implied warranty because they did not provide pre-suit notice to Subaru of their implied warranty claims.  [Dkt. 80-1 at 50–51].  The Court granted Subaru's motion to dismiss the implied warranty claims for Plaintiffs from seven of these states in the previous section[21] and will therefore only consider Subaru's argument as it applies to Plaintiffs from the remaining five states.

Before addressing this argument, the Court must apply New Jersey's choice-of-law rules to determine which state's law applies to these Plaintiffs' implied warranty claims.  As noted above, step one of this analysis requires the Court to determine whether an actual conflict exists between New Jersey law and the laws other states.  *In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *10.  New Jersey law does not require plaintiffs to provide notice before suing a manufacturer for breach of implied warranty.  *See Powell*, 502 F. Supp. 3d at 881.

---

[20] The Plaintiffs and their home states are as follows: Whitley, Oakley, Griffin (Ala.); Arkansas Mein De Vera (Ark.); Torresquintero (Conn.); Kravchenko (Ill.); Fontenot, Enfantis (Md.); Weeks (Mass.); Micklo (Minn.); Sroelov (Nev.); Christensen (Or.); Biondo (R.I.); Schultz (S.C.); and Nelson (Tex.).

[21] Conn. (Torresquintero); Md. (Fontenot, Enfantis); Mass. (Weeks); Nev. (Sroelov); Or. (Christensen); R.I. (Biondo); and S.C. (Schultz).

However, Alabama, Arkansas, Illinois, Minnesota, and Texas require pre-suit notice.[22]  Thus, the

law of New Jersey conflicts with the laws of these five states on this issue.  *See Powell*, 502 F.

Supp. 3d at 881.

Step two of the choice-of-law analysis requires the Court to "'determine which

jurisdiction has the most significant relationship to the claim.'"  *Amato*, 2019 WL 6607148, at

\*12 (quoting *Skeen*, 2014 WL 283628, at \*12).  As noted above, the Court will apply the law of

the state of purchase to Plaintiffs' implied warranty claims.  Plaintiffs who reside in Alabama

(Griffin, Oakley, Whitley); Arkansas (Mein De Vera); Illinois (Kravchenko); Minnesota

(Micklo); and Texas (Nelson, Gardener) also purchased their vehicles in those states.  Thus, pre-

suit notice requirements apply to their implied warranty claims.

Plaintiffs argue that pre-suit notice is a fact issue to be resolved later in the litigation.

[Dkt. 93 at 51].  While the sufficiency of pre-suit notice is a fact issue, plaintiffs must still plead

---

[22] *Smith v. Apple, Inc.*, No. CIV.A.08-AR-1498-S, 2009 WL 3958096, at \*1 (N.D. Ala. Nov. 4, 2009) (noting that "[a]ffirmatively pleading notice is critical to the stating of a claim for breach of warranty under Alabama law" and that filing a complaint does not satisfy pre-suit notice requirements (citations omitted)); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1083 (E.D. Ark. 2013) ("'[T]he giving of reasonable notice is a condition precedent to recovery' under the Arkansas UCC and 'the giving of notice must be alleged in the complaint in order to state a cause of action.'" (quoting *Williams v. Mozark Fire Extinguisher Co.*, 888 S.W.2d 303, 305 (Ark. 1994))); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (Ill. 1996) ("[I]n general, buyers such as the instant plaintiffs must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." (citing 810 ILCS 5/1–201(26) (West 1994))); *accord Parrott v. Fam. Dollar, Inc.*, No. 17 C 222, 2019 WL 4573222, at \*2 (N.D. Ill. Sept. 20, 2019); *Kruger v. Lely N. Am., Inc.*, 518 F. Supp. 3d 1281, 1290 (D. Minn. 2021) ("Under Minnesota law, a buyer of goods must give the seller notice of a breach of warranty claim before suing the seller." (citing Minn. Stat. § 336.2-607(3)(a))); *accord Wheeler v. Subaru of Am., Inc.*, 451 F. Supp. 3d 1034, 1037–38 (D. Minn. 2020); *McKay v. Novartis Pharms. Corp.*, 934 F. Supp. 2d 898, 913 n.118, 915 (W.D. Tex. 2013), *aff'd sub nom. McKay v. Novartis Pharm. Corp.*, 751 F.3d 694 (5th Cir. 2014) ("[P]re-suit notice is also condition precedent to actions based on breach of implied warranty" and the notice must make a manufacturer "aware of a problem with a particular product purchased by a particular buyer." (citations and quotations omitted)).

facts permitting a plausible inference that they provided some form of pre-suit notice.  *See, e.g.*, *Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 806 (S.D. Tex. 2019) ("This pre-suit notice requirement is a condition precedent to the cause of action and must be pled and proven for the claim to succeed."); Smith, 2009 WL 3958096, at *1 ("Affirmatively pleading notice is critical to the stating of a claim for breach of warranty.").  The CAC does not allege that Plaintiffs provided any form of pre-suit notice whatsoever.

Plaintiffs also argue that they need not plead pre-suit notice because Defendants were placed on notice through "warranty claims, customer complaints, testing, NHTSA complaints, and repairs."  [Dkt. 93 at 51].  This argument fails.  Pre-suit notice requires Plaintiffs to "demonstrate more than simply general knowledge of an issue with the product line on the part of the defendant — instead, they must allege that the defendant had 'actual knowledge of the alleged breach of the particular products purchased by the named plaintiffs in this lawsuit.'" *Powell*, 502 F. Supp. 3d at 881 (discussing notice requirement under Illinois law); *accord McKay*, 934 F. Supp. 2d at 913 ("[T]he notice must have alerted Novartis to a particular buyer/end user, namely McKay, who was having problems with its products.").  Subaru's general knowledge of the Defect is irrelevant to whether each Plaintiff provided notice of the Defect in his or her vehicle.

Plaintiffs also argue that filing a complaint satisfies the pre-suit notice requirement at the pleading stage.  [*Id.* at 51–52].  Plaintiffs do not offer any authority from the states in question to support this argument, and relevant state law belies this argument.[23]

---

[23] *See Smith*, 2009 WL 3958096, at *1 (Alabama); *Jarrett*, 8 F. Supp. 3d at 1083 (Arkansas); *Connick*, 675 N.E.2d at 590 (Illinois); *Kruger*, 518 F. Supp. 3d at 1290 ("Under Minnesota law, a buyer of goods must give the seller notice of a breach of warranty claim before suing the seller."); *Fearrington*, 410 F. Supp. 3d at 806 (Texas).

Ultimately, the Court agrees with Subaru that the CAC does not allege that Plaintiffs from Alabama (Whitley, Oakley, Griffin); Arkansas (Mein De Vera); Illinois (Kravchenko); Minnesota (Micklo); and Texas (Nelson, Gardener) provided pre-suit notice to Subaru necessary to state an implied warranty claim.  The Court will grant Subaru's motion as to these Plaintiffs.

### iv.  Privity

Subaru next argues that Plaintiffs from Alabama, California, Connecticut, Florida, Illinois, New York, Nevada, Oregon, Rhode Island, Tennessee, Washington. and Wisconsin cannot state implied warranty claims because they fail to allege strict vertical privity with Subaru as the laws of these states require.  [Dkt. 80-1 at 51–52].  "Vertical privity means that Plaintiffs must have purchased the product directly from the manufacturer…." *Opheim v. Aktiengesellschaft*, No. CV2002483KMESK, 2021 WL 2621689, at *9 (D.N.J. June 25, 2021) (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)).  The Court has already determined above that Plaintiffs from Alabama, Connecticut, Illinois, Maryland, Massachusetts, Nevada, Oregon, Rhode Island and South Carolina fail to state implied warranty claims.  Thus, the Court will only consider this argument as it applies to Plaintiffs from California, Florida, New York, Tennessee, Washington, and Wisconsin.

Plaintiffs do not dispute that these states generally require vertical privity.[24]  Instead, Plaintiffs argue that they satisfy the privity requirement because the CAC alleges that Subaru had "direct dealings" with Plaintiffs "regarding the warranty and through the 'stickers placed on the

---

[24] *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *15 (D.N.J. May 8, 2017) (citations omitted) (California, Florida, New York, Washington); *Est. of Kriefall v. Sizzler USA Franchise, Inc.*, 801 N.W.2d 781, 816 (Wis. Ct. App. 2011), *aff'd*, 816 N.W.2d 853 (Wis. 2012) ("Wisconsin has always required privity of contract in an action for a breach of implied warranty.  Wisconsin still does." (citations and quotations omitted)); *Ford Motor Co. v. Taylor*, 446 S.W.2d 521, 526 (Tenn. App. 1969) (citing *Olney v. Beaman Bottling Co.*, 418 S.W.2d 430 (Tenn. 1967)).

vehicles' windows and its authorized dealerships, who were Subaru's agents." [Dkt. 93 at 52–53]. Supporting this agency argument, the CAC lists ways in which Subaru influences the operations of its dealerships. [CAC ¶¶ 319(i)–(xxiii)]. For example, the CAC claims that Subaru requires "[t]esting and certification of dealership personnel to ensure compliance with Manufacturer Subaru's policies and procedures;" [CAC ¶ 319(ix)(c)]; and "Manufacturer Subaru requires Subaru dealers to follow the rules and policies of Manufacturer Subaru in conducting all aspects of dealer business." [CAC ¶ 319(xii)].

The Court finds that it is premature to dismiss Plaintiffs' implied warranty for lack of privity before discovery on a possible agency relationship between Subaru and its dealerships. While courts have generally refused to find an agency relationship between car manufacturers and car dealerships, *see Zeno v. Ford Motor Co.*, 480 F. Supp. 2d 825, 844–45 (W.D. Pa. 2007) (collecting cases), "determining an agency relationship is a fact-specific exercise examining, among other things, the degree of control exerted by the principal, the effect of a 'no-agency' clause, and the factual circumstances underlying the claim at issue in the case." *Id.* at 846; *see also In re AZEK Bldg. Prod., Inc., Mktg. & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015) ("The fact-intensive nature of privity frequently renders dismissal at the pleading stage premature."); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV. A. 03-4558, 2010 WL 2813788, at *16 (D.N.J. July 9, 2010), *amended*, No. CIV.A. 03-4558 GEB, 2011 WL 601279 (D.N.J. Feb. 16, 2011) ("Although a plaintiff seeking to show such an agency relationship faces an 'uphill battle,' the inquiry is fact-specific and no per se rule bars such a finding on an appropriate factual basis."). Because this inquiry is fact-specific, and because Plaintiffs have alleged a list of facts suggesting an agency relationship, "a summary dismissal of Plaintiffs' claims at this stage would be improper." *In re Rust-Oleum Restore Mktg., Sales*

*Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016) (collecting cases).  The Court will therefore deny Subaru's motion to dismiss Plaintiffs' implied warranty claims for Plaintiffs whose claims are governed by California, Florida, New York, Tennessee, Washington, and Wisconsin law.

### e.   Common-Law Fraud and Consumer Protection Statutes

The CAC alleges common-law "fraudulent concealment/omission" (Count II) and violations of state consumer protection statutes based on fraudulent concealment or omission (Counts VI, X, XII, XIV, XV, XVI, XIX, XXI, XXIV, XXV, XXVII, XXIX, XXXI, XXXIII, XXXVI, XXXVII, XXXVIII, XL, XLII, XLIV, XLVIII, L, LII, LIV, LVII, and LIX).  Subaru raises defenses common to Plaintiffs' common-law and statutory fraud claims, some of which result from state-specific differences in the elements of fraudulent omission or variations on how to satisfy these elements.  Subaru also raises defenses specific to certain states' statutory fraud claims.  The Court will address each of these arguments in turn.

"Though the precise contours of common-law omissions and representations fraud claims vary from state to state, the cause of action generally requires: (1) omissions or misrepresentations of fact; (2) in the case of omissions, a duty to disclose; (3) intent to mislead; (4) materiality; (5) justifiable reliance; and (6) damages proximately caused by that reliance. *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 184 (D.N.J. 2013) (collecting cases).

### i.   Choice of Law

When determining which state's law applies to which Plaintiffs' common-law and statutory claims, the Court must follow New Jersey's two-step choice-of-law procedure as discussed above.  If a conflict exists between New Jersey law and the law of another state at step two of this analysis, the Court will apply Section 148 of the Second Restatement of Conflict of

Laws, which applies to fraud and misrepresentation, to determine which state has the most significant relationship to the claim.  Section 148 states that

(1)  When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2)  When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

(a)   the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b)   the place where the plaintiff received the representations,

(c)   the place where the defendant made the representations,

(d)   the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e)   the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f)   the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Whether § 148(1) or § 148(2) applies to Plaintiffs' fraud claims against Subaru hinges on whether Plaintiffs acted in reliance on the alleged fraudulent omissions in the same state where the omissions were made and "received."  Plaintiffs acted in reliance on the alleged fraud in the states where they purchased their vehicles.

Where the omissions were "made" is a more difficult question but, on balance, the Court finds that the CAC alleges that Subaru "made" the alleged omissions in New Jersey, where Subaru has its principal place of business.  [CAC ¶ 170].  The CAC includes allegations that

suggest a broad failure to publicly disclose information concerning the Defect that did not occur in the states of purchase.  For example, the CAC claims that Subaru's website does not mention the Defect.  [*E.g.* CAC ¶ 293].  Although the CAC alleges facts suggesting that Subaru failed to disclose the Defect in the states where Plaintiffs purchased their vehicles,[25] the CAC also alleges that Subaru "has the ability to control authorized Subaru dealers, and Subaru acts as the principal in that relationship…."  [CAC ¶ 319].  Similarly, the CAC alleges Plaintiffs reviewed their vehicles' Monroney stickers before purchasing their vehicles and that the Monroney stickers did not disclose the Defect.  [*E.g.* CAC ¶ 27].  These allegations do not state that individual dealerships decided whether to disclose the Defect on the Monroney stickers or that they had the discretion to do so outside of Subaru's control.  Thus, the Court finds that the omissions as alleged in the CAC originated at Subaru's headquarters in New Jersey.  *See Maniscalco*, 709 F.3d at 207–08 (finding that omissions originated in state of defendant's headquarters, even where Plaintiffs received and relied on them in the state of purchase).  As a result, except for Plaintiffs who purchased their vehicles in New Jersey, Plaintiffs did not "act in reliance" on Subaru's omissions in the same state where the omissions were "made."  Section 148(2) therefore applies.

For most Plaintiffs—those who purchased their vehicles in the state where they reside— the § 148(2) factors weigh in favor of applying the law of Plaintiffs' home states.  Under these circumstances, factors (a) and (e) weigh in favor of applying Plaintiffs' home state law because this is the state where Plaintiffs' vehicles were presumably located upon purchase and where Plaintiffs acted in reliance on the fraud.  *See Maniscalco*, 709 F.3d at 208–09 (noting that "the

---

[25] For example, the CAC alleges that Subaru "through its authorized dealers, has had the opportunity to disclose all material facts relating to the Defective Vehicles."  [CAC ¶ 174].

overwhelming majority of courts" apply the law of the state where a plaintiff relied on the fraud (collecting cases)). Factor (d) also weighs in favor of applying the law of Plaintiffs' home states because Plaintiffs' fraud claims allege pecuniary loss. *See id.* at 208 ("[I]n cases of pecuniary loss … "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant' because 'financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." (quoting Restatement (Second) Conflict of Laws § 148 cmt. i)). Although the omissions may have originated in New Jersey, factor (c) does not outweigh these other interests. *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 449 (D.N.J. 2012).

The issue is less clear, however, with respect to the few Plaintiffs who purchased vehicles in states other than the states where they reside. Factors (a) and (e) would weigh in favor of applying the law of the state of purchase because this is the state where Plaintiffs relied on Subaru's deception and, presumably, where Plaintiffs' vehicles were located at the time of purchase. Under comment j to § 148, it appears that these factors would control and require application of the law of the state of purchase: ""[I]f any two of the [factors in § 148(2)], apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues…." But, as noted above, a plaintiff's state of residence is given some weight in the case of pecuniary injury. At the same time, "the place of loss does not play so important a role in the determination of the law governing actions for fraud." § 148 cmt. c. Following comment j, the Court finds that factors (a) and (e) dictate that the law of the state of purchase will apply to Plaintiffs' fraud claims where a conflict exists with New Jersey law and where Plaintiffs reside in one state but purchased their vehicles in another. *See In re Grand Theft Auto Video Game*

*Consumer Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) ("Because the fraud at issue in this case occurred in the state of purchase … the interest analysis favors the application of the consumer-fraud law of the state wherein each Settlement Class member purchased his copy of GTA:SA." (citations omitted)); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 278 (D. Mass. 2004) ("States have a strong interest in protecting consumers with respect to sales within their borders, … but they have a relatively weak interest, if any, in applying their policies to consumers or sales in neighboring states.") (citations omitted).

### ii. Standard of Review

When assessing Plaintiffs' common-law fraud claims, the Court must apply Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  Rule 9(b) requires plaintiffs to plead circumstances surround fraud "with particularity."  Fed. R. Civ. P. 9(b).  Typically, this requires plaintiffs to "support their allegations of fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is the 'who, what, when, where and how' of the events at issue.'"  *Fin. Tr. Co. v. Citibank, N.A.*, 351 F. Supp. 2d 329, 331 (D.V.I. 2004) (quoting *In re Rockefeller Ctr. Props., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002)).  However, a relaxed standard applies to fraudulent omission claims, whereby "a plaintiff must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud."  *Johansson v. Central Garden & Pet Co.*, 804 F. Supp. 2d 257, 263 (D.N.J. 2011) (citations and quotations omitted); *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997); *Adler v. Berg Harmon Assoc.*, 816 F. Supp. 919, 924 (S.D.N.Y. 1993).

Subaru makes a blanket assertion, supported by a single citation to a Third Circuit case, that Rule 9(b) also applies to Plaintiffs' claims under all state consumer protection statutes. [Dkt. 80-1 at 32 (citing *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994))]. This is incorrect. *See, e.g.*, *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."); *Bruce v. Home Depot, U.S.A., Inc.*, 308 F. Supp. 2d 72, 77 (D. Conn. 2004) ("[A] plaintiff does not need to meet the heightened pleading requirements of Rule 9(b) [] when asserting a state CUTPA claim in federal court." (citing *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 167 (D. Conn. 2002))). The Court need assess Rule 9(b)'s applicability state by state because, where Plaintiffs' common-law and statutory claims fail for the reasons discussed below, it is not for lack of specificity under 9(b).

### iii.   Common Defenses

#### 1.   No Affirmative Misrepresentation

Subaru acknowledges that Plaintiffs expressly allege "fraudulent concealment/omission" in the CAC but point out that Plaintiffs secondarily allege that Subaru "affirmatively misrepresented" facts to Plaintiffs. [Dkt. 80-1 at 56]. According to Subaru, the only affirmative representations identified in the CAC are Subaru advertisements and sales brochures generally promoting the "safety," "dependability," and "reliability" of Subaru vehicles. [Dkt. 80-1 at 56]. Subaru argues that these representations cannot provide the basis for a fraud claim because they are mere puffery. [*Id.* at 56–57].

The Court agrees that these general representations are non-actionable puffery[26] because they "represent[] the type of exaggerated statement regularly made by companies, which [are] unverifiable." *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 350 (D.N.J. 2019); *see also Tatum v. Chrysler Grp. LLC.*, No. 10-CV-4269 DMC JAD, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (noting that statements concerning "reliability and durability … may be based on multiple factors, not just one element of the car…."); *Resnick v. Hyundai Motor Am., Inc.*, No. CV1600593BROPJWX, 2016 WL 9455016, at *9 (C.D. Cal. Nov. 14, 2016) (finding that representations that a car's paint was "state-of-the-art" and would "stand the test of time" were puffery). Because these general representations did not make "specific claims" as to the fuel pump, Subaru's "general advertising was puffery as that is understood in the law. *Tatum*, 2011 WL 1253847, at *4 (collecting cases). "'Advertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery.'" *Ponzio*, 447 F. Supp. 3d at 234 (quoting *In re Toshiba Am. HD DVD Mktg. and Sales Practices Lit.*, 2009 WL 2940081, at *10 (D.N.J. 2009)); *see also Argabright*, 201 F. Supp. 3d at 608–09 (dismissing statutory and common-law fraud claims based on similar representations concerning quality). Thus, to the extent that Plaintiffs' fraud claims are based on affirmative misrepresentations, Plaintiffs fail to state a claim.

---

[26] Plaintiffs selectively quote *Newborn Brothers Co. v. Albion Engineering Co.*, 481 F. Supp. 3d 312 (D.N.J. 2020) to argue that "statements concerning the safety of a product can never be considered puffery." [Dkt. 93 at 57]. However, Plaintiffs deliberately omit from their quotation—using ellipses—the language in bold below: "false claims that explicitly or implicitly address product attributes of importance to customers **and make statements that are measurable by comparative research** are not puffery." *Newborn Bros. Co.*, 481 F. Supp. 3d 345 (quoting *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 464 (D.N.J. 2009)). There is no way to measure or verify Subaru's nebulous claim that its vehicles are "safe" or "reliable."

## 2.   Causation and/or Reliance

Subaru next argues that Plaintiffs fail to plead the elements of reliance and/or causation required for their statutory and common-law fraud claims.  [Dkt. 80-1 at 57].  The Court disagrees.  Plaintiffs allege that they would not have purchased or paid as much for their vehicles if Subaru disclosed that its fuel pumps were defective [*e.g.* CAC ¶¶ 311, 374], and that they have suffered economic losses as a result.  [*E.g.* CAC ¶ 312].  Courts in this district and elsewhere have found that analogous pleadings are sufficient to survive a motion to dismiss.  *See, e.g.*, *Robinson v. Gen. Motors LLC*, No. CV 20-663-RGA-SRF, 2021 WL 3036353, at *5 (D. Del. July 19, 2021) (finding pleading requirements for causation and reliance satisfied based on similar factual allegations); *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2017 WL 2406711, at *5 (S.D. Fla. June 1, 2017) (denying motion to dismiss common-law fraud claims); *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) (denying motion to dismiss California common-law fraud claim where "Plaintiffs [pled] that they justifiably relied on the omission by paying full price for the BMWs when they would not have if BMW had disclosed the defect. The resulting damages are the cost of repairs." (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007))); *Henderson v. Volvo Cars of N. Am., LLC*, No. CIV. 09-4146 (DMC), 2010 WL 2925913, at *5–*6 (D.N.J. July 21, 2010) (citations omitted); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527–28 (D.N.J. 2008).  Thus, the Court finds that Plaintiffs have adequately alleged the causation and reliance elements of their common-law and statutory claims.

## 3.   Subaru's Pre-Sale Knowledge of the Defect

Subaru next argues that Plaintiffs' fraud claims fail because Plaintiffs have not adequately alleged that Subaru knew of the Defect.  [Dkt. 80-1 at 59–60].  Subaru argues that the

consumer complaints filed with the NHTSA that are quoted in the CAC postdate Plaintiffs'

purchase of their Subaru vehicles, do not mention the fuel pump specifically, and do not pertain

to the specific years and models of Plaintiffs' Subaru vehicles. [Dkt. 80-1 at 61–62]. Subaru

also argues that the 2020 Recall Report does not provide evidence that Subaru knew of the

Defect as of July 2019 as the CAC alleges. [*Id.*].

The Court finds that the CAC adequately pleads pre-sale knowledge of the Defect. The

NHTSA complaints cited in the CAC refer to the same types of engine performance issues that

triggered Subaru's investigation and culminated in the 2020 Subaru Recall, as the Recall Report

itself indicates. [CAC Ex. C]. The CAC also alleges that Subaru monitors NHTSA complaints.

[CAC ¶ 289]. While the Subaru Recall Report states that Subaru only discovered between

January 2020 and March 2020 that performance issues resulted from a damaged fuel pump

impeller, this disclosure does not prove when Subaru knew of the Defect. *See In re Subaru*

*Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *24 (finding that an automobile

manufacturer's publication of technical support bulletins concerning performance issues

permitted a plausible inference that the manufacturer knew of the performance issues before the

date of publication); *Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP MANX, 2013 WL

5575065, at *6 (C.D. Cal. Oct. 10, 2013) (same). Discovery is the appropriate mechanism for

determining precisely when Subaru's awareness of engine performance issues in certain vehicles

transformed into actual knowledge of the specific fuel pump defect alleged in the Complaint.

Discovery may demonstrate that certain Plaintiffs purchased their vehicles before Subaru knew

of the Defect and therefore cannot recover under statutory or common-law fraud theories. But it

is premature to dismiss Plaintiffs' claims for lack of knowledge at this juncture.

### 4.   Common-Law Fraud, Duty to Disclose

To state a fraudulent omission claim, plaintiffs generally must establish that the defendant had a duty to disclose the omitted information.  *Clark*, 289 F.R.D. at 184.  Subaru argues that Plaintiffs' common-law fraudulent omission claims fail under the laws of all states because Subaru did not have a duty to disclose information concerning the Defect.  [Dkt. 80-1 at 67].  The subsections below analyze the law concerning duty-to-disclose in fraudulent omission claims state by state.  But the Court will first summarize and dispose of several of the parties' arguments on this issue.

Subaru argues that most states refuse to find a duty to disclose for fraudulent omission claims absent a fiduciary relationship between the parties, and that Plaintiffs have failed to allege a fiduciary relationship between Plaintiffs and Subaru that created a duty to disclose.  [Dkt. 80-1 at 67].  Subaru also recognizes that some states impose a duty to disclose where a defendant had "unique knowledge of 'essential' or 'material' facts," but argues that the CAC has not adequately pled this "unique knowledge" requirement.  [Dkt. 80-1 at 69–70].  With respect to this latter argument, the Court has already found that Plaintiffs are entitled to discovery on the issue of Subaru's knowledge of the Defect.  Thus, where "unique knowledge" imposes a disclosure duty without qualification, the Court will reject Subaru's argument and find that a duty to disclose exists.

Plaintiffs raise several rebuttal arguments.  First, they argue that New Jersey law applies to all Plaintiffs' claims and that New Jersey law imposes a duty to disclose where "there is a safety concern, a fiduciary relationship, or where an omission is contrary to a representation actually made by the defendant."  [Dkt. 93 at 62].  Plaintiffs argue that they have adequately pled a duty to disclose under this standard because the Defect raises safety concerns.  [*Id.*].  The Court

rejects this position.  As explained above, the Court will conduct a choice-of-law analysis to determine which state's law applies to which Plaintiffs' common-law fraud claims.  Even where New Jersey law applies, New Jersey does not recognize a duty to disclose "safety concerns."[27]

Second, Plaintiffs argue that, even if home-state law applies, many states impose a duty to "make corrective disclosures of half-truths."  [Dkt. 93 at 63].  Even where such a duty exists, it does not apply here.  Plaintiffs have not identified specific half-true statements that require correction, and the only affirmative statements from Subaru identified in the CAC are non-actionable puffery, as discussed above.

Third, Plaintiffs argue that some states impose a duty to disclose safety issues.  [Dkt. 93 at 63].  The Court will address this claim on a state-by-state basis below.

### a.  New Jersey

In New Jersey

> courts will not imply a duty to disclose in a case alleging fraudulent concealment…  The duty to disclose arises in the following three types of relationships:
>
> > (1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee;
> >
> > (2) relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and
> >
> > (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties.

---

[27] The case upon which Plaintiffs rely for this argument cites exclusively to California law.  *See In re Philips/Magnavox Television Litig.*, 2010 WL 3522787, *7 (D.N.J. 2010) (quoting *Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 969 (N.D. Cal. 2008)).  The Court's research did not identify other cases courts imposed a categorical duty to disclose "safety concerns" under New Jersey law, and the Court declines to adopt such a rule here.

*Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305 (D.N.J. 2009) (citations and quotations omitted). New Jersey courts have found that no fiduciary relationship establishing a duty to disclose exists in arms-length transactions such as the relationship between Plaintiffs and Subaru here. *See In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *25 (collecting cases). The Court will therefore grant Subaru's motion to dismiss under New Jersey law.

### b. Alabama

Under Alabama law, "[m]ere silence is not fraudulent in the absence of a duty to disclose. A duty to disclose may arise from the particular circumstances of the case, from a confidential relationship, or from a request for information." *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1293 (Ala. 1993) (citing *Hardy v. Blue Cross & Blue Shield of Ala.,* 585 So.2d 29, 32 (Ala. 1991)); *see also Mason v. Chrysler Corp.*, 653 So. 2d 951, 955 (Ala. 1995) (finding no duty to disclose where the plaintiffs' "contacts with Chrysler Corporation consisted primarily of their viewing national advertisements before they purchased the vehicle."). Because Plaintiffs do not allege that a "confidential" relationship existed between Plaintiffs and Subaru, the Court will grant Subaru's motion on this issue.

### c. Arkansas

Under Arkansas law, omissions are not actionable unless an "established" or "fiduciary" relationship exists between the parties that gives rise to a duty to disclose. *White v. Volkswagen Grp. of Am., Inc.*, No. 2:11-CV-02243, 2013 WL 685298, at *9 (W.D. Ark. Feb. 25, 2013); *Perez v. Volkswagen Grp. of Am., Inc.*, No. 2:12-CV-02289, 2013 WL 1661434, at *10 (W.D. Ark. Apr. 17, 2013); *Day v. Tri-State Delta Chemicals, Inc.*, 165 F. Supp. 2d 830, 835 (E.D. Ark. 2001) (finding no duty to disclose in an arms-length commercial transaction). Because Plaintiffs

43

have not alleged a relationship giving rise to a duty to disclose, the Court will grant Subaru's motion on this issue.

### d.  California

California courts require a duty to disclose defects that pose an unreasonable risk of physical injury.  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1330 (C.D. Cal. 2013); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007) (citations omitted).[28]  Plaintiffs have alleged that the Defect can cause Subaru's engines to malfunction while in use, which permits a plausible inference that the Defect causes an unreasonable risk of harm.  [*E.g.* CAC ¶ 257].  The Court will therefore deny Subaru's motion on this issue.

### e.  Connecticut

"[A]lthough 'mere nondisclosure does not [usually] amount to fraud.... [n]ondisclosure may ... amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak.'"  *Est. of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 194 (D. Conn. 2007) (quoting *Dockter v. Slowik*, 881 A.2d 479 (Conn. Ct. App. 2005)).  Such a duty may arise in the context of a fiduciary relationship.  *See id.* at 194 (citing *Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP*, 874 A.2d 266 (Conn. Ct. App. 2005)).  Because Plaintiffs have failed to allege a fiduciary relationship or other "circumstances" giving rise to a duty to speak, the Court will grant Subaru's motion on this issue.

### f.  Florida

Under Florida law, fraud claims require reliance on an affirmative misrepresentation or "a fiduciary relationship that would create a duty to disclose. In a commercial transaction in

---

[28] Because New Jersey law does not impose a duty to disclose defects that pose a risk of harm, a conflict exists.  California law applies because Plaintiffs Adnan, Woo, and Bancod-Hile reside and purchased their vehicles in California.

which the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 538–39 (Fla. Dist. Ct. App. 2018) (citations and quotations omitted). Plaintiffs have not alleged that a fiduciary relationship that created a duty to disclose. The Court will therefore grant Subaru's motion on this issue.

### g.  Georgia

Under Georgia law, "[s]uppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ga. Code Ann. § 23-2-53. Plaintiffs here have not identified a "special relationship" with Subaru or other facts that give rise to a duty to disclose. *See McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 (N.D. Ga. 2015) (finding that automobile manufacturer had no duty to disclose defect to consumer). The Court will therefore grant Subaru's motion to dismiss Plaintiffs' common-law fraud claims under Georgia law.

### h.  Hawaii

"Under Hawai'i law, liability for fraudulent nondisclosure is governed by the Restatement (Second) of Torts § 551." *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010) (citing *Elliot Megdal & Assocs. v. Hawaii Planing Mill, Ltd.*, 814 F. Supp. 898, 904 (D. Haw. 1993). Section 551 requires a duty of disclosure before liability for nondisclosure can attach, and lists five circumstances where a duty to disclose can attach for parties "to a business transaction." Restatement (Second) of Torts § 551(2). The fifth requires a party to disclose facts "basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or

other objective circumstances, would reasonably expect a disclosure of those facts." *Id.* §
551(2)(e).  Hawaii law therefore conflicts with New Jersey law on this issue, but Hawaii law
applies to Plaintiff Anderson's fraud claim because he resides and purchased his vehicle in
Hawaii.  [CAC ¶ 148].

Plaintiff have alleged that Subaru knew of the Defect and knew that consumers did not
know of the Defect.  [*E.g.* CAC ¶ 367].  The CAC also plausibly alleges that a properly
functioning engine was "basic" to the transaction because Plaintiffs claim they would not have
purchased or paid as much for their vehicles had they known of the Defect.  [CAC ¶ 311].  The
Court therefore finds that Plaintiffs have alleged facts creating a duty to disclose, and the Court
will deny Subaru's motion on this issue.

### i.  Illinois

Fraudulent omission claims under Illinois law require a duty to disclose, which "arises if
'plaintiff and defendant are in a fiduciary or confidential relationship' or in a 'situation where
plaintiff places trust and confidence in defendant, thereby placing defendant in a position of
influence and superiority over plaintiff.'"  *Flynn v. FCA US LLC*, 327 F.R.D. 206, 218 (S.D. Ill.
2018) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012)).  The CAC
does not plead any facts suggesting a fiduciary relationship or a relationship of "trust and
confidence" between Plaintiffs and Subaru, so the Court will grant Subaru's motion on this issue.

### j.  Maryland

Under Maryland law, "a duty to speak arises when one party is in a fiduciary or
confidential relationship with the other, or when one party makes a partial and fragmentary
statement of fact."  *Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F. Supp. 2d
424, 431 (D. Md. 2000) (citations and quotations omitted).  The CAC does not allege facts

showing a "fiduciary or confidential relationship."  As noted above, the only affirmative

statements attributable to Subaru are puffery.  *See Singh v. Lenovo (United States) Inc.*, 510 F.

Supp. 3d 310, 330 (D. Md. 2021) (finding that "vague and general" statements do not give rise to

duty to disclose).  Plaintiffs have therefore failed to plead facts showing that Subaru had a duty

to disclose information concerning the Defect.  The Court will grant Subaru's motion on this

issue.

### k.  Massachusetts

Under Massachusetts common law, "'[t]o show fraud by omission, the plaintiff must

allege 'both concealment of material information and a duty requiring disclosure.'"  *Costa v.*

*FCA US LLC*, 542 F. Supp. 3d 83, 101 (D. Mass. 2021) (quoting *Buffalo-Water 1, LLC v.*

*Fidelity Real Estate Co.*, 111 N.E.3d 266, 277 (Mass. 2018)).  Plaintiffs here do neither.

Plaintiffs do not plead any facts to support their conclusory allegation that Subaru "concealed"

information.  [*E.g.* ¶ 306]; *see also Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176

(E.D. Cal. 2013) ("Mere nondisclosure does not constitute active concealment." (citations

omitted)).  Plaintiffs also do not plead facts showing that Subaru had a duty to disclose.  *See*

*Costa*, 542 F. Supp. 3d at 102 (finding that manufacturer had no duty to disclose alleged safety

defect in automobile despite allegations against manufacturer analogous to those against Subaru).

The Court will grant Subaru's motion on this issue.

### l.  Minnesota

Under Minnesota common law, omission-based fraud claims require a duty to disclose,

but a duty to disclose arises where "a party has special knowledge of material facts to which the

other party does not have access."  *Cleveland v. Whirlpool Corp.*, -- F. Supp. 3d --, No. 20-CV-

1906 (WMW/KMM), 2021 WL 3173702, at *8 (D. Minn. July 27, 2021) (citations omitted);

*Sadeghi-A v. Daimler Trucks N. Am. LLC*, No. 19-CV-2373 (MJD/ECW), 2021 WL 856919, at

*12 (D. Minn. Mar. 8, 2021) (citations and quotations omitted).[29]   As this statement of the law

makes clear, Minnesota courts consider whether plaintiffs had "access" to facts.   Here, Plaintiffs

point to NHTSA complaints as evidence of Subaru's knowledge of the Defect.   [CAC ¶¶ 242–

86].   These complaints are publicly available.   But the CAC also alleges several non-public

sources of knowledge, including "warranty claims; non-warranty repair records; testing [Subaru]

claims to undertake in the development of new models; and customer complaints to Subaru and

its dealers."   [CAC ¶ 287].   Thus, the CAC alleges that Subaru had access to information that

consumers did not when purchasing or leasing their Subaru vehicles which gave rise to a duty to

disclose.   The Court will therefore deny Subaru's motion on this issue.

### m.  Nevada

Under Nevada law, "a straightforward vendor-vendee relationship … as a matter of law,

creates no fraud-based duty to disclose."   *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406,

1417 (D. Nev. 1995) (citations and quotations omitted).   The CAC alleges that, at most, a

vendor-vendee relationship existed between Subaru and Plaintiffs, which does not create a duty

to disclose.   The Court will therefore grant Subaru's motion on this issue.

### n.  New York

Under New York law,

> [a] concealment of facts supports a cause of action only if the non-
> disclosing party has a duty to disclose. Such a duty ordinarily
> arises where the parties are in a fiduciary or other relationship
> signifying a heightened level of trust. Absent a fiduciary
> relationship, "a duty to disclose may arise if: (1) one party makes a

---

[29] Because New Jersey does not impose a duty to disclose where the parties have unequal access to information, a conflict exists between New Jersey law and Minnesota law.  Plaintiff Micklo resides and purchased his vehicle in Minnesota, so Minnesota law governs his common-law fraud claim.

> partial or ambiguous statement that requires additional disclosure
> to avoid misleading the other party; or (2) one party possesses
> superior knowledge, not readily available to the other, and knows
> that the other is acting on the basis of mistaken knowledge," but
> only "when it becomes apparent to the non-disclosing party that
> another party is operating under a mistaken perception of material
> fact."

*Trahan v. Lazar*, 457 F. Supp. 3d 323, 353 (S.D.N.Y. 2020) (quoting *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995)).  "Although normally this duty to disclose [due to superior knowledge] arises in the context of direct business transactions, courts have also imposed this duty on a manufacturer who has exclusive knowledge of a product defect or danger."  *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 125 (E.D.N.Y. 2011) (collecting cases).

Because a duty to disclose can arise where one party has superior knowledge, New York law conflicts with New Jersey law on this issue.  Plaintiff Plante resides in and purchased her vehicle in New York [CAC ¶ 45] so New York law applies to her claim.  Plaintiff Karrat resides in Connecticut but purchased his vehicle in New York.  Consistent with the Court's analysis above, the Court finds that New York law applies to his common-law fraud claim.  [CAC ¶ 158].  Plaintiff Moore resides in New York but purchased his vehicle in Vermont.  Vermont law therefore applies to Plaintiff Moore's common-law fraud claim.  [CAC ¶ 41].

Plaintiffs have plausibly alleged that Subaru had superior knowledge of the Defect and, therefore, that Subaru had a duty to disclose.  The Court will therefore Deny Subaru's motion on this issue as it applies to Plaintiffs whose fraud claims are governed by New York law.

### o.  North Carolina

"[W]here no fiduciary relationship exists … a duty to disclose may arise when[] 'one party has knowledge of a latent defect in the subject matter of the negotiations about which the

other party is both ignorant and unable to discover through reasonable diligence.'"[30] *Packrite,*

*LLC v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 WL 7060395, at *3 (M.D.N.C.

Dec. 2, 2020) (quoting *Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009)).

The CAC alleges that Subaru had unique knowledge of the Defect, inaccessible to Plaintiffs and

failed to disclose this information when Plaintiffs purchased their vehicles through Subaru's

agent dealerships.  These facts are sufficient at this juncture to show that Subaru owed a duty to

disclose.  The Court will therefore deny Subaru's motion on this issue.

### p.  Oregon

Under Oregon law

> A duty to speak or disclose exists when there is a special
> relationship between a plaintiff and a defendant.  *Gardner v. First
> Escrow Corp.*, 696 P.2d 1172 (Or. Ct. App. 1985).  When a special
> relationship exists, the defendant has a duty to disclose to the
> plaintiff all material matters of which the defendant had
> knowledge.  *See Gebrayel v. Transamerica Title Ins. Co.*, 888 P.2d
> 83 (Or. Ct. App. 1995).  A special relationship exists when the
> plaintiff has authorized the defendant to exercise independent
> judgment on the plaintiff's behalf and the defendant has accepted
> this responsibility.  *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785
> (Or. 2001).  A special relationship does not exist if the parties were
> merely in an "arm's-length" commercial or business relationship
> where they were acting in their own economic interest. *See
> Conway v. Pacific Univ.*, 924 P.2d 818 (Or. 1996); *see also Moore
> Excavating, Inc. v. Consol. Supply Co.*, 63 P.3d 592 (Or. 2003).

*Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1143 (D. Or. 2020).  Because the CAC only

alleges an arms-length commercial relationship, at most, the CAC does not plead facts giving

rise to a duty to disclose under Oregon law.  The Court will therefore Grant Subaru's motion on

this issue.

---

[30] Because New Jersey law does not impose a duty to disclose latent defects, New Jersey law
conflicts with North Carolina law.  Plaintiff Perry resides and purchased his vehicle in North
Carolina, so North Carolina law applies to his common-law fraud claim.

### q. Pennsylvania

"It is axiomatic … that silence cannot amount to fraud in the absence of a duty to speak. This duty does not normally arise unless there is a confidential or fiduciary relationship between the parties." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999) (collecting cases); *see also Silverstein v. Percudani*, 2005 WL 1252199, at *8 (M.D. Pa. May 26, 2005) ("'The Pennsylvania common-law requires the existence of a confidential relationship as prerequisite to liability for omissions.'" (quoting *Antinoph v. Laverell Reynolds Sec., Inc.*, 703 F.Supp. 1185, 1187–88 n.1 (E.D.Pa.1989))).  Because Plaintiffs do not allege facts showing that a fiduciary relationship existed, they also fail to allege that Subaru had a duty to disclose.  The Court will therefore grant Subaru's motion on this issue.

### r. Rhode Island

Omissions are only actionable under Rhode Island law where a duty to disclose exists, and "[t]his duty may arise where one party to a business transaction knows of facts or circumstances that 'are not open to equal observation by both parties and are not discoverable by the exercise of ordinary diligence.'" *Alex & Ani, LLC v. Elite Level Consulting, LLC*, 31 F. Supp. 3d 365, 377 (D.R.I. 2014) (quoting 37 Am. Jur. 2d, Fraud and Deceit, § 205 at 249).  A conflict therefore exists between New Jersey law and Rhode Island law on this issue.  Plaintiff Biondo resides and purchased his vehicle in Rhode Island [CAC ¶ 85], so Rhode Island law applies to his common-law fraud claim.  The CAC plausibly alleges that Subaru had superior knowledge of the Defect and that Subaru had a duty to disclose its knowledge of the Defect as a result.  The Court will therefore deny Subaru's motion on this issue.

### s.  South Carolina

Under South Carolina law, a duty to disclose can give rise to a fraudulent omission claim in relationships or transactions that are "intrinsically fiduciary."  *Regions Bank v. Schmauch*, 582 S.E.2d 432, 445–46 (S.C. Ct. App. 2003) (quoting *Jacobson v. Yaschik*, 155 S.E.2d 601, 605 (S.C. 1967)).  Because the CAC does not allege that a fiduciary relationship existed between Plaintiffs and Subaru, Subaru had no duty to disclose the Defect.  The Court will therefore grant Subaru's motion on this issue.

### t.  Tennessee

Tennessee common law imposes a duty to disclose "any condition or defect that [a seller] knows or should know about that renders the product defective or dangerous, and … basic, material information if [the seller] knows that the buyer is about to act without knowledge of the information and is without reasonable means to acquire the information itself."  *Bearden v. Honeywell Int'l Inc.*, 720 F. Supp. 2d 932, 941 (M.D. Tenn. 2010) (citations and quotations omitted) (discussing development of duty to disclose under Tennessee law).  Tennessee law therefore conflicts with New Jersey law on this issue.  The only Plaintiff with a connection to Tennessee is Plaintiff Sweeton, who resides in Georgia but purchased his vehicle in Tennessee. [CAC ¶ 117].  Consistent with the Court's analysis above, the Court will apply Tennessee law to his claim.

The CAC alleges that Subaru knew of the Defect and knew that consumers were unaware of the Defect when they purchased their vehicles.  [CAC ¶ 370].  The Court therefore finds that Plaintiffs adequately alleged a duty to disclose under Tennessee law, and will deny Subaru's motion on this issue.

### u.  Texas

Under Texas law, a duty to disclose arises

> (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression.

*Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 745 (N.D. Tex. 2014) (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. 1997)).  Plaintiffs have not pled facts giving rise to a duty to disclose under any of these four circumstances.  Because Subaru did not have a duty to disclose under Texas law, the Court will grant Subaru's motion on this issue.

### v.  Vermont

"[L]iability for nondisclosure will arise when there is 'some duty, legal or equitable, arising from the relations of the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.'"  *White v. Pepin*, 561 A.2d 94, 96 (Vt. 1989) (quoting *Cheever v. Albro*, 421 A.2d 1287, 1290 (Vt. 1980)).  A conflict therefore exists between Vermont law and New Jersey law which does not impose a duty to disclose for superior knowledge.  The only Plaintiff with a connection to Vermont is Plaintiff Moore, who resides in New York but purchased his vehicle in Vermont.  Consistent with the Court's analysis above, Vermont law applies to his claim.

As noted above, Plaintiffs have plausibly alleged that Subaru had "superior knowledge or means of knowledge" of the Defect giving rise to a duty to disclose.  The Court will therefore deny Subaru's motion on this issue.

53

### w.  Washington

"[U]nder Washington law, when a 'manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that information.'"  *Short v. Hyundai Motor Co.*, 444 F. Supp. 3d 1267, 1280 (W.D. Wash. 2020) (quoting *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1132 (W.D. Wash. 2010)).  A conflict therefore exists between Washington law, which does not impose a duty to disclose based on "superior information."  Plaintiffs Brown and Brockman reside and purchased their vehicles in Washington.  [CAC ¶¶ 93, 97].  Washington law therefore applies to their common-law fraud claims.

Plaintiffs have plausibly alleged that Subaru had "superior information" concerning the Defect giving rise to a duty to disclose.  The Court will therefore deny Subaru's motion on this issue.

### x.  Wisconsin

Under Wisconsin law, a duty to disclose attaches where

> (1) the non-disclosing party knew that the other party was not aware of the fact; (2) the mistaken party could not discover the fact by ordinary investigation or inspection, or he or she could not otherwise reasonably be expected to discover the fact; and (3) the mistaken party would not have entered into the transaction if he or she knew the fact.

*Kaloti Enterps., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 213 (Wis. 2005).  As described above, the CAC plausibly alleges each of these elements, so the Court will deny Subaru's motion on this issue.[31]

---

[31] Though New Jersey law conflicts with Wisconsin law on this issue, Wisconsin law applies to Plaintiffs Christine King and Kevin King, both of whom reside and purchased their vehicles in Wisconsin.

### 5.  Economic Loss Rule

Subaru argues that the economic loss doctrine bars the fraudulent omission claims of California, Pennsylvania, Florida, South Carolina, Tennessee, and Wisconsin Plaintiffs because these Plaintiffs only allege economic losses.[32]  [Dkt. 80-1 at 72–73].  Subaru also argues that the claims of Alabama and Texas Plaintiffs fail because they do not allege damages separate from contract damages.  [Dkt. 80-1 at 73].  The Court has already granted dismissal on Plaintiffs' fraudulent omission claims under the laws of Alabama, Pennsylvania, Florida, South Carolina, and Texas, and will not consider Subaru's arguments as applied in these states.

The economic loss rule "generally holds that purely economic losses are not recoverable in tort.  The economic loss rule preclude[s] plaintiffs from recovering under fraud and other intentional tort theories of liability where the tort claims are based on the same facts as the breach of contract claims."  *In re Subaru Battery Drain Prod. Liab. Litig.*, 2021 WL 1207791, at *29 (citations and quotations omitted) (alteration in original).  Plaintiffs agree that these states apply the economic loss rule, but respond that they all "recognize an exception to the economic loss doctrine when fraud provides a backdrop to the claims, like Plaintiffs' omissions claims plainly do, or where the fraud it outside the contract, such as where, as here, Plaintiffs were induced into entering a contract of sale or lease."  [Dkt. 93 at 65–66].

The Court must first determine whether the law of Plaintiffs' home states apply to their fraud claims.  New Jersey law recognizes the economic loss rule and an exception to that rule

---

[32] Subaru has not argued or cited authority for the argument that the economic loss rule bars Plaintiffs' statutory fraud claims under state consumer protection laws.  The Court therefore only considers this argument as it applies to Plaintiffs' common law claims.  *But see Earl v. NVR, Inc.*, 990 F.3d 310, 314 (3d Cir. 2021) (finding that the economic loss rule does not bar claims under Pennsylvania consumer protection statute); *Hinrichs v. DOW Chem. Co.*, 937 N.W.2d 37, 51 (Wis. 2020) ("[W]e conclude that the economic loss doctrine does not serve as a bar to claims made under [the Wisconsin Deceptive Trade Practices Act].").

where a plaintiff alleges "pre-contractual misrepresentations that are extrinsic to the parties'

agreement." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 465

(D.N.J. 2020) (citing *Grasso Foods, Inc. v. Wynn Envir'tl Sales Co.*, No. 17-6430, 2018 WL

3455479, at *3 (D.N.J. July 18, 2018)).  The Court understands "pre-contractual

misrepresentations" to mean affirmative misrepresentations rather than omissions or

concealment.  *See Grasso Foods, Inc.*, 2018 WL 3455479, at *1–2 (discussing the affirmative

representations that permitted the exception to the economic loss rule).  California recognizes a

fraud exception to the economic loss rule, but only for affirmative misrepresentations.  *In re*

*Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 847–50

(C.D. Cal. 2020) (holding under California law that "the economic loss rule bars Plaintiff's claim

for fraudulent inducement by omission"); *Ponzio*, 447 F. Supp. 3d at 236–37 (dismissing

fraudulent concealment claims under California and Florida law).  Thus, there is no conflict

between New Jersey common law and California common law on this issue.  Because Plaintiffs

only allege fraudulent omissions, the Court will grant Subaru's motion to dismiss the common-

law fraud claims of California Plaintiffs (Adnan, Woo, Bancod-Hile).

The Court declines to consider whether the economic loss rule bars Plaintiffs' fraudulent

omission claim under Tennessee law.  After the parties submitted their briefing in this case, the

Supreme Court of Tennessee found that

> for situations … involving a contract between sophisticated
> commercial business entities and a fraudulent inducement claim
> seeking recovery of economic losses only, the economic loss
> doctrine applies if the only misrepresentation[s] by the dishonest
> party concern[ ] the quality or character of the goods sold.

*Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 153–54 (Tenn. 2021) (citations

and quotations omitted) (alterations in the original).  The parties did not have the opportunity to

consider the *Milan Supply* ruling or explain why the ruling applies or does not apply to the facts of this case, which does not involve dealings between "sophisticated commercial entities." Because "[f]ederal courts … should be extremely cautious about adopting substantive innovation in state law," the Court declines to determine whether that holding applies here without the benefit of full briefing. *Williams v. BMW of N. Am.*, LLC, 514 F. Supp. 3d 1036, 1044 (E.D. Tenn. 2021) (declining to consider applicability of economic loss rule to fraudulent concealment).

Plaintiffs' common-law fraud claims cannot survive under Wisconsin law. Under Wisconsin law, the economic loss doctrine bars fraud claims concerning "the quality or the characteristics of the goods for which the parties contracted." *Kaloti Enters., Inc.*, 699 N.W.2d at 219. At bottom, Plaintiffs allege that Subaru misrepresented the "quality and characteristics" of Subaru vehicles by failing to disclose the Defect to consumers despite Subaru's knowledge of the Defect. Wisconsin law bars such claims. *See id.* The Court will grant Subaru's motion to dismiss the common-law fraud claims of Wisconsin Plaintiffs Christine King and Kevin King.

### 6. New Jersey Consumer Fraud Act ("NJCFA") (Count VI)— Ascertainable Loss

Subaru argues that New Jersey Plaintiffs Ferguson and Mutschler fail to adequately plead their NJCFA claims because Subaru's alleged fraud has not "caused" an "ascertainable loss." [Dkt. 80-1 at 73–74].

> To state a prima facie case under the NJCFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant;[33] (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss.

---

[33] "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citations omitted).

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011)

(citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010));

*Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462–465 (N.J.

1994)).  "An actionable loss is not 'hypothetical or illusory.'"  *Spera v. Samsung Elecs. Am.,

Inc.*, No. 2:12-CV-05412 WJM MF, 2014 WL 1334256, at *5 (D.N.J. Apr. 2, 2014) (quoting

*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005)).  Instead, "what New

Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the

difference in value between the promised product and the actual product received."  *Smajlaj v.

Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J.2011).

The Court agrees that Plaintiffs Ferguson and Mutschler have failed to allege an

ascertainable loss.  Neither Plaintiff Ferguson nor Plaintiff Mutschler allege that they have

experienced any mechanical troubles with their vehicles.  [*See* CAC ¶¶ 69–76].  Yet they allege

in a conclusory manner that the defect "has caused Plaintiff(s) out-of-pocket loss, future

attempted repairs, and diminished value of the Affected Vehicle."  [CAC ¶¶ 70, 74].  Plaintiffs

do not allege any facts to square their claims that they suffered out-of-pocket losses with their

failure to allege that they have experienced any mechanical difficulties with their cars.  Their

argument that they may suffer losses due to "future attempted repairs" is purely "hypothetical" at

this point, particularly because repairs are available through warranty at no cost.  *See Tietsworth

v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239–40 (Wis. 2004) (dismissing consumer fraud

claim predicated on "propensity for future engine failure" theory of loss).  Further, Plaintiffs

have not alleged that they attempted to sell their vehicles at a reduced price or otherwise pled

facts suggesting that their fully functional vehicles have reduced in value.  *Smajlaj*, 782 F. Supp.

2d at 99 ("[W]hat New Jersey Courts require for that loss to be 'ascertainable' is for the

consumer to quantify the difference in value between the promised product and the actual product received."). Thus, their claims about "reduced value" is also a hypothetical concern.

Plaintiffs Ferguson and Mutschler also argue under a "benefit-of-the-bargain" theory that they received a product that was worth less than promised. [Dkt. 93 at 66–67]. The Court rejects this argument. As the Supreme Court of New Jersey has stated,

> [t]he ascertainable loss requirement operates as an integral check upon the balance struck by the CFA between the consuming public and sellers of goods. The importance of maintaining that balance is obvious. Defects can, and do, arise with complex instrumentalities such as automobiles. The mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser. Indeed, the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties. The defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate "loss" that the CFA expressly requires for a private claim under the CFA….

*Thiedemann*, 872 A.2d at 794. In this case, Plaintiffs Ferguson and Mutschler do not allege that they have experienced the symptoms of the Defect in their vehicles, that they brought their vehicles for repair under the Warranty, or that they received inadequate repairs. Thus, Plaintiffs have failed to substantiate their benefit-of-the-bargain theory of ascertainable loss. The Court will therefore grant Subaru's motion to dismiss Plaintiffs Ferguson and Mutschler's NJCFA claims.

### iv. Arkansas Deceptive Trade Practices Act ("ADTPA") (Count XII)— Actual Damage or Injury to Plaintiff Mein de Vera

Count XII of the CAC alleges that Subaru violated the ADTPA, Ark. Code An. § 4-88-101 et seq. To state a claim under the ADTPA, a plaintiff must allege (1) a false, deceptive, or unlawful act; (2) causation; and (3) actual damages. *See Indep. Cty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882, 886 (E.D. Ark. 2008), *aff'd sub nom. Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th

Cir. 2009) (citations omitted).  Subaru argues that Arkansas Plaintiff Mein de Vera's ADTPA

claim must be dismissed because she failed to allege an "actual damage or injury."  [Dkt. 80-1 at

68].  Subaru relies on *Wallis v. Ford Motor Co.*, where the Supreme Court of Arkansas found

that "diminution in value of the vehicle" for benefit of the bargain theories of loss do not satisfy

the actual damages element.  208 S.W.3d 153, 162 (Ark. 2005).  However, as Plaintiffs point out,

the plaintiff in *Wallis* did not allege that his vehicle "has not, to date, been exactly what Wallis

bargained for; that is, he does not allege that the vehicle has actually malfunctioned or that the

defect has manifested itself."  *Id.* at 159.  Here, the CAC alleges that Mein de Vera "has

experienced loss of power problems with her affected vehicle, including sputtering and stalling."

[CAC ¶ 49].  Thus, she has adequately pled an ADTPA claim under Arkansas law.  *Burns v.*

*Toyota Motor Sales, U.S.A., Inc.*, No. 2:14-CV-02208, 2016 WL 128544, at *3 (W.D. Ark. Jan.

12, 2016) (finding that *Wallis* did not require dismissal where the plaintiff alleged that the defect

had manifest in the plaintiff's vehicle).[34]  The Court therefore denies Subaru's motion to dismiss

Mein de Vera's ADTPA claim.

### v. Plaintiff Kevin King's Wisconsin Deceptive Trade Practices Act ("WI DTPA") Claim (Count LIX)

Count LIX alleges that Subaru violated the WI DTPA, Wis. Stat. § 100.18 by

"concealing" and "suppressing material facts concerning the [Defect]."  [CAC ¶ 1045].  Subaru

argues that Plaintiff Kevin King's[35] WI DTPA Claim must be dismissed because the statute only

---

[34] Because Arkansas courts have defined a cognizable injury under the ADTPA differently from New Jersey courts interpreting the NJCFA, a conflict exists.  Arkansas Plaintiff Mein De Vera resides and purchased her vehicle in Arkansas.  [CAC ¶ 49].  Consistent with the Court's choice-of-law analysis above, the Court will apply the ADTPA.

[35] Subaru does not raise this argument as to the other Wisconsin Plaintiff, Christine King.

penalizes affirmative misrepresentations and does not apply to omissions.  [Dkt. 80-1 at 76].  The Court agrees.

"Silence—an omission to speak—is insufficient to support a claim under Wis. Stat. § 100.18(1).  The DTPA does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact that are false, deceptive, or misleading."  *Tietsworth*, 677 N.W.2d at 245.  "[M]ere 'puffery'—defined as the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined—is also 'legally insufficient' to support a DTPA claim."  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 456 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017) (discussing the WI DTPA) (citations and quotations omitted); *see also Tietsworth*, 677 N.W. 2d at 245 (same).

Plaintiff Kevin King's WI DTPA claim cannot survive.  As discussed above, the only affirmative representations cited in the CAC are general statements concerning the quality and safety of Subaru's vehicles.  "[B]ecause a nondisclosure is not an 'assertion, representation or statement of fact' for purposes of the DTPA, and because the only affirmative assertions alleged in the [CAC] are mere puffery, [Plaintiff Kevin King] failed to state a claim under [the DTPA]."  *Tietsworth*, 677 N.W.2d at 246.

### vi.  Consumer Class Claims Under AL, AR, SC, and TN Law

Subaru argues that Plaintiffs cannot bring statutory consumer fraud claims under Alabama, Arkansas, South Carolina, or Tennessee law because the consumer protection statutes

of those states preclude class claims.[36]  [Dkt. 80-1 at 80–81].  Plaintiffs argue that Federal Rule of Civil Procedure 23 permits Plaintiffs from these states to bring their consumer fraud claims on a class basis despite these statutory class action bars.  [Dkt. 93 at 74].

In *Amato v. Subaru of America, Inc.*, this Court recently considered this same issue in determining whether Rule 23 permitted class claims under a Georgia statute which has an analogous class action bar.  2021 WL 2154976, at *5–*8.  After a detailed discussion of the Supreme Court case *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) and the Third Circuit's application thereof, this Court concluded that plaintiffs may bring state statutory claims on behalf of a class despite the statutory class action bar.  *Id.* at *8.

The Court adopts its reasoning and conclusion in *Amato* and will permit Plaintiffs to bring their consumer fraud claims under Alabama, Arkansas, South Carolina, or Tennessee law as class claims.  The Court therefore denies Subaru's motion on this issue.

### f.   Strict Liability, Negligent Recall, and the Economic Loss Rule

Counts IV and V of the CAC allege common-law tort claims for strict liability and "negligent recall/undertaking," respectively.  Subaru raises several arguments against these claims which the Court will address in turn.

### i.   Choice of Law

Before reviewing Subaru's arguments for dismissal, the Court will provide a framework for addressing conflict of law issues when they arise.  Section 145 of the Second Restatement of Conflict of laws enumerates factors[37] that apply to torts generally but acknowledges that "special

---

[36] Ala. Code § 8-19-10(f); Ark. Code Ann. 4-88-113(f)(3)(B); S.C. Code Ann. § 39-5-140(a); Tenn. Code Ann. § 47-18-109(a)(1).
[37] Section 145 provides that

rules" exist for "particular torts and for particular issues in tort."  Restatement (Second) Conflict

of Laws § 145 cmt. a.  The special rules do not map neatly onto Plaintiffs' claims here as the

Second Restatement does not set forth rules for product liability claims as alleged in the CAC.

Section 146 provides rules for "personal injuries"—such as physical injuries or "mental

disturbance"—that result from negligence or strict liability.  *Id.* § 146 cmts. a, b.  Section 147

applies to "injuries to tangible things" that result from negligence or strict liability.  *Id.* § 147

cmt. a.  The CAC alleges strict liability claims based on a defective product which, in some

instances, caused vehicle performance issues, but has not caused physical injury.  As the Court

understands it, the CAC primarily alleges economic injuries rather than injuries to person or

property.[38]  Though §§ 146 and 147 do not squarely contemplate Plaintiffs' injuries, the Court

will rely on these provisions for guidance because they contemplate injuries resulting from strict

liability claims.

---

(1) The rights and liabilities of the parties with respect to an issue in tort are determined
    by the local law of the state which, with respect to that issue, has the most significant
    relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the
    law applicable to an issue include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of
> business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the
particular issue.

[38] [*E.g.* CAC ¶ 126 ("Defendants' unfair, unlawful, and deceptive conduct in designing,
manufacturing, marketing, selling, and leasing the Affected Vehicle with the Fuel Pump Defect
has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of the
Affected Vehicle.")].

Sections 146 and 147 both state that

> the local law of the state where the injury occurred determines the
> rights and liabilities of the parties unless, with respect to the
> particular issue, some other state has a more significant
> relationship under the principles stated in § 6 to the occurrence, the
> thing and the parties, in which event the local law of the other state
> will be applied.

The key question, then, is where Plaintiffs' injuries occurred.  The CAC alleges economic injuries, which Plaintiffs presumably felt in the state where they reside.  *See Air Prod. and Chemicals, Inc. v. Eaton Metal Prod. Co.*, 272 F. Supp. 2d 482, 503–04 (E.D. Pa. 2003).  Plaintiffs also allege that they use their Subaru vehicles "for personal and family uses."  [*E.g.* CAC ¶ 131].  Thus, to the extent that vehicle performance difficulties caused by the Defect constitute injuries in and of themselves, it is reasonable to infer that Plaintiffs also suffered these injuries in the states where they reside.[39]  Home state law therefore presumptively applies to Plaintiffs' claims unless some other state has a stronger interest.

The only other states with any connection to Plaintiffs' product liability claims are New Jersey, where Subaru has its principal place of business, and Delaware, where Subaru is incorporated.[40]  But the factors set forth in Restatement § 6 do not support applying the law of these states instead of the states where Plaintiffs reside.  In product liability cases, New Jersey

---

[39] Arguably, Plaintiffs suffered injury in the state where they purchased their vehicles because they "overpaid for their Affected Vehicles and did not receive the benefit of their bargain." [CAC ¶ 382].  In the Court's view, while the state of purchase may affect the state interest analysis under §§ 6 and 145, the state of purchase is the possible site for a contract-based injury but not a product liability claim.  *See* Restatement (Second) Conflict of Laws § 188.

[40] As the chart of Plaintiffs above demonstrates, several Plaintiffs purchased their vehicles in states other than where they live. For these Plaintiffs, the state of purchase could be an interested state under §§ 6 and 145 as "the place where the relationship, if any, between the parties is centered."  While this factor deserves some weight, it does not override the presumption in favor of applying the law of the state where the injury occurred.

courts have found that "interests of comity, the interests of the parties, the purposes of this field

of law, and the respective governmental interests favored the state where the party was allegedly

injured." *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 882–83 (D.N.J. 2010) (citing

cases); *Deemer v. Silk City Textile Mach. Co.*, 475 A.2d 648, 652–53 (N.J. Super Ct. App. Div.

1984) (finding North Carolina law applied to product liability claim where plaintiff suffered

injury in North Carolina, but where the product was manufactured in New Jersey by a

manufacturer organized in New Jersey).

Ultimately the Court will apply the law of Plaintiffs' home states if the law of that state

conflicts with New Jersey law with respect to Plaintiffs' strict liability claims

### ii.   Common Law Strict Liability Claims—Count IV

Count IV of the CAC alleges common-law strict liability on behalf of all Plaintiffs.

Subaru argues that New Jersey, Oregon, Washington, and South Carolina have enacted statutory

product liability regimes that provide exclusive remedies for product liability claims and that

preempt common-law strict liability claims.  Subaru argues that Plaintiffs' strict product liability

claims cannot stand in these states because Plaintiffs have only alleged common-law product

liability.  [Dkt. 80-1 at 78–79].  Plaintiffs do not dispute that statutes in these states have

subsumed common-law strict liability claims.  Instead, Plaintiffs argue that their strict liability

claims in these states should not be dismissed because they have satisfied their pleading

obligations under Federal Rule of Civil Procedure 8 even though they did not explicitly cite

relevant product liability statutes.  [*See* Dkt. 93 at 72].

Federal Rule of Civil Procedure 8 does not "countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby,*

*Miss.*, 574 U.S. 10, 11 (2014).  To "stave off threshold dismissal for want of an adequate

statement of their claim" plaintiffs must only "inform[] [defendants] of the factual basis for their complaint." *Id.* "Rule 8's 'liberal pleading principles' do not permit dismissal for 'failure in a complaint to cite a statute, or to cite the correct one.... Factual allegations alone are what matters.'" *In re DVI, Inc.*, 326 B.R. 301, 309 (Bankr. D. Del. 2005) (quoting *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004)); *accord Boone v. T-Mobile USA Inc.*, No. CV 17-378-KM-MAH, 2018 WL 588927, at *13 (D.N.J. Jan. 29, 2018) (citations and quotations omitted).

Under this standard, the Court agrees with Plaintiffs. The CAC alleges strict product liability but does not specify whether this is a statutory or common-law claim. While "imperfect," the CAC informs Subaru that Plaintiffs seek to recover for strict product liability and alleges a factual basis for that claim, which is all Plaintiffs must do at this stage.

### iii.  Economic Loss Rule

Subaru argues that the economic loss rule bars Plaintiffs' strict liability and negligent recall claims. [Dkt. 80-1 at 78–80]. Subaru only cites authority for California, Alabama, Florida, New Jersey, and Maryland, so the Court will limit its analysis to these states.

As noted above, the economic loss rule generally holds that "purely economic losses are not recoverable in tort." *Ponzio*, 447 F. Supp. 3d at 236, 239 (citing *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (California law); and quoting *Benkle v. Ford Motor Co.*, No. SACV161569, 2017 WL 9486154, at *9 (C.D. Cal. Dec. 22, 2017) (Florida law)); *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588–89 (D.N.J. 2014) (New Jersey law). When applied to the purchase and sale of consumer products, "[t]he vast majority of courts across the country … have concluded that purchasers of personal property … should be limited to recovery under contract principles."

*Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264, 270–71 (N.J. 1997) (collecting cases). Thus, unless a product defect causes physical harm or harm to property other than the goods purchased, a purchaser can only recover contract damages. *See id.* at 267 ("Generally speaking, tort principles are better suited to resolve claims for personal injuries or damage to other property." (collecting cases)); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014) ("California's economic loss rule provides that the recovery of economic loss under strict products liability is appropriate only when there has been physical harm to persons or property other than the allegedly defective product itself." (citations omitted)); *Roy v. Ward Mfg., LLC*, No. CIV.A. RDB-13-3878, 2014 WL 4215614, at *4 (D. Md. Aug. 22, 2014) ("A plaintiff alleging only … economic loss, is generally barred from bringing his claim under a products liability or any other type of tort theory."); *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013) ("Simply put, the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses. The rule … was primarily intended to limit actions in the products liability context." (citing *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So.2d 532, 536 (Fla. 2004))); *Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 184 (Ala. 2010) ("The economic-loss rule 'prevents tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself.'" (quoting *Vesta Fire Ins. Corp. v. Milam & Co. Constr.*, 901 So.2d 84, 106–07 (Ala. 2004))). Put differently, plaintiffs cannot recover under negligence or strict product liability theories where they only suffer economic injury. *Alloway*, 695 A.2d at 267, 275.

The CAC does not allege that Plaintiffs from California, Alabama, Florida, or New Jersey suffered physical injury or injury to property other than their Subaru vehicles.  The CAC only alleges economic injury and Plaintiffs do not argue otherwise.  Instead, Plaintiffs argue that they have pled an exception to the economic loss rule that saves their strict liability claims.  [Dkt, 93 at 70–74].  As discussed above, some courts recognize an exception to the economic loss doctrine where a defendant violates an independent duty not to commit fraud that "aris[es] from principles of tort law."  *Ponzio*, 447 F. Supp. at 236 (quoting *Robinson Helicopter, Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004)).  Plaintiffs argue that this fraud exception applies here because they have alleged fraud throughout the CAC.  [Dkt. 93 at 70].

The Court rejects Plaintiffs' argument.  Although Plaintiffs assert fraud elsewhere in the CAC, Plaintiffs' strict liability and negligent recall claims are not fraud claims.  *See Alloway*, 695 A.2d at 274 (distinguishing contract and fraud remedies from strict product liability claims for injury to person or other property).  Plaintiffs' separate common law and statutory fraud claims do not permit Plaintiffs to recover for strict product liability or negligent recall based only on economic losses.  *See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK/KW), 2021 WL 364663, at *6 (D.N.J. Feb. 3, 2021) (finding that courts "have consistently dismissed product-liability-related claims based on common law theories when at the heart of those theories is the potential 'harm caused by a product…. Courts have also historically dismissed common law and statutory fraud claims when the harm alleged was caused by a product.'" (collecting cases)).  The Court will therefore grant Subaru's motion to dismiss Plaintiffs' strict product liability claims for the New Jersey, Florida, California, and

Alabama Plaintiffs (Mutschler, Ferguson, Cohen, Rosenthal, Adnan, Woo, Bancod-Hile, Griffin, Oakley, Whitley).[41]

However, Subaru's argument fails under Maryland law. Subaru acknowledges that a "public safety exception" applies to the economic loss rule under Maryland law, but argues that the exception does not apply in this case.[42]   [Dkt. 80-1 at 78 n.24]. This exception permits a plaintiff to recover for purely economic injuries where tortious conduct creates a risk of death or personal injury. *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Cont. Co.*, 517 A.2d 336, 345 (Md. 1986). To determine whether the exception applies, courts must weigh the "nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631–32 (Md. Ct. App. 1995). When considering the risk and gravity of possible harm, "the critical test is not whether the plaintiff has alleged facts that meet an articulable threshold for both elements, but, rather, whether that plaintiff has met the threshold to satisfy either of the elements so long as, under the facts alleged, both elements are, at a minimum, present." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 269 (Md. Ct. App. 2007) (citing *Morris*, 667 A.2d at 631–32). At the same time, "mere possibilities are legally insufficient to allege the existence of a clear danger of death or serious personal injury." *Morris*, 667 A.2d at 633.

At this stage of the litigation, Plaintiffs have alleged facts that plausibly show the public safety exception applies. Although the CAC suggests that the risk of physical injury is low

---

[41] Because California, Alabama, Florida, and New Jersey law are consistent on this issue, the Court need not move to the second step of New Jersey's choice-of-law analysis.

[42] Because New Jersey does not recognize a public-safety exception, a conflict exists. Maryland law nevertheless applies because Plaintiffs Efantis and Fontenot reside in Maryland.

because it does not identify any physical injuries that resulted from the Defect, it alleges that consumers have experienced near misses due to engine malfunction.[43]  Thus, the CAC alleges that the Defect causes some risk of physical injury, and it is reasonable to infer that injuries resulting from highway engine failure could be severe.  Thus, the risk and severity of injury "elements" are "present" in the CAC's allegations.  *Lloyd*, 916 A.2d at 269.  The Court will therefore deny Subaru's motion on this issue.

Subaru also argues that Plaintiffs' "negligent undertaking/recall" claims at Count V must be dismissed because such claims only apply where a plaintiff has suffered injury to person or property, which did not occur here.  [Dkt. 80-1 at 80].  Plaintiffs do not dispute that negligent undertaking requires injury to person or property.  Instead, Plaintiffs argue that Subaru has not cited applicable authority stating that negligent recall requires them to plead injury to person or property.  [Dkt. 93 at 73–74].  The Court agrees.  Following Plaintiffs' response, the Court will grant Subaru's motion to dismiss Count V as to negligent undertaking but will deny Subaru's motion to dismiss Count V as to negligent recall.

### iv.  North Carolina Law

As Subaru argues, North Carolina statute precludes recovery for strict product liability claims.[44]  N.C. Gen. Stat. § 99B–1.1 ("There shall be no strict liability in tort in product liability actions."); *Burrell v. Bayer Corp.*, 260 F. Supp. 3d 485, 494 (W.D.N.C. 2017) ("To the extent

---

[43] [*E.g.* CAC ¶ 280 ("ON THREE SEPARATE OCCASIONS THUS FAR, WHILE DRIVING APPROXIMATELY 70 MPH ON INTERSTATE 93 IN MASSACHUSETTS AND NEW HAMPSHIRE, MY 2017 SUBARU FORESTER TOURING (WITH 21K MILES) LOST POWER AND COMPLETELY SHUTDOWN.  ALL THREE TIMES, I WAS LUCKILY ABLE TO STEER THE VEHICLE TO SAFETY WHILE AVOIDING OTHIS [sic] MOTOR VEHICLES….") (capitalization in original)].

[44] Plaintiff Perry purchased his vehicle in North Carolina.  Thus, although North Carolina law conflicts with New Jersey law on this issue, North Carolina law applies.

that plaintiff's products liability claim posits a strict liability theory, state law does not recognize such a theory." (citing *Am. & Efird LLC v. Pittsfield Plastics Eng'g, Inc.*, No. 3:12CV194, 2012 WL 5463130, at *1 (W.D.N.C. Nov. 8, 2012))).  Thus North Carolina Plaintiffs cannot state a strict liability claim against Subaru.

### g.  Breach of Contract (Count III)

Count III of the CAC alleges that Subaru breached its contract with Plaintiffs.  The CAC alleges that "[e]ach and every sale or lease of an Affected Vehicle constitutes a contract between Subaru and the purchaser or lessee" and that Subaru "breached these contracts by selling or leasing to Plaintiffs … defective Affected Vehicles."  [CAC ¶ 383].  Subaru argues that this claim fails because Plaintiffs have no contractual relationship with Subaru.  [Dkt. 90-1 at 85]. Subaru argues that Plaintiffs contracted with Subaru dealerships when purchasing or renting their vehicles, and not with Subaru itself.  [Dkt. 90-1 at 85].  Plaintiffs argue that their contract claims should survive because they have alleged that Subaru has an agency relationship with its dealerships and that Subaru therefore is in contractual privity with Plaintiffs.  Plaintiffs point to a list of allegations in the CAC which describe Subaru's control over its dealerships.  [CAC ¶ 319].

For the same reason discussed above with respect to Plaintiffs' implied warranty claims, the Court will allow Plaintiffs to pursue discovery on a possible agency relationship between Subaru and authorized dealerships where Plaintiffs purchased their vehicles.  The Court will therefore deny Subaru's motion to dismiss Plaintiffs' breach of contract claims on this ground.

### h. Unjust Enrichment (Count IX)

Subaru argues that Plaintiffs' unjust enrichment claims must be dismissed for several reasons, including that Plaintiffs fail to plead an adequate remedy at law and that Plaintiffs fail to allege a direct relationship between Subaru and Plaintiffs.  The Court agrees.[45]

To state a claim for unjust enrichment, plaintiffs must allege "1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." *Dzielak*, 26 F. Supp. 3d at 330 (quoting *Palmeri v. LG Elecs. USA, Inc.*, No. 07–CV–5706, 2008 WL 2945985, *5 (D.N.J. July 30, 2008)).  "Unjust enrichment is an equitable claim for relief that is generally available only where there is no adequate remedy at law."  *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 3899545, at *3 (N.D. Cal. Aug. 8, 2014) (citing *Matthews v. Am. Honda Motor Co., Inc.*, No. 12–60630, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012)); *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) ("[U]njust enrichment under New York law is an equitable claim that is unavailable where an adequate remedy at law exists." (citations and quotations omitted)); *In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 333–42 (S.D.N.Y. 2018) (collecting cases); *Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. L. Div. 1992), *aff'd*, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994) (noting that equitable remedies are "available only when there is no adequate remedy at law." (citing *State v. Singletary*, 380 A.2d 302 (N.J. Super. Ct. L. Div. 1977))).

Plaintiffs do not identify an equitable remedy that they seek that that is unavailable through one of their 50+ legal claims.  Instead they argue that, because Subaru has disputed

---

[45] The parties do not argue that a conflict exists between New Jersey law and the law of any other states on this issue.

Plaintiffs' legal claims, the Court should withhold dismissal so that Plaintiffs have a remedy if their legal claims fail. [Dkt. 93 at 75–76].  The Court disagrees because "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017); *accord In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d at 334 ("[A] plaintiff need not be guaranteed success for a legal remedy to be 'adequate.'").  The Court therefore agrees with Subaru that Plaintiffs' unjust enrichment claims should be dismissed for failure to plead an inadequate remedy at law.

Even if Plaintiffs lacked an adequate remedy at law, their unjust enrichment claim cannot survive because Plaintiffs did not confer a benefit on Subaru.  "When consumers purchase a product from a third party, they confer a benefit on that third party, not on the manufacturer." *Dzielak*, 26 F. Supp. 3d at 330 (citing *Snyder*, 792 F. Supp. 2d at 724).  For this reason, "this Court has previously found that in 'the majority of cases concerning claims similar to the ones asserted here … a plaintiff may not maintain an unjust enrichment claim against the manufacturer if he did not purchase the product directly from the manufacturer.'"  *Powell*, 502 F. Supp. 3d at 898 (quoting *Defillippo v. Whirlpool Corp.*, No. 18-12523, 2019 WL 4127162, at *14 (D.N.J. Aug. 30, 2019)).  Because the Plaintiffs here "did not purchase any of the Class Vehicles directly from [Subaru], but rather from an authorized dealer … their unjust enrichment claim must be dismissed."  *Id.* (citing *Schechter v. Hyundai Motor Am.*, No. 18-13634 (FLW), 2019 WL 3416902, at *11 (D.N.J. July 29, 2019)).

### i.   Good Faith and Fair Dealing

The CAC alleges breach of the implied covenant of good faith and fair dealing under the common law of New Jersey (Count VIII), Florida (Count XXXIII), and Minnesota (XXXV). "Every party to a contract … is bound by a duty of good faith and fair dealing in both the

performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395 (N.J. 2005) (citing *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121 (N.J 2001)); *see also Nomeco Bldg. Specialties, Inc. v. Pella Corp.*, 184 F.R.D. 609, 610–11 (D. Minn. 1999); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (citations omitted). "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract,'" even if they comply with the contract's express terms. *Brunswick Hills Racquet Club, Inc.*, 864 A.2d at 396 (*quoting Palisades Props., Inc. v. Brunetti*, 207 A.2d 522 (N.J. 1965)).

To state a claim for breach of the covenant of good faith and fair dealing, a party to a contract must show that "'the defendant act[ed] with ill motives and without any legitimate purpose to destroy the plaintiff's reasonable expectations.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 518 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (quoting *Elliot & Frantz, Inc. v. Ingersoll–Rand Co.*, 457 F.3d 312, 329 (3d Cir. 2006)). Further, plaintiffs cannot state an implied covenant claim where they also allege breach of contract and "'the two asserted breaches basically rest on the same conduct,' namely failure to abide by provisions 'expressly set forth' in the contract." *Valcom, Inc. v. Vellardita*, No. 2:13-CV-3025-WHW-CLW, 2014 WL 2965708, at *8 (D.N.J. July 1, 2014) (quoting *Berlin Med. Assocs., P.A. v. CMI N.J. Operating Corp.*, A–3034–04T5, 2006 WL 2162435, at *9 (N.J. Super. Ct. App. Div. Aug. 3, 2006)); *Shibata*, 133 F. Supp. 2d at 1319 ("[B]reach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract." (collecting cases)).

Subaru argues that Plaintiffs' implied covenant claims should be dismissed because they rely on the same set of facts as Plaintiffs' breach of warranty claims. [Dkt. 90-1 at 86]. The Court agrees with Subaru that Plaintiffs' implied covenant claims duplicate their express warranty claims and must be dismissed.

Plaintiffs respond that their implied covenant claims should survive because Subaru had sole "discretion to choose the components that it would include in its vehicles and abused that discretion by choosing inferior low-pressure fuel pumps." [Dkt. 93 at 81]. Plaintiffs cite cases which state that the implied covenant of good faith and fair dealing "limits [a] controlling party's discretion; [a] controlling party must exercise discretion reasonably with proper motive, not arbitrarily, capriciously, or in manner inconsistent with reasonable expectations of parties." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1128 (N.J. 2001) (citations omitted).

This exercise of discretion, however, does not distinguish Plaintiffs' implied covenant claims from their warranty claims. No doubt, Subaru chose to include the Denso fuel pumps at issue here in its vehicles. But Subaru also warranted its vehicles' "materials and workmanship" and, as discussed above, the Limited Warranty contemplates the quality of these fuel pumps. Thus, there is no implied covenant that applies to the fuel pumps distinct from the Limited Warranty. *Valcom, Inc.*, 2014 WL 2965708, at *8 (citations and quotations omitted). Moreover, Plaintiffs do not plead "extreme" facts showing that Subaru acted in bad faith by choosing Denso's fuel pumps while also warranting those fuel pumps. *Berlin Med. Assocs., P.A.*, 2006 WL 2162435, at *10. The Court will therefore dismiss Plaintiffs' claims for breach of implied warranty of good faith and fair dealing.

### j.  Prudential Mootness, Primary Jurisdiction, and Preemption

Finally, Subaru argues under three legal theories—prudential mootness, primary jurisdiction, and preemption—that the Subaru Recall precludes Plaintiffs from pursuing certain claims.  [Dkt. 80-1 at 87].  For the reasons discussed below, the Court disagrees.

### i.  Prudential Mootness

First, Subaru argues that the prudential mootness doctrine bars all of Plaintiffs' claims against Subaru.  [Dkt. 80-1 at 87–88].  Even where a federal court has jurisdiction to hear a case under Article III of the Constitution, the court may refuse to exercise jurisdiction over a case that is "prudentially moot."  *Sierra Club v. U.S. Army Corps of Engineers*, 277 F. App'x 170, 172 (3d Cir. 2008).  Under the prudential mootness doctrine, federal courts may "decline to exercise our discretion to grant declaratory and injunctive relief if the controversy is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'"  *Id.* (quoting *Chamber of Com. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)).

Subaru argues that the Court should dismiss the CAC entirely because Subaru voluntarily commenced the Recall according to federal statute and under the NHTSA's supervision.  [Dkt. 80-1 at 87–88].  Subaru relies on *Winzler v. Toyota Motor Sales USA, Inc.*, where the Tenth Circuit found that a product liability class action suit seeking equitable remedies from a car manufacturer was prudentially moot after the manufacturer began a recall of the allegedly defective car component.  681 F.3d 1208, 1215 (10th Cir. 2012).  In *Winzler*, the Tenth Circuit found that the NHTSA-coordinated recall provided adequate remedies to the putative class plaintiffs and that allowing the lawsuit to proceed would encroach on the remedial process which

76

other branches of government have created.[46]  Subaru asks the Court to adopt *Winzler's* reasoning and conclusion in this case.

The Court declines to do so because the prudential mootness doctrine does not confer discretion on the Court to dismiss legal claims.  Subaru's argument overlooks a key distinction between this case and *Winzler*.  The plaintiffs in *Winzler* only sought equitable remedies, *id.* at 1210, but Plaintiffs here assert a host of legal claims seeking legal remedies.  [*See generally* CAC].  Subaru has not offered any authority showing that a court may exercise its discretion to find legal claims prudentially moot.  *Cf. Sierra Club*, 277 F. App'x 170 at 172 (noting that courts may "decline to exercise our discretion **to grant declaratory and injunctive relief**….") (emphasis added).  The Court therefore will deny Subaru's motion with respect to its prudential mootness argument.

---

[46]  *See Winzler*, 681 F.3d at 1211

> The weight a remedial promise plays in the equitable calculus depends, of course, on who is making the promise and the reliability of that party's past promises. And it should come as no surprise that the remedial commitments of the coordinate branches of the United States government bear special gravity.  Neither do we take governmental promises seriously only because they are generally trustworthy. We also take them seriously because affording a judicial remedy on top of one already promised by a coordinate branch risks needless inter-branch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources. It risks, too, the entirely unwanted consequence of discouraging other branches from seeking to resolve disputes pending in court.

(citations and quotations omitted)).

### ii.  Primary Jurisdiction

Subaru similarly argues that the Court should dismiss the CAC entirely because the NHTSA has primary jurisdiction over the issues raised in this case.  [Dkt. 80-1 at 90].  "The doctrine of primary jurisdiction 'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]'"  *McQueen v. BMW of N. Am., LLC*, No. CIV.A. 12-6674 SRC, 2013 WL 4607353, at *3 (D.N.J. Aug. 29, 2013) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). Courts in the Third Circuit weigh four factors when determining whether a court should abstain from hearing a case under the doctrine of primary jurisdiction:

1. Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

2. Whether the question at issue is particularly within the agency's discretion;

3. Whether there exists a substantial danger of inconsistent rulings; and

4. Whether a prior application to the agency has been made.

*Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (citations and quotations omitted).

Applying these four factors, the Court finds that the primary jurisdiction doctrine does not bar the CAC here.  For the first factor, the product liability, contract, and consumer fraud claims alleged here "are squarely within the conventional experience of judges and the court systems."  *McQueen*, 2013 WL 4607353, at *4.  Moreover, the alleged Defect is not so technical or intertwined with policy concerns that the Court should abstain from consideration.  *Id.*; *accord In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2015 WL 12641693, at *2 (S.D. Fla.

78

Sept. 21, 2015) ("While the claims may be premised on the existence of a vehicular defect, courts routinely make determinations regarding such defects.").  With respect to the second factor, "common law and warranty remedies have been explicitly preserved by the authorizing statute, indicating that this case falls squarely outside the domain of the NHTSA."  *McQueen*, 2013 WL 4607353, at *4 (citing 49 U.S.C. § 30103(d),(e)).  Subaru also fails to show that the third factor warrants abstention because it has not identified any NHTSA rulings that a ruling from this Court might undermine or contradict.  Finally, although Subaru has already initiated a recall with NHTSA, this factor alone is insufficient to justify abstention.  *See In re Takata Airbag Prod. Liab. Litig.*, 2015 WL 12641693, at *2 ("The Court appreciates the complexity of a national motor vehicle recall…  However, the Court's determination of the pending claims and the underlying issue of the purported defect will not impede NHTSA's progress on its investigation and recall….").  These factors do not support applying the primary jurisdiction doctrine broadly to all claims asserted in the CAC, and the Court will deny Subaru's motion on this issue.

### iii.  Preemption

Finally, Subaru argues that the Motor Vehicle Safety Act, 49 U.S.C. § 30101 et seq. ("MVSA") preempts Plaintiffs' negligent recall claim.  [Dkt. 80-1 at 91–92].

Federal statute can preempt state law through express preemption, implied conflict preemption, and field preemption.  *Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 239–41 (3d Cir. 2009), *aff'd sub nom. Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011).  "A federal enactment expressly preempts state law if it contains language so requiring."  *Id.* at 239 (citing *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)).  Implied conflict preemption arises where a conflict emerges between a federal statute and state law.  *Id.*  Such a conflict may arise where "it

is 'impossible for a private party to comply with both state and federal requirements,'" *id.*

(quoting *English v. General Elec. Co.*, 496 U.S. 72, 78–79 (1990)), or where "state law 'stands

as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). "Field preemption arises

by implication when state law occupies a 'field reserved for federal regulation.'" *Id.* at 240

(quoting *United States v. Locke*, 529 U.S. 89, 111 (2000)).

Subaru does not specify which theory of preemption applies. The Court assumes that

Subaru does not argue express preemption because Subaru does not cite to or analyze a

preemption clause in the MVSA. Most of the cases which Subaru cites discuss implied conflict

preemption. *See, e.g.*, *Schiesser v. Ford Motor Co.*, No. 16 C 730, 2017 WL 1283499, at *5

(N.D. Ill. Apr. 6, 2017); *Cox House Moving, Inc. v. Ford Motor Co.*, No. CIVA 7:06-1218

HMH, 2006 WL 2303182, at *8–*9 (D.S.C. Aug. 8, 2006); *In re Bridgestone/Firestone, Inc.*

*Tires Prod. Liab. Litig.*, 153 F. Supp. 2d 935, 943 (S.D. Ind. 2001). Further, Subaru did not

correct Plaintiffs when they treated Subaru's preemption argument as an implied-conflict

preemption argument in their opposition brief. [Dkt. 93 at 89]. Thus, the Court will review

Subaru's motion as if it presents an implied-conflict preemption argument.

As Subaru points out, courts nationwide have found that the MVSA preempts state-law

claims that seek a court-ordered recall as relief. *See Schiesser*, 2017 WL 1283499, at *5

("While the Safety Act does not expressly state that only the Secretary of Transportation may

order a motor vehicle recall, 'the comprehensive nature of the federal administrative scheme"

indicates Congress' intent that only the Secretary of Transportation do so.'" (quoting *Lilly v.*

*Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603, at *5 (N.D. Ill. Jan. 22, 2002))); *Cox House*

*Moving, Inc.*, 2006 WL 2303182, at *8 ("'Federal courts have held that conflict preemption

applies to prevent the judiciary from ordering vehicle recalls as a remedy in a court action.'"

(quoting *In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Lit.*, No. 1:02 CV

15000, 2004 WL 1170145, at \*18 (N.D. Ohio May 19, 2004))); *In re Bridgestone*, 153 F. Supp.

2d at 943–48*; Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584 (D. Md. 2001)

(noting that the MVSA's recall notice and remedy provisions "completely preempt the area of

vehicle and equipment recalls").  Subaru argues that the Court should reach the same conclusion

here with respect to Plaintiffs' negligent recall claim.

Plaintiffs first respond that a "strong presumption against implied preemption applies" to

their negligent recall claim because the claim implicates states' "police powers" over the "lives,

limbs, [and] health" of their residents.  [Dkt. 93 at 89–90].  No doubt, courts must presume "the

historic police powers of the States were not to be superseded [federal statute] unless that was the

clear and manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)

(citations and quotations omitted).  But Plaintiffs do not cite any state legislation or case law

showing that states "historically" administered, regulated, or scrutinized automobile recalls.  As

one court has remarked, "[t]he total lack of any state-law-based recalls prior to the [creation of

the NHTSA in 1974] coupled with the significance of federal activity in this area negate the

presumption of nonpre-emption [sic]."  *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,

153 F. Supp. 2d 935, 943 (S.D. Ind. 2001).  Thus, Plaintiffs are not entitled to a presumption

against preemption because they fail to show that their claim does not implicate state police

powers.

Plaintiffs next argue the authority upon which Subaru relies does not apply here because

Plaintiffs do not seek a court-ordered recall, unlike in those cases.  Rather, Plaintiffs seek to hold

Subaru liable under a "state law duty to use reasonable care in undertaking a recall."  [Dkt. 93 at

90].  For the purposes of this preemption analysis, the Court sees little practical difference

between a court-ordered recall and a court finding that Subaru could have or should have

performed a better recall.  At bottom, both require the court to scrutinize the Subaru Recall

notices and remedies, issues which the MVSA contemplates and which are "clearly within the

special competence of the NHTSA."  *Cox House Moving, Inc.*, 2006 WL 2303182, at *8

(citations and quotations omitted);[47] *see also Winzler*, 681 F.3d at 1213–14 (noting that the

MVSA vests the NHTSA with wide discretion to determine the scope of a recall and enforce

notice, recall, and repair duties); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452

F.3d 798, 809 (D.C. Cir. 2006) ("The [NHTSA] remains free to exercise discretion in assessing

proposed recalls and in enforcing the Act.").

Moreover, the MVSA provides Plaintiffs with a means of raising their concerns about

proper notice and remedies with the NHTSA.[48]  "When there are issues on the adequacy of the

remedy, NHTSA may conduct a public hearing to decide whether a manufacturer has reasonably

met the remedy requirements in conducting a recall*."  Snyder Computer Sys., Inc. v. U.S. Dep't

of Transp.*, 13 F. Supp. 3d 848, 859 (S.D. Ohio 2014) (citing 49 U.S.C. § 30120(e)).

> Members of the public are … permitted to petition for a hearing to
> determine whether a manufacturer's recall has reasonably met the
> notification or remedy requirements of the Act.  At such hearings,
> '[a]ny interested person may make written and oral presentations

---

[47] The possibility that Plaintiffs could recover damages under a negligent recall theory does not
affect the Court's preemption analysis.  *See Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d
1208, 1217 (N.D. Cal. 2002) ("[I]f an injunction requiring a particular repair would 'interfere'
with the federal regulatory scheme—so too would a damages award based on the failure to make
such a repair.  Therefore, the Court declines to treat Plaintiffs' request for injunctive relief
differently from its request for damages" when determining whether a conflict exists between
state law and the MVSA).

[48] "Even though voluntary recalls are initiated by a manufacturer, NHTSA retains full authority
under the Act to oversee and regulate *any* recall."  *Ctr. for Auto Safety*, 452 F.3d at 802
(emphasis in original).

of information, views, and arguments on whether the manufacturer
has reasonably met' its statutory obligations.

*Ctr. for Auto Safety*, 452 F.3d at 802 (quoting 49 U.S.C. §§ 30118(e), 30120(e)).  "If the

Secretary [of transportation] decides a manufacturer has not reasonably met the [notice or]

remedy requirements, the Secretary shall order the manufacturer to take specified action to meet

those requirements and may take any other action authorized under this chapter."  49 U.S.C. §§

30118(e), 30120(e).

     To the extent that Plaintiffs believe that additional years and models should have been

included in the Recall, the MVSA addresses this concern.  *See* 49 U.S.C. § 30162(a)(2) ("Any

interested person may file a petition with the Secretary of Transportation requesting the

Secretary to begin a proceeding to decide whether to issue an order under section 30118(b) of

this title."); *id.* § 30118(b)(2)(A) ("If the Secretary decides … that the vehicle or equipment

contains the defect or does not comply, the Secretary shall order the manufacturer to give

notification … of the defect or noncompliance; and remedy the defect or noncompliance….").

The statute also permits Plaintiffs to obtain "park it now "alerts," to the extent they believe that

such alerts are necessary.  *See Silvas v. Gen. Motors, LLC*, No. 2:14-CV-89, 2014 WL 1572590,

at *3 (S.D. Tex. Apr. 17, 2014) ("The Silvas have not demonstrated that they have made any

effort to obtain a 'park it now' alert through any proceeding involving NHTSA despite their right

to do so." (citing 49 U.S.C. § 30118(b))).[49]

---

[49] Plaintiffs also allege that Subaru was negligent in failing to provide "loaner" vehicles to
Plaintiffs "until Subaru is able to devise a remedy that is safe and dependable … and implement
it in each Affected Vehicle."  [CAC ¶ 401].  The Court gives no weight to this argument because
Plaintiffs fail to plead facts showing that this alleged failure resulted in any injury.  As discussed
above, the majority of Plaintiffs experienced no symptoms of the Defect in their Subaru vehicles
and did not bring their vehicles to Subaru for repair of any kind.  No Plaintiffs allege that they
suffered physical injury while driving their Subaru vehicles, or rented a car at their own expense
while having their vehicles repaired.

This comprehensive statutory scheme evidences Congress's intent for the MVSA to provide the sole means of commencing, challenging, amending, and enforcing an automobile recall.  *Medtronic, Inc.*, 518 U.S. at 485 (noting that "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case" and Congress's intent is to be discerned from the language of a statute, the "statutory framework," and "the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law"); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 153 F. Supp. 2d at 944–45 (noting that the "[t]he detail contained in the Safety Act suggests a clear congressional intent to limit encroachment on the agency's work.").

Plaintiffs also argue that conflict preemption is fundamentally inapplicable in this case. They argue that there can be no conflict between a common-law penalty for failing to conduct a recall that would have better protected owners of affected vehicles and the MVSA whose purpose is to "'reduce traffic accidents and death and injuries to persons resulting from traffic accidents.'  49 U.S.C. § 30101."  [Dkt. 93 at 90].  But conflict preemption bars the application of state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress—whether that 'obstacle' goes by the name of conflicting; contrary to; ... repugnance; difference; irreconcilability; inconsistency; violation; curtailment; ... interference, or the like."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000) (citations and quotations omitted).  So even if Plaintiffs and the MVSA share a common goal of traffic safety, "the structure that Congress set up to accomplish this goal entrusts it to NHTSA and forecloses judicial interference on the basis of state law—at least as far as recalls are concerned."  *In re Bridgestone*, 153 F. Supp. at 946.  Using a common law negligence claim to second-guess the sufficiency of this structure or the recalls that result from it would improperly "interfere[]

with the methods by which the [MVSA] was designed to reach this goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).  Further, applying negligence law of more than twenty states to Subaru's recall efforts would undermine the NHTSA's comprehensive statutory scheme for commencing and carrying out recalls.

Ultimately, while the Court acknowledges the "moral force" behind Plaintiffs' argument that Subaru could have done more to safely effectuate the recall, "[w]e must assume its moral force is not lost on NHTSA as well.  In the [MVSA], Congress set out a comprehensive scheme for providing prospective relief from motor vehicle safety defects," and Plaintiffs cannot disrupt this scheme with a common-law negligence claim.  *In re Bridgestone*, 153 F. Supp. 2d at 946. The Court will therefore grant Subaru's motion to dismiss Plaintiffs' negligent recall claim.

## V.   Conclusion

For the reasons set forth above, the Court will grant Subaru's motion in part and deny Subaru's motion in part.  An appropriate order will follow.


March 10, 2022                                                    /s/ Joseph H. Rodriguez

                                                        Hon. Joseph H. Rodriguez, USDJ

**Appendix A**

| Breach of Implied Warranty of Merchantability | | |
|---|---|---|
| **Plaintiff(s)** | **State (Count)** | **Decision** |
| Anderson, Adnan, Bancod-Hile, Cohen, Brockman, Brown, Gardener, Karrat, Kravchenko, Lilley, Mein de Vera, Micklo, Moore, Nelson, Oakley, Plante, Whitley, and Woo | Multiple | Motion denied (no confirmation by Subaru of the defect) |
| Multiple | Cal. (Count XVII), Fl. (Count XXII), N.Y. (Count XXXIX), Tenn. (Count LI), Wash. (Count LVIII) | Motion denied (lack of privity) |
| Griffin | Ala. (Count XI) | Motion granted (no manifestation of Defect) |
| Oakley | Ala. (Count XI) | Motion granted (pre-suit notice) |
| Whitley | Ala. (Count XI) | Motion granted (pre-suit notice) |
| Mein De Vera | Ark. (Count XIII) | Motion granted (pre-suit notice) |
| Weeks | Conn. (Count XX) | Motion granted (no manifestation of Defect) |
| Torresquintero | Conn. (Count XX) | Motion granted (no manifestation of Defect) |
| Rosenthal | Fla. (Count XXII) | Motion granted (no manifestation of Defect) |
| Sweeton | Tenn. (Count LI) | Motion granted (no manifestation of Defect) |
| Kravchenko | Ill. (Count XXVIII) | Motion granted (pre-suit notice) |
| Efantis | Md. (Count XXX) | Motion granted (no manifestation of Defect) |
| Fontenot | Md. (Count XXX) | Motion granted (no manifestation of Defect) |
| Micklo | Minn. (Count XXXIV) | Motion granted (pre-suit notice) |
| Perry | N.C. (Count XLI) | Motion granted (no manifestation of Defect) |
| Mutschler | N.J. (Count VI) | Motion granted (no manifestation of Defect) |
| Ferguson | N.J. (Count VI) | Motion granted (no manifestation of Defect) |
| Sroelov | Nev. (Count XXXVII) | Motion granted (no manifestation of Defect) |
| Christensen | Or. (Count XLIII) | Motion granted (no manifestation of Defect) |

| Biondo | R.I. (Count XLVIII) | Motion granted (no manifestation of Defect) |
| Schultz | S.C. (Count XLIX) | Motion granted (no manifestation of Defect) |
| Nelson | Tex. (Count LIII) | Motion granted (pre-suit notice) |
| Gardener | Tex. (Count LIII) | Motion granted (pre-suit notice) |

### Common Law Fraudulent Concealment/Omission (Count II)

| State | Decision |
| --- | --- |
| N.J. | Motion granted (duty to disclose) |
| Ala. | Motion granted (duty to disclose) |
| Arkansas | Motion granted (duty to disclose) |
| California | Motion Granted (economic loss rule) |
| Conn. | Motion granted (duty to disclose) |
| Fla. | Motion granted (duty to disclose) |
| Ga. | Motion granted (duty to disclose) |
| Haw. | Motion denied |
| Ill. | Motion granted (duty to disclose) |
| Md. | Motion granted (duty to disclose) |
| Mass. | Motion granted (duty to disclose) |
| Minn. | Motion denied |
| Nev. | Motion granted (duty to disclose) |
| N.Y. | Motion denied |
| N.C. | Motion denied |
| Or. | Motion granted (duty to disclose) |
| Pa. | Motion granted (duty to disclose) |
| R.I. | Motion denied |
| S.C. | Motion granted (duty to disclose) |
| Tenn. | Motion denied |
| Tex. | Motion granted (duty to disclose) |
| Vt. | Motion denied |
| Wash. | Motion denied |
| Wisc. | Motion granted (economic loss rule) |

### State Consumer Protection Statute and Statutory Fraud Claims

| State(s) (Count) | Decision |
| --- | --- |
| Alabama Deceptive Trade Practices Act (Count X), Arkansas Deceptive Trade Practice Act (Count XII), South Carolina Unfair and Deceptive Trade Practices | Motion denied (state class action bars) |

| | |
|---|---|
| Act (Count XLVIII), Tennessee Consumer Protection Act (Count L) | |
| New Jersey Consumer Fraud Act (Count VI) | Motion granted (ascertainable loss as to Plaintiffs Ferguson and Mutschler) |
| Arkansas Deceptive Trade Practices Act (Count XII) | Motion Denied (actual loss) |
| Wisconsin Deceptive Trade Practices Act (Count LIX) | Motion granted (no actionable affirmative representation) |

**Strict Product Liability (Count IV)**

| State(s) | Decision |
|---|---|
| N.J., Or., Wash, S.C. | Motion denied (statutory preemption) |
| N.J. | Motion granted (economic loss rule) |
| Ala. | Motion granted (economic loss rule) |
| Fla. | Motion granted (economic loss rule) |
| Cal. | Motion granted (economic loss rule) |
| M.D. | Motion denied (economic loss rule) |
| N.C. | Motion granted (claim barred by N.C. statute) |

**Additional Arguments**

| Issue (Count) | Decision |
|---|---|
| Standing for claims asserted under the law of a state where no Plaintiff resides or purchased a vehicle. | Motion granted |
| Standing for Plaintiff Karrat (all claims) | Motion denied |
| Subject-matter jurisdiction for Magnuson-Moss Warranty Act Claims (Count I) | Motion granted |
| Breach of Contract (Count III) | Motion denied |
| Unjust Enrichment (Count IX) | Motion granted |
| Implied covenant of good faith and fair dealing: N.J. (Count VIII), Fla. (XXXIII), Minn. (XXXV) | Motion granted |
| Whether economic loss rule bars claims for negligent recall/undertaking (Count V) | Motion granted as to Count V for negligent undertaking, denied as to negligent recall |

| Prudential mootness (all claims) | Motion denied |
|---|---|
| Primary jurisdiction (all claims) | Motion denied |
| Preemption of negligent recall claim (Count V) | Motion granted |

<table>
<tr><td colspan="3" align="center"><strong>Breach of Implied Warranty of Merchantability</strong></td></tr>
<tr><td align="center"><strong>Plaintiff(s)</strong></td><td align="center"><strong>State (Count)</strong></td><td align="center"><strong>Decision</strong></td></tr>
<tr><td>Anderson, Adnan, Bancod-Hile, Cohen, Brockman, Brown, Gardener, Karrat, Kravchenko, Lilley, Mein de Vera, Micklo, Moore, Nelson, Oakley, Plante, Whitley, and Woo</td><td>Multiple</td><td>Motion denied (no confirmation by Subaru of the defect)</td></tr>
<tr><td>Multiple</td><td>Cal. (Count XVII), Fl. (Count XXII), N.Y. (Count XXXIX), Tenn. (Count LI), Wash. (Count LVIII)</td><td>Motion denied (lack of privity)</td></tr>
<tr><td>Griffin</td><td>Ala. (Count XI)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Oakley</td><td>Ala. (Count XI)</td><td>Motion granted (pre-suit notice)</td></tr>
<tr><td>Whitley</td><td>Ala. (Count XI)</td><td>Motion granted (pre-suit notice)</td></tr>
<tr><td>Mein De Vera</td><td>Ark. (Count XIII)</td><td>Motion granted (pre-suit notice)</td></tr>
<tr><td>Weeks</td><td>Conn. (Count XX)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Torresquintero</td><td>Conn. (Count XX)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Rosenthal</td><td>Fla. (Count XXII)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Sweeton</td><td>Tenn. (Count LI)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Kravchenko</td><td>Ill. (Count XXVIII)</td><td>Motion granted (pre-suit notice)</td></tr>
<tr><td>Efantis</td><td>Md. (Count XXX)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Fontenot</td><td>Md. (Count XXX)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Micklo</td><td>Minn. (Count XXXIV)</td><td>Motion granted (pre-suit notice)</td></tr>
<tr><td>Perry</td><td>N.C. (Count XLI)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Mutschler</td><td>N.J. (Count VI)</td><td>Motion granted (no manifestation of Defect)</td></tr>
<tr><td>Ferguson</td><td>N.J. (Count VI)</td><td>Motion granted (no manifestation of Defect)</td></tr>
</table>

| Sroelov | Nev. (Count XXXVII) | Motion granted (no manifestation of Defect) |
| Christensen | Or. (Count XLIII) | Motion granted (no manifestation of Defect) |
| Biondo | R.I. (Count XLVIII) | Motion granted (no manifestation of Defect) |
| Schultz | S.C. (Count XLIX) | Motion granted (no manifestation of Defect) |
| Nelson | Tex. (Count LIII) | Motion granted (pre-suit notice) |
| Gardener | Tex. (Count LIII) | Motion granted (pre-suit notice) |

### Common Law Fraudulent Concealment/Omission (Count II)

| State | Decision |
|---|---|
| N.J. | Motion granted (duty to disclose) |
| Ala. | Motion granted (duty to disclose) |
| Arkansas | Motion granted (duty to disclose) |
| California | Motion Granted (economic loss rule) |
| Conn. | Motion granted (duty to disclose) |
| Fla. | Motion granted (duty to disclose) |
| Ga. | Motion granted (duty to disclose) |
| Haw. | Motion denied |
| Ill. | Motion granted (duty to disclose) |
| Md. | Motion granted (duty to disclose) |
| Mass. | Motion granted (duty to disclose) |
| Minn. | Motion denied |
| Nev. | Motion granted (duty to disclose) |
| N.Y. | Motion denied |
| N.C. | Motion denied |
| Or. | Motion granted (duty to disclose) |
| Pa. | Motion granted (duty to disclose) |
| R.I. | Motion denied |
| S.C. | Motion granted (duty to disclose) |
| Tenn. | Motion denied |
| Tex. | Motion granted (duty to disclose) |
| Vt. | Motion denied |
| Wash. | Motion denied |
| Wisc. | Motion granted (economic loss rule) |

### State Consumer Protection Statute and Statutory Fraud Claims

| Alabama Deceptive Trade Practices Act (Count X), Arkansas Deceptive Trade Practice Act (Count XII), South Carolina | Motion denied (state class action bars) |

| | |
|---|---|
| Unfair and Deceptive Trade Practices Act (Count XLVIII), Tennessee Consumer Protection Act (Count L) | |
| New Jersey Consumer Fraud Act (Count VI) | Motion granted (ascertainable loss as to Plaintiffs Ferguson and Mutschler) |
| Arkansas Deceptive Trade Practices Act (Count XII) | Motion Denied (actual loss) |
| Wisconsin Deceptive Trade Practices Act (Count LIX) | Motion granted (no actionable affirmative representation) |

**Strict Product Liability**

| State(s) | Decision |
|---|---|
| N.J., Or., Wash, S.C. | Motion denied (statutory preemption) |
| N.J. | Motion granted (economic loss rule) |
| Ala. | Motion granted (economic loss rule) |
| Fla. | Motion granted (economic loss rule) |
| Cal. | Motion granted (economic loss rule) |
| M.D. | Motion denied (economic loss rule) |
| N.C. | Motion granted (claim barred by N.C. statute) |

**Additional Arguments**

| Issue | Decision |
|---|---|
| Standing for claims asserted under the law of a state where no Plaintiff resides or purchased a vehicle. | Motion granted |
| Standing for Plaintiff Karrat (all claims) | Motion denied |
| Subject-matter jurisdiction for Magnuson-Moss Warranty Act Claims (Count I) | Motion granted |
| Breach of Contract (Count III) | Motion denied |
| Unjust Enrichment (Count IX) | Motion granted |
| Implied covenant of good faith and fair dealing: N.J. (Count VIII), Fla. (XXXIII), Minn. (XXXV) | Motion granted |
| Whether economic loss rule bars claims for negligent recall/undertaking (Count V) | Motion granted as to Count V for negligent undertaking, denied as to negligent recall |
| Prudential mootness (all claims) | Motion denied |
| Primary jurisdiction (all claims) | Motion denied |
| Preemption of negligent recall claim (Count V) | Motion granted |